1               UNITED STATES DISTRICT COURT

2                   DISTRICT OF NEVADA

3                   LAS VEGAS, NEVADA

4   UNITED STATES OF AMERICA,        )
                                      )
5            Plaintiff,               )
                                      )
6        vs.                          )   Case No.
                                      )   2:09-CR-078-JCM-RJJ
7   SHAWN TALBOT RICE, et al.,        )
                                      )
8            Defendants.              )
    _____ )

9

10

11

12                  TRANSCRIPT OF PROCEEDINGS
                              OF
13        HEARING RE: CONTINUED INITIAL APPEARANCE
                    AS TO SHAWN RICE
                        VOLUME 1
14        BEFORE THE HONORABLE ROBERT J. JOHNSTON
              UNITED STATES MAGISTRATE JUDGE
15
                  Tuesday, July 28, 2009
16

17

18

19

20

21

22
    FTR:                    11:15:54 a.m. through 12:33:42 p.m.
23
    Pretrial Services:      Terry Wheaton
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

```
 1    APPEARANCES:

 2    For the Plaintiff:      L. ERIC JOHNSON, AUSA
                              United States Attorney's Office
 3                            333 Las Vegas Boulevard South
                              Suite 5000
 4                            Las Vegas, Nevada 89101

 5    For the Defendant:      MICHAEL P. KIMBRELL, ESQ.
                              Michael P. Kimbrell, Ltd.
 6                            523 South Eighth Street
                              Las Vegas, Nevada 89101

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Court convened at 11:15:54 a.m.)

 2              THE COURT:  Please be seated.

 3         (Colloquy not on the record.)

 4              THE CLERK:  United States of America versus

 5    Shawn Rice, 2:09-Criminal-78-JCM-RJJ.  This is the time set for

 6    the continuance of initial appearance.

 7              THE COURT:  Counsel, please enter your appearances

 8    for the record.

 9              MR. JOHNSON:  Eric Johnson for the United States.

10              THE COURT:  Thank you.

11              MR. KIMBRELL:  Michael Kimbrell here with

12    Mr. Shawn Rice who's present in custody.

13              THE COURT:  Thank you.

14         This is a continuation of yesterday's hearing, initial

15    appearance back in this district by the defendant,

16    Shawn Talbot Rice, for failure to appear at a previous court

17    proceeding.  Mr. Rice at the hearing yesterday affirmed his

18    request to represent himself in the case.

19         Mr. Rice, is that still your intent today?

20              THE DEFENDANT:  It's been my intent from the very

21    beginning, your Honor.

22              THE COURT:  Okay.

23              THE DEFENDANT:  I stated it very clear at the

24    arraignment.  I think I stated it clearly yesterday.  I stated

25    it in the pleadings, and there are multiple legal documents on
```

1    file with this court that I put in the record numerous times.

2         THE COURT:  Okay.  Well, let me proceed.  I did go

3    back and listen to the previous hearing and the initial

4    appearance.

5         That was conducted in front of another judge.  It was not

6    done by myself, and it is clear in that record that you did

7    indicate you wanted to represent yourself.

8         And the judge at that proceeding had indicated that at a

9    later time that would be handled.  That there wasn't time or it

10   wasn't appropriate to do it there.  And for some reason, that

11   hearing was not set and did not occur, so we're really kind of

12   cleaning things up and getting you into a position where you

13   can represent yourself.

14        Now, under the Constitution as I know you've indicated you

15   understand, you have a constitutional right to be represented

16   by an attorney.

17        And even if you are unable to afford to hire an attorney,

18   the Court would appoint one to represent you at no cost to

19   you.

20        Now, I just need to ask some questions of you and to

21   basically create a record that's required by the United States

22   Supreme Court to show that you are competent, that you do

23   understand your right to an attorney, and that this is a

24   voluntary waiver on your behalf.

25        Now, if I could begin, what is your full legal name,

1    please?

2              THE DEFENDANT:  Shawn Talbot Rice.

3              THE COURT:  Thank you.  And, Mr. Rice, how much

4    education do you have?

5              THE DEFENDANT:  Juris doctor.

6              THE COURT:  Do you hold an undergraduate degree?

7              THE DEFENDANT:  I'm sorry.  I have a high school

8    diploma.  I have an associate's degree in liberal arts, a

9    bachelor's degree in anthropology, a paralegal certificate.  I

10   hold an LLB from Great Britain.  I hold a juris doctor from

11   California, and I'm halfway through a Letters of Law master's

12   degree.

13             THE COURT:  And at which university did you obtain

14   the bachelor of anthropology?

15             THE DEFENDANT:  Cal State University, Fullerton.

16             THE COURT:  Thank you.

17             THE DEFENDANT:  The J.D. was from Novus University in

18   California.

19             THE COURT:  And just for the record, my understanding

20   is that's an on-line university; is that correct?

21             THE DEFENDANT:  That's correct.

22             THE COURT:  And so you did your work on-line?

23             THE DEFENDANT:  I chose not to attend a bar

24   university because I was not going to get the education I

25   wanted.

1          THE COURT:  Okay.

2          THE DEFENDANT:  The education I wanted specifically

3   at the end was to understand public policy in the United States

4   pursuant to and in the nature of admiralty maritime

5   jurisdiction which they didn't teach in Arizona.

6          THE COURT:  Okay.  Thank you.

7          THE DEFENDANT:  I did seek it out both at Arizona

8   State University and the University of Arizona, and numerous

9   other universities, including JAG in Washington D.C., and

10  nobody taught what I was looking for, so I did it myself.

11         THE COURT:  Okay.  You also indicated you had an LLB?

12         THE DEFENDANT:  Um-h'm.

13         THE COURT:  At which university?

14         THE DEFENDANT:  Shepperton University, Great Britain,

15  U.K.

16         THE COURT:  Shepherd (sic)?

17         THE DEFENDANT:  Shepperton.

18         THE COURT:  How do you --

19         THE DEFENDANT:  I initially --

20         THE COURT:  -- spell it?

21         THE DEFENDANT:  -- attended --

22         THE COURT:  How do you spell Shepperton?

23         THE DEFENDANT:  Shepperton, S-h-e-p-p-e-r-t-o-n.

24         THE COURT:  Thank you.

25         THE DEFENDANT:  And I initially attended introduction

1    to that course in Great Britain.  I believe it was 1998.

2              THE COURT:  Thank you.  And did you complete a full

3    course, then, and receive a degree?

4              THE DEFENDANT:  2002 through 2006, yes.

5              THE COURT:  Thank you.  And you indicated that you're

6    currently working on a LLM?

7              THE DEFENDANT:  Correct.

8              THE COURT:  At which university?

9              THE DEFENDANT:  Novus University.

10             THE COURT:  And is there a particular speciality or

11   category for the LLM?

12             THE DEFENDANT:  Well, besides the court courses of

13   antitrust, admin law, taxation of business entities, and the

14   other three courses, I was toying with the idea of doing my

15   master's degree -- or a master's thesis on international law.

16             THE COURT:  Okay.  All right.  Would that be

17   considered, then, the focus of the LLM is international law?

18             THE DEFENDANT:  Unless something changes on a

19   military side, yes.  That's correct.

20             THE COURT:  Okay.  Thank you.  I only ask because I

21   know there are a lot of LLM programs now in tax and financial

22   planning and trial procedure and practice and a number of other

23   things.

24             THE DEFENDANT:  Well, they cover the core, I mean,

25   you know, admin law, and they cover the taxation of business

1    entities, antitrust, securities.  Those issues are covered, but

2    the -- my goal, of course, in that course is -- is probably

3    going to be international law.

4              THE COURT:  Okay.  Thank you.  Now, in the course of

5    obtaining these advanced degrees, have you had courses in

6    criminal law and criminal procedure?

7              THE DEFENDANT:  Yes.  Crim Pro 101 and, of course,

8    criminal law, that was covered in the first year, of course, of

9    the J.D. course and, of course, in the -- in the British

10   bachelor's degree course.  And, of course, it covered basic

11   criminal law and the paralegal course with Kaplan University.

12             THE COURT:  Thank you.  Are you licensed to practice

13   in any jurisdiction?

14             THE DEFENDANT:  Pembina Nation only.

15             THE COURT:  Now, I'm sorry.  How do you spell that?

16             THE DEFENDANT:  Pembina, P-e-m-b-i-n-a, and I am

17   bonded.

18             THE COURT:  Now, when you say the Pem -- what is it,

19   Pemba (sic)?

20             THE DEFENDANT:  Pembina.  P-i --

21             THE COURT:  Pembina.

22             THE DEFENDANT:  P-e-m-b-i-n-a --

23             THE COURT:  And that is a --

24             THE DEFENDANT:  -- under Chief Lawrence Henry.

25             THE COURT:  I'm sorry.

1          THE DEFENDANT:  Chief Lawrence Henry is the chief of

2    that tribe.

3          THE COURT:  Now, that --

4          THE DEFENDANT:  I can get you his phone number if you

5    want it, and he's in North Dakota.  He goes back and forth

6    between Arosa River, Canada and North Dakota.

7          THE COURT:  Now, that particular tribe is not

8    recognized --

9          THE DEFENDANT:  Only by --

10          THE COURT:  -- and not a --

11          THE DEFENDANT:  -- the U.S. Senate --

12          THE COURT:  Right.

13          THE DEFENDANT:  -- by a treaty.  It's not part of the

14    Bureau of Indian Affairs.

15          THE COURT:  So it's not a recognized Native American

16    tribe.

17          THE DEFENDANT:  Again, it's not recognized by you

18    folks through the Bureau of Indian Affairs or U.S. Congress.

19    It is recognized by the U.S. Senate by a treaty.

20          THE COURT:  Really?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Where would I --

23          THE DEFENDANT:  And, in fact, the FBI has a copy of

24    that treaty.  It was in my attache case when they arrested me.

25          THE COURT:  Where would I find that treaty?

```
1              THE DEFENDANT:  I can get you a copy.  I can E-mail
2      it to you.
3              THE COURT:  Okay.  Have you ever appeared in that
4      court?
5              THE DEFENDANT:  Only for the initial appointment.
6              THE COURT:  Where does the court sit?
7              THE DEFENDANT:  The court sits in North Dakota.  I
8      appeared in Arizona at the time and met with Chief Justice
9      Leon Miles.
10        He is at the time -- I don't know if he still is or not.
11     But at the time, he was chief justice of the Confederated Tribe
12     of North America.
13             THE COURT:  Thank you.  Are you licensed to appear in
14     any other jurisdiction?
15             THE DEFENDANT:  No.
16             THE COURT:  Okay.  Have you ever sought licensing in
17     any jurisdiction?
18             THE DEFENDANT:  I at -- up to this point, no, I have
19     purposely not done that.  I take that back.  Yes, I have.  I
20     did it here in Nevada.  I did it in 2006.
21        I took the Pembina Authorization to Practice, and I did
22     file with the Nevada State Bar for authorization to appear and
23     represent a single corporation.
24        The corporation was -- I can't -- I can't remember the
25     name of the corporation at this point, so I'm -- Earth Energy
```

1    Industries.

2        Earth Energy Industries was domiciled here in Nevada.  The

3    president of that corporation is Howard Foote, and he works

4    with NASA and the U.S. Department of Energy as well as the

5    Department of Defense and other defense projects.

6            THE COURT:  Did that representation involve an

7    appearance in court?

8            THE DEFENDANT:  No.  It was strictly administrative

9    contractual law.

10           THE COURT:  When you say administrative, did you

11   appear in front of any state or federal agency on behalf of

12   that corporation?

13           THE DEFENDANT:  I was good enough to not have to do

14   that.  I did interface with various different government

15   agents, the Department of Homeland Security on various

16   occasions by telephone, E-mail, sometimes personal appearances,

17   but never before to any administrative judges or

18   administrative-law judges.  I was able to avoid any

19   entanglements for that corporation.

20           THE COURT:  Thank you.  Have you ever represented

21   yourself in a criminal case before?

22           THE DEFENDANT:  Yes.  In fact, I did so in 2007/2008

23   in Seligman, Arizona.  I had two congregants sue, lied, and

24   that came out in the record in that case.

25           THE COURT:  Was that a state or a federal case?

1          THE DEFENDANT:  A state case.

2          THE COURT:  Was that a state -- was that

3    superior court, a district court?  What do they --

4          THE DEFENDANT:  It was a Justice --

5          THE COURT:  -- call it --

6          THE DEFENDANT:  -- of the Peace.

7          THE COURT:  -- in Arizona?

8          THE DEFENDANT:  So it would be, technically,

9    superior court.

10         THE COURT:  Superior court?  In this particular case,

11   you're charged by an indictment.  Do you have a copy of that

12   indictment?

13         THE DEFENDANT:  I do not.

14         THE COURT:  Mr. Kimbrell, do you have a copy of that?

15         MR. KIMBRELL:  I can check, your Honor.

16         THE COURT:  Okay.

17       (Colloquy not on the record.)

18         MR. KIMBRELL:  May I approach, your Honor?  Do you

19   want verify it?

20         THE COURT:  No.  That's okay as long as you've got it

21   and could share that, please, with Mr. Rice.

22       Mr. Rice, in the indictment which is Document No. 1 in

23   this case file, you're charged in Count I with a conspiracy to

24   commit money laundering.

25       And that charge is alleged to be in violation of

1    Title 18, United States Code, Section 1956, Subsection H.  Have

2    you had a chance to see this indictment, previously?

3              THE DEFENDANT:  I have.

4              THE COURT:  And you've been over these charges?

5              THE DEFENDANT:  I've been able to what?

6              THE COURT:  Have you been able to go over --

7              THE DEFENDANT:  Yes.  Of course.

8              THE COURT:  -- these charges?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Have you ever discussed them with an

11   attorney?

12             THE DEFENDANT:  No.

13             THE COURT:  Okay.  And that's been your choice?

14             THE DEFENDANT:  Correct.

15             THE COURT:  Okay.  Do you have any problem

16   understanding this first charge against you, this conspiracy to

17   commit money laundering?

18             THE DEFENDANT:  I comprehend the entire indictment.

19             THE COURT:  Okay.  What is the maximum penalty in

20   regard to Count I, the conspiracy to commit money laundering?

21             MR. JOHNSON:  It would be 20 years, a maximum

22   sentence of 20 years, and then a fine I believe would be up to

23   $250,000.

24             THE COURT:  Is there some question, Mr. Johnson, as

25   to the fine?  You said you believe it would be.

1          MR. JOHNSON:  I have the statute for 1956 in front of

2    me, and it makes reference to it shall be fined under the

3    title, and it doesn't include a separate amount, so I assume

4    it's the standard $250 provision --

5          THE COURT:  Okay.

6          MR. JOHNSON:  -- under --

7          THE COURT:  That would be correct --

8          MR. JOHNSON:  -- the Title 18.

9          THE COURT:  -- then.  Any other penalties or

10   assessments that could be applied for a conviction on that

11   particular count?

12         MR. JOHNSON:  There is a potential for forfeiture for

13   of any property involved in the -- there is a potential for a

14   money judgment that could result from that.

15       There was approximately 1.1, 1.2 million dollars that was

16   money laundered through the counts.  Defendant and his

17   codefendant received about $100,000 as payment.

18         THE COURT:  And is there any possible restitution in

19   this particular circumstance?

20         MR. JOHNSON:  There would be restitution of the

21   moneys that were accepted by the defendant and his codefendant

22   for payment of their actions.  That would be to the FBI, and

23   that would be again approximately $100,000.

24         THE COURT:  Okay.  There's also, Mr. Rice, a penalty

25   assessment in the amount of $100 on each felony count, and that

1    would apply as to Count I as well.

2         THE DEFENDANT:  So if I understand your Honor

3    correctly, we have a total of, collectively, 31 counts starting

4    at $250,000 per penal-sum figure, plus $100,000 for the actual

5    fund, plus $100 per count, and there were other sundry fees and

6    the penal sum; is that correct?

7         THE COURT:  Well, let's take them separately, so that

8    we can make sure we segregate things.  The one count that we've

9    discussed so far is Count I, a conspiracy to commit money

10   laundering, which carries a penalty up to 20 years in federal

11   prison, a fine up to $250,000, also a $100 penalty assessment,

12   the potential for a forfeiture, a forfeiture against you, and

13   I'll talk about that in a minute because it is included in the

14   indictment.

15       There's also a potential of restitution ordered against

16   you which could be payable, then, to the federal government,

17   and the agency I believe indicated it is the Federal Bureau of

18   Investigation.  Do you have questions about the potential

19   penalties there?

20        THE DEFENDANT:  The only questions I have are what

21   the total penal sum's are going to be for the entire case, and

22   then I'd like to see a copy of the 1099 when we get to that,

23   eventually.

24        THE COURT:  Okay.  And then you're charged in

25   Counts XIX through XXXI, and the charge in each of those is

1    money laundering.  That's in violation of Title 18,

2    United States Code, Section 1956, Subsection (b)(a)(3).

3         Also, in each of those counts, you're charged with aiding

4    and abetting in violation of Title 18, United States Code,

5    Section 2.

6         Mr. Johnson, what is the potential penalty as to each of

7    those charged?

8              MR. JOHNSON:  It's the same as with the conspiracy,

9    up to 20 years maximum for each count and up to a $250,000 fine

10   for each count.  The restitution that I had discussed before

11   would be encompassed within those counts, too.

12             THE COURT:  Each of the counts, then, XIX through

13   XXXI, charging money laundering and aiding and abetting would

14   carry a potential penalty of up to 20 years in federal prison,

15   a $100 mandatory penalty assessment as to each that you're

16   convicted of, also a potential fine of $250,000 as to each one,

17   and forfeiture.  There would also be a potential for

18   restitution, and that would be the $100,000 amount that's been

19   indicated.

20        Mr. Johnson, is there potential here for consecutive

21   sentences as to these?

22             MR. JOHNSON:  Yes, your Honor.  I mean, under the

23   law, the Court has the discretion to sentence the defendant on

24   each count to terms that can run consecutively each count.

25             THE COURT:  Do you understand the difference,

1    Mr. Rice --

2            THE DEFENDANT:  I do.

3            THE COURT:  -- between a consecutive and --

4            THE DEFENDANT:  I do.

5            THE COURT:  -- and concurrent?  In other words,

6    consecutive means that each of the sentences could be one right

7    after another --

8            THE DEFENDANT:  I comprehend.

9            THE COURT:  -- to create a very substantial

10   sentence --

11           THE DEFENDANT:  It would be life.  I understand.

12           THE COURT:  -- if there's a conviction.

13       Thank you.

14       Now, also, at page 33 of the indictment, there's been

15   reference to a forfeiture.  There are forfeiture allegations

16   attached at the end here of the indictment.

17       The Government seeks criminal forfeiture of certain

18   property from you and, particularly, an amount up to

19   1.29 million dollars as well as anything else that could be

20   connected to that money.

21       Now, the forfeiture for the conspiracy to commit money

22   laundering is the first one, and that's pursuant to Title 18,

23   United States Code, Section 981, Subsection (a)(1)(A),

24   Title 28, United States Code, Section 2461, Subsection (c),

25   Title 18, United States Code, Section 1956, and Title 21,

1    United States Code, Section 853, Subsection (p).

2         Now, forfeiture allegations are also alleged, and

3    forfeiture is sought pursuant to two other sets of statutes.

4    These are both in regard to the conspiracy to commit money

5    laundering, also.

6         The first allegation No. 2 against you as well at the

7    codefendant, Davis, is pursuant to a set of statutes there on

8    page 35.

9         Do you have that in front of you?

10             THE DEFENDANT:  I do.

11             THE COURT:  Thank you.  And then forfeiture

12   allegation No. 3 would be the third basis for forfeiture.

13   Again, the maximum amount in each one is 1.29 million dollars.

14        Have you ever been involved in a case that includes

15   criminal forfeiture before?

16             THE DEFENDANT:  No.

17             THE COURT:  Are you familiar with the statutes and

18   the rules governing forfeiture proceedings?

19             THE DEFENDANT:  I am.

20             THE COURT:  Now, are you familiar with the sentencing

21   guidelines?

22             THE DEFENDANT:  Vaguely.

23             THE COURT:  Tell me a little about your familiarity

24   with them.

25             THE DEFENDANT:  Well, since the guidelines, you're

1    looking at if I understand correctly right now 85 percent per

2    count.  So if you're looking at 20 years, 85 percent of that,

3    you're looking at about 17 years per count minus to -- good

4    time for good behavior.  Is that what you're talking about or

5    are you talking about something else?

6            THE COURT:  That's actually applying to how much time

7    you could serve --

8            THE DEFENDANT:  Um-h'm.

9            THE COURT:  -- of a potential penalty.  Sentencing

10   guidelines have been put in place under federal laws enacted by

11   congress and signed off by the president.

12           THE DEFENDANT:  I -- I know they exist.  I -- I

13   haven't gone through all the details on that particular area,

14   but I'm sure --

15           THE COURT:  Okay.

16           THE DEFENDANT:  -- if you give me a copy of the rules

17   I can read it myself.

18           THE COURT:  Under the -- I won't be giving you

19   copies.  That's part of what we'll discuss here today.  You'll

20   have to do some research on your own.

21           THE DEFENDANT:  Of course.

22           THE COURT:  But those guidelines are now advisory

23   under some Supreme Court opinions, but they do lay out some

24   standards for the Court and some guidance as the Courts have

25   tried to standardize sentencing over the years, and congress

1    has taken a hand in that through some statutory procedures.

2         The guidelines are now advisory, but they're still very

3    important in the event there's a conviction and when you get to

4    the sentencing process.

5         Now, this is only one of the areas in which, you know,

6    your lack of experience is going to be a real disadvantage or

7    even a handicap to you, one of the reasons that I would

8    strongly encourage you to have an attorney to represent you in

9    this case.

10        You know, when you represent yourself, do you understand

11   that that will be on your own?  There won't be an attorney to

12   help you.  Do you --

13             THE DEFENDANT:  Thank God.

14             THE COURT:  Yeah.  You're happy with --

15             THE DEFENDANT:  I'm very happy --

16             THE COURT:  -- that result.

17             THE DEFENDANT:  -- with that.  Thank you very much.

18             THE COURT:  Okay.  Now, do you understand also that

19   the Court will not be able to give you advice or assistance

20   throughout --

21             THE DEFENDANT:  Thank you.

22             THE COURT:  -- the course of the proceedings?

23             THE DEFENDANT:  Thank you very much.

24             THE COURT:  Okay.  I take that that's an affirmative.

25   You're --

1               THE DEFENDANT:  That's an affirmative.  You got it --

2               THE COURT:  You're happy --

3               THE DEFENDANT:  -- your Honor.

4               THE COURT:  -- with that result.  Okay.  Are you

5      familiar with the Federal Rules of Evidence?

6               THE DEFENDANT:  I am.

7               THE COURT:  Okay.  Have you ever been involved in

8      proceedings that apply the Federal Rules of Evidence?

9               THE DEFENDANT:  I have been, yes.

10              THE COURT:  Okay.  Now, all of the rules -- are you

11     familiar with the rules of criminal procedure, the

12     Federal Rules --

13              THE DEFENDANT:  I am.

14              THE COURT:  -- of Criminal Procedure?

15              THE DEFENDANT:  Although I don't read them all the

16     time, I am familiar with them, yes.

17              THE COURT:  Okay.  And you've had some of those in

18     your studies?

19              THE DEFENDANT:  I have a book on my shelf in my

20     office at home, and, yes, I have read it.

21              THE COURT:  Okay.  Very good.  And are you familiar

22     with the Local Rules of Criminal Practice?

23              THE DEFENDANT:  I -- I am not.  And, in fact, I

24     requested a copy of those back when I filed for a set of

25     pleadings, and I never got a copy of that from the court clerk.

```
1              THE COURT:  Okay.  Typically, those are not provided
2    to people, but they're available on-line at the court's Web
3    site, and you can find the most current edition there, and you
4    can access that without charge.
5              THE DEFENDANT:  I did at the time.
6              THE COURT:  All right.
7              THE DEFENDANT:  And, again, when I -- when I stopped
8    filing on the public side of the record, I just stopped reading
9    those things, but, yes, I will go back and read those.
10             THE COURT:  Okay.  Do you understand that all of
11   these rules will govern throughout the proceedings, and that
12   you'll be obligated to follow those rules just like anyone
13   who's a licensed attorney appearing here in the court?
14             THE DEFENDANT:  I comprehend.
15             THE COURT:  You also understand that the Government's
16   represented by a licensed, experienced attorney who's often
17   appeared in criminal proceedings here and will be opposite you
18   in this case.
19        There would be as anyone would look at that some
20   disadvantage to someone lacking that experience.  Do you
21   understand that difference of experience?
22             THE DEFENDANT:  I look forward to a legal
23   battlefield, your Honor.
24             THE COURT:  Okay.  So just as long as -- I guess the
25   answer is yes, then --
```

```
1               THE DEFENDANT:  Yes.

2               THE COURT:  -- you do understand --

3               THE DEFENDANT:  That was a yes.

4               THE COURT:  -- the difference?

5               THE DEFENDANT:  That was a yes to that answer.

6               THE COURT:  And you're willing to shoulder that

7       responsibility.

8               THE DEFENDANT:  I am.

9               THE COURT:  Okay.  Now, do you have access to a law

10      library?

11              THE DEFENDANT:  If I'm at home, yes, I -- I have my

12      own copy of American Juris Prudence, United States Code.  I can

13      go down to Yavapai County Law Library down there and for

14      whatever I need.  There's also the Supreme Court Law Library

15      down in -- in -- in Phoenix, Arizona.

16              THE COURT:  Okay.  Have you ever been involved in

17      jury selection before?

18              THE DEFENDANT:  You know, I haven't.  I've never done

19      that before.

20              THE COURT:  Okay.  That again is one of the dangers

21      or disadvantages of representing yourself.  Do you recognize

22      that?

23              THE DEFENDANT:  There's always a time to get wet,

24      your Honor.

25              THE COURT:  Okay.  Now, have you ever made an opening
```

1    statement in a criminal proceeding before in federal court?

2              THE DEFENDANT:  I've prepared many.  I've never done

3    it.

4              THE COURT:  Okay.  You understand there is some

5    guidelines and some laws --

6              THE DEFENDANT:  I do.

7              THE COURT:  -- that will apply there, and it would

8    limit the things that you can say.

9              THE DEFENDANT:  Sure.

10             THE COURT:  If you violate those, of course, the

11   Court will have to rein you in, and that would not be pleasant

12   in front of the jury.

13             THE DEFENDANT:  Marcus (phonetic) or Greensberry

14   (phonetic) rules, I'm ready to perform.

15             THE COURT:  Okay.  Now, let's see.  The Rules of

16   Evidence will govern what evidence can come in.  I assume that

17   having studied those that you'll have some experience in that

18   regard.

19        But, again, the Court cannot assist you and will not be

20   able to give you a hand to admit any evidence.  You'll have to

21   do that on your own.

22        You'll face objections from time to time from the

23   Government's counsel, perhaps, in how something's presented or

24   whether or not it's even appropriate to be brought before the

25   Court in that particular proceeding.

```
 1        Do you understand that an attorney more seasoned in

 2   the criminal practice might be a real advantage to you

 3   here?

 4            THE DEFENDANT:  Actually, I find him to be a distinct

 5   disadvantage in the likes of the performance of

 6   Michael Kimbrell standing next to me over the last four months,

 7   so I'll think I'll go on my own.

 8        Thank you.

 9            THE COURT:  Okay.

10            MR. KIMBRELL:  I object to that, your Honor.

11            THE COURT:  Okay.

12            MR. KIMBRELL:  I'm just kidding.

13            THE COURT:  That's --

14            MR. KIMBRELL:  I've hardly had any words with him

15   since our initial appearance, so I don't know what basis he's

16   using.

17            THE COURT:  That's fine.

18        Mr. Rice, one of the things that happens in the court is

19   there are pretrial motions allowed.  There are also motions

20   that will occur during the course of the trial before the jury.

21   Are you prepared to shoulder the responsibility of filing

22   appropriate motions in this court?

23            THE DEFENDANT:  Well, since I already started that

24   process, and the Court already struck those pleadings, I think

25   I've already demonstrated that I can have the ability to do
```

1    that.

2             THE COURT:  Okay.  Well, you'll have to abide by

3    again all of the rules, and that's part of what tripped you up

4    at this point.

5        In fact, I was the judge who was striking all of those

6    pleadings because we have a local rule that says once there's

7    an attorney appointed to represent you everything must come

8    through that attorney.

9        A defendant does not have the right independently to file

10   something with the court, so that's why I talk about rules and

11   the importance of following them.

12       You'll find that they're very carefully followed in the

13   federal court, and so you must be aware and abide by all of

14   them, but I think we're going to get past that point now, and

15   we'll discuss how that motion practice will proceed in the

16   case.

17       Now, you also assuming there might be a conviction will

18   have some rights to an appeal.  Have you ever handled an appeal

19   from a federal district court to the Circuit Court of Appeals?

20           THE DEFENDANT:  I have not.  I've written some, but

21   I've never handled them myself, no.

22           THE COURT:  Okay.  Again, this is another

23   disadvantage that you'll suffer because, of course, the

24   Government is seasoned in that regard and, in fact, has argued

25   numerous appeals at the Ninth Circuit Court of Appeals as well

1    as filing briefs.

2        Now, are you willing to go forward knowing that

3    disadvantage that you'll have?

4            THE DEFENDANT:  I think when the time comes I'll be

5    able to cover the finer points of U.S. versus Steinberg in this

6    case, your Honor.

7            THE COURT:  Okay.  Is there any question in your mind

8    that you just can't represent yourself here?  That you ought to

9    have some help doing this?

10           THE DEFENDANT:  No.  I think I'll be happy to be on

11   my own.

12       Thank you.

13           THE COURT:  Okay.  Let me just indicate, Mr. Rice,

14   for the record that, you know, in light of what I'm hearing

15   from you today it sounds like you're competent and able to

16   represent yourself.  Personally, I would never do that, and I

17   never recommend it to a defendant.

18       And I give you the same advice that I would give most and

19   all defendants who appear before me that it's always better to

20   have an independent set of eyes, an experienced person who's

21   handled federal cases of this nature in this courtroom.

22       You obviously want to represent yourself here, but I just

23   counsel you that it's unwise.  It's not the best way --

24           THE DEFENDANT:  Well, let me state for the record --

25           THE COURT:  -- to go.

```
 1              THE DEFENDANT:  -- on that issue, then.  I'm here
 2    because a government agent is somebody I didn't -- I ended up
 3    having not to trust in the first place.  Okay?
 4              THE COURT:  Yes.
 5              THE DEFENDANT:  I don't trust any of you people as
 6    far as I can throw your.  Okay?  All right.
 7              THE COURT:  Okay.
 8              THE DEFENDANT:  Rules or not, your Honor, I did file.
 9    I did demonstrate.  I did perform.  I performed on to a T on
10    all of the rules and regs as far as the -- the, you know, the
11    OR bond.
12         And, in fact, I did even report on the 16th by the way
13    in -- in deference to what's written in the documents in
14    here.
15         The only time I stopped reporting was the 23rd, and I told
16    you folks ten days prior what was going to happen.  Defer it
17    to, of course, you know, your -- your -- your statement earlier
18    about the procedures, but --
19              THE COURT:  Okay.
20              THE DEFENDANT:  Because I don't trust anybody here, I
21    would much prefer to die on my own if I'm going to do that.
22              THE COURT:  Okay.  All right.  Well, hopefully, that
23    won't be the result.
24              THE DEFENDANT:  Well, that's the chances you take.
25              THE COURT:  Okay.  Is anyone forcing you to make this
```

```
 1    decision?
 2              THE DEFENDANT:  No.
 3              THE COURT:  Anyone threatened you or --
 4              THE DEFENDANT:  No.
 5              THE COURT:  -- in any way caused you to do this?
 6    Anyone promise you anything if you'll represent yourself and
 7    not take an attorney appointed --
 8              THE DEFENDANT:  No.
 9              THE COURT:  -- by the Court?
10              THE DEFENDANT:  No.
11              THE COURT:  Okay.  Mr. Rice, what I'm going to do,
12    then, is enter on the record an order that grants you the right
13    here to represent yourself.
14         The Court makes the finding that you're voluntarily and
15    intelligently making this decision, and that it's voluntarily
16    given of your own free will.
17         I would note for the record that the Ninth Circuit
18    Court of Appeals has cautioned that a Court must take great
19    care in making this decision and has to indulge every
20    reasonable presumption against waiver, but I find all of those
21    overcome today, and I grant you the right to represent yourself
22    in these proceedings.
23              THE DEFENDANT:  And I'll further state for the record
24    that I'm very familiar with Brady versus U.S. and the waiver of
25    that issue.
```

1          THE COURT:  Okay.  Thank you.  Well, Brady will have

2     to -- that's a different issue that goes to some of the

3     evidence.

4          THE DEFENDANT:  The same principle, though.

5          THE COURT:  Let me ask this.  The trial date is set

6     for October 5, 2009.  I did want to ask one other thing in

7     regard to attorneys.

8       Occasionally, I've considered and have actually appointed

9     standby counsel, an attorney who's experienced here to assist

10    or to be available if someone who's representing themselves

11    needs that assist or extra hands and extra familiarity with the

12    Court.

13      Do you want the help of somebody as standby counsel?

14         THE DEFENDANT:  If he will state on the record that I

15    am not a ward of the court, I'm not deemed to be a person of

16    unsound mind, I will take Michael or somebody else as standby

17    counsel, so that I can call and ask questions.

18      But that's -- that's where it stops right there.  I do not

19    want him in front of me.  I do not want another attorney in

20    front of me and getting in my way.

21         THE COURT:  Okay.  Would you be comfortable with

22    Mr. Kimbrell or would you prefer someone else?

23         THE DEFENDANT:  Give me five minutes with Michael,

24    and I'll tell you.

25         THE COURT:  Okay.  Why don't we take a brief recess,

1    and then we'll come back and deal with that issue because I

2    want you to have every opportunity to have the assistance of

3    counsel at every turn in this case.  And even though you might

4    represent yourself, it can be helpful to have somebody there at

5    your shoulder to assist.

6        And then I've got a couple of other procedural issues that

7    we need to address.  We'll just take a brief recess.  If the

8    marshal could just let them visit.

9            THE CLERK:  All rise.

10       (Recess at 11:47:29 a.m.)

11       (Court reconvened at 12:05:16 p.m.)

12           THE COURT:  Please be seated.

13       (Colloquy not on the record.)

14           THE CLERK:  This is the continuation of the

15   United States of America versus Shawn Rice,

16   2:09-Criminal-78-JCM-RJJ.

17           THE COURT:  Thank you.

18       We took a break, Mr. Rice, so you could visit and decide

19   whether you want standby counsel in this case.  What is your

20   decision?

21           THE DEFENDANT:  A standby is fine.  Michael is

22   fine --

23           THE COURT:  Okay.

24           THE DEFENDANT:  -- so long as the Court agrees that

25   I'm not a person of unsound mind, and I'm not a ward of the

1  court.

2         THE COURT:  No.  Definitely not.  In fact, the

3  finding here has been quite the opposite today based upon your

4  representations and your education and experience.

5         THE DEFENDANT:  Thank you.

6         THE COURT:  So it will be the order of the Court,

7  then, that Mr. Kimbrell is appointed as standby counsel.

8      You'll be available, Mr. Kimbrell, to advise him on any

9  issues of procedure and to assist in any way that he might need

10  help in this regard, and you're authorized to continue to

11  submit vouchers in that regard as appointed counsel.

12         MR. KIMBRELL:  Yes, your Honor.

13         THE COURT:  Okay.

14         THE DEFENDANT:  In that case, your Honor, I

15  immediately for release on the OR on the original terms and

16  conditions as I did perform on those terms and conditions.

17         THE COURT:  Actually, we'll get to that --

18         THE DEFENDANT:  Thank you.

19         THE COURT:  -- in just a minute if we could.

20         THE DEFENDANT:  I just wanted to get it out.

21         THE COURT:  That's okay.  I've got that on my list.

22      The next thing I'd like to address, the trial date was

23  recently moved by Judge Mahan and is set for October 5, 2009,

24  and the case has been designated complex.

25      Where do things stand in regard to discovery at this time?

1    Mr. Johnson, what's been provided to the Defense?

2            MR. JOHNSON:  Pretty much all of the discovery has

3    been made available to the Defense in this case.  The copies of

4    all the recordings with the exception of certain recordings

5    which are -- we have available to counsel in our office to

6    view.

7        We're making a set which doesn't include the undercover

8    agent's picture on it, but the recordings are available to be

9    viewed in the office.

10           THE COURT:  Okay.  How many pages of documents have

11   been provided?

12           MR. JOHNSON:  I'll be honest.  I don't know how many.

13       Do you have any sense?

14       (Colloquy not on the record.)

15           MR. JOHNSON:  50-, 60,000, somewhere around there.

16           THE COURT:  Okay.  I just know in a case like this

17   it's likely to be document-intensive, and so there could be

18   quite a bit.

19           MR. JOHNSON:  There are a lot of documents, although

20   most of the documents come from the search materials that were

21   obtained during the execution of search warrants in the case.

22   In terms of the focus of this case, it's a large number of

23   audio recordings involving the defendant.

24           THE COURT:  Tell me about the recordings.  How many

25   of them are there?  Would you measure them by conversations, by

1    time?  Can you give me some idea of what's involved.

2         (Colloquy not on the record.)

3         MR. JOHNSON:  Probably, at least 50 involving the

4    defendant and his codefendant.  They're not short.  I think we

5    figured some of them are fairly lengthy.

6         (Colloquy not on the record.)

7         MR. JOHNSON:  Yeah.  So you're probably talking over

8    100 to 200 hours of recordings.  There were other cases that

9    were developed during the course of the investigation.

10        We have provided all of those recordings and made all of

11   those recordings available to Defense counsel to the degree

12   that anyone feels that it's relevant to look at those, and

13   that's probably another 30 recordings and another 100 hours of

14   recordings, 100-plus hours of recordings.

15        THE COURT:  Have any of the recordings been

16   transcribed?

17        MR. JOHNSON:  We're at the moment in the process of

18   transcribing those recordings we intend to use at trial, but

19   there hasn't been an effort made to transcribe all of the

20   recordings or all the recordings in full.  We're only looking

21   at transcribing those portions of the recordings that we'd be

22   interested in using at trial.

23        THE COURT:  Now, you indicate those have been made

24   available and accessible to the Defense.  Have copies been

25   provided to the Defense?

1           MR. JOHNSON:  Copies of what, your Honor?

2           THE COURT:  The recordings, the 100 to 200 hours that

3    include this particular defendant --

4           MR. JOHNSON:  Yes, your --

5           THE COURT:  -- Mr. Rice, and then, also, the 30 or

6    more conversations, the other 100 hours, that are related

7    items.

8           MR. JOHNSON:  Copies have been made of the vast

9    majority of the recordings.  And as I said, there's

10   approximately 20, 25 video recordings that are currently

11   available to be viewed in our office.

12       As I said, we're preparing copies of that at which will

13   blur out the undercover agent's face, so that those aren't mass

14   produced on the Internet, but we've made those recordings

15   available to be viewed in the office.

16          THE COURT:  Okay.  Will the Defense be getting copies

17   of those with the blurred --

18          MR. JOHNSON:  Yes, your Honor.

19          THE COURT:  -- faces?

20          MR. JOHNSON:  As soon as those come in, we will pass

21   those on.

22          THE COURT:  Okay.  How soon is that likely to happen?

23       (Colloquy not on the record.)

24          MR. JOHNSON:  It should be done I would say,

25   hopefully, by the end of August.

```
1              (Colloquy not on the record.)

2              MR. JOHNSON:  Written summaries of almost all of

3    those recordings have been provided as part of the

4    documentation.

5              (Colloquy not on the record.)

6              THE COURT:  How were the summaries created?

7              (Colloquy not on the record.)

8              MR. JOHNSON:  Agents reviewing the recordings.

9              THE COURT:  Okay.  They listened to them, and then

10   was 302s created or separate as --

11             (Colloquy not on the record.)

12             MR. JOHNSON:  302s were created.

13             THE COURT:  Okay.  And all of those have been made

14   available to the Defense?

15             MR. JOHNSON:  Yes.

16             THE COURT:  Okay.  Mr. Kimbrell, do you have all of

17   these items, then, that have been reviewed here and referenced?

18             MR. KIMBRELL:  Yes.  I'm not certain that I noted the

19   20 to 20 -- there is some hours of audio that you referenced

20   were parts of other cases.

21             THE COURT:  That --

22             MR. KIMBRELL:  Were those --

23             THE COURT:  That was 30 --

24             MR. KIMBRELL:  -- part of the 91 --

25             THE COURT:  -- 30 conversations, 100-plus hours of
```

1    related items.

2            MR. KIMBRELL:  I probably just haven't gotten to

3    those, but are those noted --

4            MR. JOHNSON:  They probably are noted.

5            MR. KIMBRELL:  -- (indiscernible)?

6            MR. JOHNSON:  I mean, for instance, there were two

7    other indictments.  One was involving a Harold Call (phonetic)

8    and one involving a Jan Lindsey (phonetic).

9        There were recordings that were made in reference to each

10   of those indictments.  We just provided the whole set, so that

11   we aren't getting any issue as to who's --

12           MR. KIMBRELL:  Okay.

13           MR. JOHNSON:  -- you know, what's relevant --

14           THE COURT:  Sure.

15           MR. JOHNSON:  -- or not relevant.

16           THE COURT:  Yeah.  All right.  So the defendant can

17   make those decisions himself.

18           MR. JOHNSON:  Right.

19           THE COURT:  All right.  The videos, now, they're not

20   available until August 31st.  Are those accessible any other

21   way to the defendant?

22           MR. JOHNSON:  As I said, we've indicated that those

23   are available.  We can set up for someone to view them in our

24   office.

25           THE COURT:  Okay.  Mr. Rice, is that something you

1    might like to do?  I know you live out of state.  If you're

2    released, would you be willing to come back and view those?

3        I'm a little concerned about the time line here, the trial

4    date of October 5.  And if that 20 to 25 videos are not

5    available for viewing, you know, to you actually have copies

6    in --

7            THE DEFENDANT:  There's no way I'm going to be able

8    to review all that stuff in one month.  I mean, October 5th is

9    unreasonable and impractical.  I think we can do it.  We can

10   look at October 5th as a day.  We can revise when the trial

11   date could be reset.

12       But if -- if they can't get it to me until the end of

13   August, I can't go to their office 'til the end of August and

14   review those things, then I think it's impractical.  It's

15   almost -- 100 hours, I mean, you know, you're talking about

16   just geography, and time is a problem here.

17           THE COURT:  What is the approximate length of the

18   videos?  Do you have an estimate of the time involved in those?

19       (Colloquy not on the record.)

20           MR. JOHNSON:  15 minutes to four hours, your Honor.

21           THE COURT:  Okay.  Times 20 to 25, yeah.

22           THE DEFENDANT:  There you go right there.

23           THE COURT:  That's a substantial --

24           THE DEFENDANT:  And it may -- it may come down, and

25   -- and I don't know until I see it, but it may come down to an

1    issue based upon my intended procedure or proceeding on this

2    case.  A lot of that may come down to motions in limine or

3    stipulations on certain issues --

4              THE COURT:  Right.

5              THE DEFENDANT:  -- because I think this entire case

6    is going to come down to one issue, anyway, so, you know, I --

7    again, I don't -- I won't know until I see what they have.

8              THE COURT:  Okay.  Well, you will have access before

9    that date to written summaries that have already been

10   provided.

11        And then, also, if you wanted to go to the U.S. Attorney's

12   Office they could set up a viewing for you there, and you could

13   take a couple of days and view any parts that you felt were

14   really significant.

15        All of this leads, then, to a question, and, Mr. Rice, I

16   pose this primarily to you.  We need to set some date for

17   motion practice to occur here.

18        I mean, you've already indicated you've filed several.

19   I've stricken all of those, and what I'd really like to do is

20   just clear the deck and start fresh.

21        Do you have access and an account for filing things

22   electronically with the court?

23             THE DEFENDANT:  I don't at this time, but I can get a

24   PACER account and establish it and set it up and do that.

25             THE COURT:  Okay.  I would encourage you to go ahead

1    and do that.  You're not a licensed attorney here.  There will

2    be some things that you need to go through, but I think you can

3    handle the process, and the clerk's office can help set that

4    up.

5         Mr. Johnson.

6              MR. JOHNSON:  You're going to need to issue an order

7    for him as a pro se to do that, your Honor.

8              THE COURT:  Right.  I'm aware of that, and we'll do

9    that separately, so that you are allowed access and can get a

10   code.

11        They may also want you to go through a little bit of

12   training in the clerk's office, so that you know how to use the

13   CM/ECF system and have that access.

14        If there are motions that have already been filed that

15   you'd like filed, you can go ahead and do that, but what I

16   would just ask you to do is just file the motion again, and

17   we'll deal with it fresh, rather than something that I've

18   stricken and trying to revive it as part of the record.

19        The Court normally sets a reasonable period of time for

20   motion practice.  In a complex case like this, I want to make

21   sure there's enough time.

22        Do you have any feeling today in conversations with

23   Mr. Kimbrell and your own assessment of the case as to how much

24   time you might need to file motions in this case?

25              THE DEFENDANT:  I'm going to at least -- I'm going to

1  need at least two weeks to go home and -- and reorganize and

2  see where I am and everything I filed in the past and review it

3  before I can even answer that question.

4          THE COURT:  All right.  Let me ask this, then.  Would

5  you want to talk with Mr. Johnson from the U.S. Attorney's

6  Office and enter some stipulation to the Court as to an

7  appropriate schedule for motion practice?

8          THE DEFENDANT:  I think we could start with 30 days.

9  I don't see a problem with that.

10          THE COURT:  Okay.  I'm more interested in when the

11  deadline would be --

12          THE DEFENDANT:  Oh, well --

13          THE COURT:  -- to have motions filed.

14      (Colloquy not on the record.)

15          THE DEFENDANT:  Yeah.  I -- again, I haven't --

16          THE COURT:  You --

17          THE DEFENDANT:  H'mm, I couldn't give an answer

18  today.

19          THE COURT:  You have a lot of materials to digest

20  here.

21          THE DEFENDANT:  Sure.

22          THE COURT:  And you've already identified some

23  issues, obviously, just generally in regard to the

24  charges.

25      But when you start looking at the evidence and the

```
 1    discovery, that may promote some other questions and issues
 2    that you'll want --
 3              THE DEFENDANT:  Of course.
 4              THE COURT:  -- to address.
 5        Mr. Johnson, any thoughts on this?
 6              MR. JOHNSON:  I have no real issue in terms of any
 7    motions we intend to file, and so the issue is really up to the
 8    defendant and how long he realistically needs.  He probably
 9    should discuss with Mr. Davis' attorney.
10        (Colloquy not on the record.)
11              MR. JOHNSON:  I mean, we would be open now to
12    revising both a motion date and the trial date in this case if
13    we could get a stipulation by both defendants --
14              THE COURT:  Okay.
15              MR. JOHNSON:  -- to do that.  Is there --
16        (Colloquy not on the record.)
17              THE COURT:  Is there a motion date as to Mr. Davis?
18    I had the impression there wasn't, but I may have missed
19    something in the docket somewhere.  I --
20        (Colloquy not on the record.)
21              THE COURT:  I know there's definitely not as to
22    Mr. Rice.
23              MR. JOHNSON:  Right.
24              THE COURT:  And I know when Judge Mahan extended the
25    trial date in his last order there was no motion practice
```

43

1   allowed in that schedule, and I'm sure he intended it to just

2   fall to me to take care of that here with the attorneys.

3           MR. JOHNSON:  I don't see anywhere where I've written

4   down any motion date on that.  So at this point, I would say

5   there was probably nothing set.

6           THE COURT:  Let's do this, then.  Let me enter an

7   order that will require the parties to submit a proposal to the

8   Court for motion practice, and we're sitting today on nearly

9   the end of July.

10      If I could have that by August 12th, that gives you a

11   couple of weeks, Mr. Rice, to review these basic materials.

12   And from that, you'll begin to get a feel.

13      I know you've already got several issues that you do want

14   to raise and file with the court, and you can file those at any

15   time.  But by that date, I'd like some indication from the

16   Government and from the Defense.

17      And we'll extend this to include Mr. Davis as a

18   codefendant and make sure that his counsel is advised through

19   our electronic noticing that the Court expects something by

20   August 12th in regard to an appropriate schedule for motion

21   practice.

22      Do you have any questions about what I'm expecting,

23   Mr. Johnson or Mr. Rice?

24           MR. JOHNSON:  I'm not exactly sure what you're

25   expecting from me in the -- as I said, I'm more or less open to

1    this.

2        I would assume Mr. Rice will talk with Mr. Leventhal.  And

3    pretty much whatever is reasonable to them, I probably will be

4    glad --

5            THE COURT:  Okay.  I guess --

6            MR. JOHNSON:  -- to go along with.

7            THE COURT:  I guess your involvement would be if the

8    parties could reach some stipulation and tender that to the

9    Court by that date.

10       Otherwise, I would just entertain a filing by the Defense

11   that says here's what we feel like we need in this complex case

12   in order to accomplish motions.

13       Also, I would want to get some response from the

14   Government as to the response time that you might

15   need.

16           MR. JOHNSON:  What I would ask, your Honor, since is

17   that the order is that either the parties file a stipulation by

18   August 12th or that each party is required to file a

19   recommendation as to a schedule.

20           THE COURT:  Okay.  That would be fine.  Let's make

21   that the order of the Court, then.  We'll expect either a

22   stipulated proposed schedule or individual, each individual

23   party, the two defendants and the Government, to submit

24   something to the Court, so that then I can craft something that

25   will work.

1      And if it looks like because of the complex nature of the

2   case more time's going to required for motion practice, then

3   we'll reasonably fit into the schedule of the trial date of

4   October 5th.  I would encourage you to go ahead and address

5   that issue as well and make that a comprehensive stipulation --

6              THE DEFENDANT:  Thank you, your Honor.

7              THE COURT:  -- or a proposal.  Okay?  Very good,

8   then.

9      Now, the other procedural question that I had today that

10  we needed to address was just the release or continued

11  detention of Mr. Rice.

12      (Colloquy not on the record.)

13              THE COURT:  No petition was ever filed in regard to a

14  violation of the previous release that was imposed at the

15  initial appearance.

16      Has there been full compliance with the requirements to

17  Pretrial?

18              PRETRIAL SERVICES:  Judge, it just wasn't listed in

19  the -- one second, your Honor.

20              THE COURT:  Certainly.

21              PRETRIAL SERVICES:  I think I did see something.

22  Just what's listed in the report that on June 22nd that he

23  failed to appear.

24      There is nothing else that's significant from the

25  District of Arizona, Judge.  Like I said, what's listed in the

1    report is all that I have.

2              THE COURT:  So at one point, there was a failure to

3    appear to a Pretrial Service officer as --

4              PRETRIAL SERVICES:  He was directed on June 16th,

5    2009.

6         (Colloquy not on the record.)

7              THE DEFENDANT:  Um-h'm.

8              PRETRIAL SERVICES:  And he failed to report to the

9    office on June 23rd (indiscernible), and that's in the second

10   paragraph on page 1.

11             THE COURT:  Okay.  But there's been no petition filed

12   in regard to that.

13             PRETRIAL SERVICES:  No, your Honor.

14             THE COURT:  Is that correct?

15             PRETRIAL SERVICES:  That's correct.

16             THE COURT:  Mr. Rice, was there anything you wanted

17   to say on this?

18             THE DEFENDANT:  As I said earlier, your Honor, first

19   off, I was not in Nevada on June 22nd.  I had an agent, a

20   paralegal, file the document in question.  I had -- until I was

21   brought here, I had not set foot back in Nevada since the day I

22   was released.  That's first.

23        Second off, I did report on June 16th, 2009, and I told

24   the Court prior to that that because of what the Court was

25   doing and our miscommunication, however you want to couch that,

1   I was no longer going to report to this Court until that issue

2   was resolved.  Okay?

3        So on -- technically, on June 23rd, yeah, I -- I failed to

4   report on June 23rd.  But because the Pretrial Services works

5   for you and because you and I had the miscommunication, I

6   wasn't going to any more trial as far as I was concerned.

7        And if you characters wanted to proceed without me, that

8   was fine since you weren't including me in this process,

9   anyway, miscommunication notwithstanding.  So as far as --

10            THE COURT:  Okay.

11            THE DEFENDANT:  -- my performance on

12   Pretrial Services, I did perform completely up until June 23rd.

13        (Colloquy not on the record.)

14            THE COURT:  All right.  Mr. Johnson, any position by

15   the -- oh, I'm sorry.

16        Something further by Pretrial Services, Mr. Wheaton?

17            PRETRIAL SERVICES:  Oh, yes, your Honor.  Hearing his

18   statement, it seemed like he's totally missed the whole concept

19   of Pretrial Services whether -- that he must comply even if he

20   has to make phone conversations at that time.

21        And if he's unwilling to even contact the officer just by

22   making weekly phone contacts, I don't see how he could be

23   supervised under Pretrial Services.

24            THE COURT:  Okay.

25            THE DEFENDANT:  And the fact of the matter is,

1   your Honor, I did make weekly telephone phone calls up until

2   June, June 16th.

3        And -- and, again, I'll restate again for the record on

4   June 23rd was when I stopped, and it was for the reasons we

5   already talked about yesterday and today.

6             THE COURT:  Right.  And, ultimately, that's why you

7   were arrested and brought back in custody, and we'll try to

8   avoid that if you're released again.

9        Mr. Johnson, any thoughts by the Government in regard to

10  release or detention?

11            MR. JOHNSON:  Oh, essentially, the same concerns of

12  Mr. Wheaton is whether the defendant will comply and follow

13  Pretrial Services supervision.

14       I think at a -- you know, you have to at a minimum have

15  some agreement by the defendant that he understands that he's

16  involved in a court process.  That he doesn't decide when he's

17  not going to comply or when he's going to terminate it.

18       And that there's a clear understanding that he does have

19  an obligation absent the Court changing it rather than him

20  deciding not to comply and to terminate it to meet all the

21  conditions that Pretrial Services may impose in terms of what

22  they need to do to supervise him, and I'm not sure we've

23  reached that point, yet.

24       Looking at the filings that have been filed to date, the

25  main concerns that I have is, you know, while the defendant now

1    is representing himself he still has an obligation to comply

2    with all the rules and procedures of the court just like any

3    other attorney and is still being bound by the criminal

4    judicial process just like any other defendant.

5        And based upon the filings and the defendant's conduct,

6    I'm not sure that he feels that he is bound by this Court's

7    order and this Court's jurisdiction and authority.  And so for

8    those reasons, we're reluctant to suggest that he should be

9    released at this time.

10            THE COURT:  Okay.  Thank you.

11       Mr. Rice, do you want to speak to this issue?

12            THE DEFENDANT:  I -- I think I've already addressed

13   Eric's issues in the past.  You know, I -- I -- I told the

14   Court I would -- in fact, Michael said it for me in the record

15   in the arraignment that I would be aggressively litigating this

16   case.

17       I did start aggressively litigating this case.  You deemed

18   fit to strike those pleadings for the reasons we've already

19   discussed, and I complied completely up until the 23rd.

20   Notwithstanding that I tried by Eric, you know, I --

21            THE COURT:  Why don't you use --

22            THE DEFENDANT:  I --

23            THE COURT:  -- Mr. Johnson.

24            THE DEFENDANT:  Mr. Johnson.

25            THE COURT:  That's the better way --

1          THE DEFENDANT:  Thank you.

2          THE COURT:  -- to practice here.

3          THE DEFENDANT:  I -- I intend to attack, and so

4    legally speaking.  I -- I have no intention of backing away

5    from this case.

6          THE COURT:  Okay.  If I release you, is there going

7    to be any problem of you staying in touch with

8    Pretrial Services and following their directions?

9          THE DEFENDANT:  I'm going to start hounding people is

10   what I'm going to start doing.  I'm going to be --

11       (Colloquy not on the record.)

12         THE COURT:  I --

13         THE DEFENDANT:  Yes.

14         THE COURT:  I'm sorry.  You're --

15         THE DEFENDANT:  And when I say hounding, I'm going to

16   be very aggressive.  I'm not only working with the Court, but

17   getting all the discovery from Mr. Johnson and in going -- in

18   going at this tooth and nail, yes.

19         THE COURT:  Okay.  So if Pretrial Services requires

20   you to call or to visit their office, you're willing to do

21   that?

22         THE DEFENDANT:  And, again, I did.  I mean, up until

23   the 23rd, Doris (phonetic) came out to my house.  She knows

24   where I -- my house is.  She knows where I work.  She's seen my

25   -- my home, you know.  That -- that was never an issue.

1          THE COURT:  Okay.

2          THE DEFENDANT:  And as far as the jurisdictional

3    issue, you know, I think I've more than submitted to this

4    Court's jurisdiction at this point in time.  And as I said

5    before, look, if I wanted to run, you guys would never find me.

6    Okay?  So I've been --

7          THE COURT:  Yes.

8          THE DEFENDANT:  I made that very clear.  I've

9    addressed this issue on numerous occasions on numerous

10   documents.  You picked me up at synagogue.  Okay?

11       I mean, the phone call I got the day before was clearly

12   from people that wanted to bring guns and which they did, and I

13   was, of course, unarmed at synagogue.

14       And I clearly understood that they were about to pick me

15   up that day, and there was much miscommunication with the

16   clerk's office as to what the warrant was actually for, me or

17   the penal sum, arguments, arguendo not -- you know,

18   notwithstanding.

19       So as far as me performing with Pretrial Services as far

20   as I'm concerned, Mr. Johnson's comments notwithstanding, I

21   performed.

22         THE COURT:  Okay.  What the Court will do, then, I'm

23   going to release you at this time on the conditions previously

24   set by the Court that are incorporated in Document No. 17, and

25   you'll be free, then, to travel between the states of Arizona

1    and Nevada.

2         Now, remember, there is a restriction on travel.  And if

3    you want to go to other areas, you'll need the permission of

4    Pretrial Services; otherwise, it's a violation.

5              THE DEFENDANT:  And --

6              THE COURT:  Also --

7              THE DEFENDANT:  And just -- I'm sorry, your Honor.

8              THE COURT:  -- let --

9              THE DEFENDANT:  I don't mean to interrupt, but just

10   one last thing here, and I -- and I did --

11             THE COURT:  Yes.

12             THE DEFENDANT:  I did work with Doris on that issue.

13   I did travel to New York.  I did travel to Washington, D.C. if

14   I recall, and I do --

15        (Colloquy not on the record.)

16             THE DEFENDANT:  I do -- I am going to have to go back

17   to the East Coast to the Bureau of the Public Debt in

18   Fredericksburg, West Virginia.  I'm probably going to have to

19   go to Chicago to the Chicago Mercantile Exchange.

20        I'm probably going to go -- and I've already been tasked

21   to go to the Provost Marshal in San Diego at some point in time

22   to give them a briefing on certain issues that are happening in

23   judiciary court system.  There are numerous places.

24        And I -- I -- and, again, I will work with Doris on that

25   communication.  I just ask that you not hamstring me on those

1    communications, and so --

2              THE COURT:  No.  That's not the intent, and it's just

3    there's a principle of supervision here --

4              THE DEFENDANT:  Of course.

5              THE COURT:  -- under the Bail Reform Act, and travel

6    outside of Arizona and Nevada just needs previous approval by

7    the Pretrial Service agency.

8         Also, remember, that you're not to violate any federal,

9    state, or local laws.  The other conditions -- do you have a

10   copy of those conditions that were imposed in Document No. 17?

11             THE DEFENDANT:  I think I'm going to have to get

12   another copy because so much has happened in the last six

13   weeks, you know.

14             THE COURT:  I'll give you a copy.

15             THE DEFENDANT:  Thank you.

16             THE COURT:  All right?  If the clerk will just pass

17   this to you.  That's a copy that I printed off this morning of

18   No. 17.  That has where you had signed off and agreed to those

19   conditions --

20             THE DEFENDANT:  Right.

21             THE COURT:  -- with Pretrial Services.

22        Remember, you're not to violate any federal, state, or

23   local law while on the conditions.  That means even a simple

24   speeding ticket would be a violation of your release

25   conditions, and you could be brought back to court.

1     If you violate any of those conditions, you can be brought

2   back, your release could be revoked, and then you could be

3   ordered held in jail until the case is finished.  You could

4   also be prosecuted for a contempt of court for violating this

5   Court's order.

6       If you commit a federal crime while on these release

7   conditions, extra penalties could be imposed at the time of

8   your sentencing.

9       Now, if you fail to appear at any time when you should be

10  in court, of course, a warrant would issue for your immediate

11  arrest which is really effectively what happened in this

12  circumstance.

13      Also, the Government at any time that you fail to appear

14  could bring another charge against you which is a felony

15  failure to appear.

16      That would mean that if the charges in this case were

17  dismissed for some reason or all disappeared based on your

18  motions or others you could still be prosecuted and if

19  convicted serve time in prison for the failure to appear.

20      Do you understand?

21          THE DEFENDANT:  I do.  And on that basis, your Honor,

22  at your leisure, I'd like to address some issues with you in

23  chambers ex parte in camera regarding certain military issues

24  that are still pending on this case.

25          THE COURT:  Yeah.  I don't do in camera hearings with

1   defendants.  If there's something you'd like to file, it can be

2   filed --

3          THE DEFENDANT:  I can't put it --

4          THE COURT:  -- and in a --

5          THE DEFENDANT:  -- on the record.  I --

6          THE COURT:  It can be filed in a sealed document

7   which no one has access to except you or the judge, but I leave

8   that to you.

9      (Laughter in the courtroom at 12:32:32 p.m.)

10         THE COURT:  Mr. Kimbrell can also advise you in

11  regard to that, but we do have a way to seal those things, so

12  that no one has access to them, but I understand, and I've

13  seen, you know, some information from your military record and

14  know of your clearances.

15         THE DEFENDANT:  I will tell you right now I'm stuck

16  on that issue.  So if --

17         THE COURT:  Okay.

18         THE DEFENDANT:  If you get a phone call from somebody

19  in the military and says I'm now in their custody for whatever

20  reason, okay, I'm just --

21         THE COURT:  Right.

22         THE DEFENDANT:  I'm -- and for the record, I'm giving

23  you fair warning.  I'm not running.  Okay?  But if somebody on

24  the East Coast says, no, you're out of here, you're going to

25  work for us --

```
 1              THE COURT:  Yes.
 2              THE DEFENDANT:  -- for whatever reason, okay, you
 3    know.  I'm telling you now.  Okay?
 4              THE COURT:  Right.
 5              THE DEFENDANT:  Does that make sense?
 6              THE COURT:  Just alert Pretrial Services.
 7              THE DEFENDANT:  I -- I will.  I will do my best to
 8    tell them.  But if I get picked up by -- and I can't tell you
 9    who.  I'm --
10              THE COURT:  I understand.
11              THE DEFENDANT:  I'm just giving you fair warning if
12    they come in, you know, with (indiscernible) above these guys
13    over here, then I got to go work for them.  Okay?
14              THE COURT:  Okay.
15              THE DEFENDANT:  Does that make sense?
16              THE COURT:  Yes, it does.
17              THE DEFENDANT:  I'm sure they're going to communicate
18    with you at some point, but, I mean, there's always a lag if
19    that makes sense.  Okay?
20              THE COURT:  I do.
21              THE DEFENDANT:  All right.  Thank you.
22              THE COURT:  I understand that.
23         Anything further today that needs to be addressed?
24         Mr. Johnson, anything by the Government?
25              MR. JOHNSON:  No, your Honor.
```

1        Thank you.

2              THE COURT:  Mr. Rice, anything by the Defense?

3              THE DEFENDANT:  No, your Honor.

4        Thank you.  All right.

5              THE COURT:  Okay.  Thank you.

6        We'll be in recess.

7        (Colloquy not on the record.)

8              THE CLERK:  All rise.

9        (Court concluded at 12:33:42 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline                    09/25/09

7    _____        _____
     Lisa L. Cline, Transcriptionist      Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25