| | |
|---|---|
| 1 | Shawn Talbot Rice |
| 2 | PO Box 700#81 |
| 3 | Yavapai county |
| 4 | Ash Fork 86320 |
| 5 | Arizona |
| 6 | In Propria Persona |
| 7 | |
| 8 | |

9    UNITED STATES DISTRICT COURT

10   DISTRICT OF NEVADA

11

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br>vs.<br>SAMUEL DAVIS and<br>SHAWN RICE,<br><br>　　Defendants. | Case No.: 2:09-CR-078<br><br>**MANDATORY JUDICIAL NOTICE OF STATUS RELATION OF SIMPE CORPORATION SOLE TO ITS TITULAR HEAD WITH POINTS AND AUTHORITIES** |
| SHAWN RICE,<br>　　Counter-Plaintiff/Claimant,<br>vs.<br>UNITED STATES OF AMERICA,<br>INTERNATIONAL MONETARY FUND<br>(I.M.F.) A/K/A THE FUND, FEDERAL<br>BUREAU OF INVESTIGATION, and THEIR<br>PRINCIPAL,<br>　　Counter-defendants/Libelants, | |
| Shawn Rice, Real Party in Interest, Third Party Intervener, Protected Creditor to Plaintiff by revesting title, Sovereign without subjects, Protected Creditor pursuant to UCC 8, Trust Interest Holder, and Beneficial Owner of the Estate by Statute Merchant, and a Title 18 Section 245 Federally Protected Legal & Lawful Municipality. | |

12   ─────────────────────────────

13   　　Real Party in Interest (RPII) appears specially and not generally and notices the court of

14   the status relation between SIMPE Corp Sole and its titular head property rights in relation

15   therein.

16   　　In the Massachusetts case of The Overseers of the Poor of the City of Boston v. David

17   Sears, 39 Mass (2 Pick) 122 at 128 (1839) the Massachusetts Supreme Court there described

some of the distinguishing aspects between a corporation sole and corporation aggregate as follows:

> "...In all these aspects, the distinction between an aggregate and sole corporation, growing out of the different modes of constitution and forms of action, is striking and obvious. A bishop or parsons acting in a corporate capacity and holding property to him and his successor in right of office, has no need of a corporate name, he requires no particular, he performs all legal acts under his own seal, In his own name and name of office; his own will alone regulates his acts and he has no occasion for a secretary, for he need not keep a record of his acts, need no treasurer, for he has no personal property except the rents and proceeds of the corporate estate, and these he takes to his own use when received. By-laws are unnecessary, for he regulates his own action, by his own will and judgment, like any other individual acting in his own right. But it is not necessary to pursue the comparison into all its details; the points suggested are sufficient to show the legal distinctions between the two classes of corporations."

The Overseers case was decided in 1839. In a more recent decision in 1983, the California Second Appellate District decided County of San Luis Obispo v. Delmar Ashurst, 146 Cal.App.3d 380, 194 Cal.Rptr. 5 (1983) wherein it insightfully stated:

> "...The issue as defined by the trial court, 'is whether the assets of its corporation sole are the personal assets of its titular head, and thus subject to execution for his or her debts.' The answer on the basis of legal authorities defining the corporation sole and its attributes must be, as the trial court concluded, an unequivocal 'no.' The corporation sole is a venerable creation of the common law of England, and is well established under common law in California. (Santillan v. Moses (1850) 1 Cal. 92; Archbishop v. Shipman (1889) 79 Cal. 283. California by statute has legitimized this tradition and regulates the formalities attendant upon the creation and continued existence of the corporation sole (California Corp. Code Section 10000 et. seq.). One principal purpose of the corporation sole is to insure the continuation of ownership [quiet possession given by God under Abrahamic Covenant] dedicated to the benefit of a religious organization which may be held in the name of the titular head [The Office]. Title [quiet possession by inheritance from God] will not then be divested or passed to that person's heirs upon the death of the office holder but will be retained for the benefit of the religious group and passed to the successors to his office.

The topic was covered by Blackstone who described the corporation sole as follows:

> "Corporation sole consist of one person only and his successors, in some particular station, who are incorporated by law, in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they could not have had. In this sense the king is a corporation sole; so is a bishop; some are deans, prebendaries, distinct from their several chapters; and so is every parson and vicar. And the necessity of at least use, of this institution will be very apparent, if we consider the case of a parson of a

church. At the original endowment of parish churches, the freehold of the church, the churchyard, the parsonage house, the globe, and the tithes of the parish, were vested in the then parson by the bounty of the donor, as a temporal recompense to the intent that the same emoluments should afterwards continue as a recompense for the care. But how was this to be effected? The freehold was vested in the parson; and, if we suppose it vested in his natural capacity, on his death it might descend to his heir, and would be liable to his debts and encumbrances; or at best, the heir might be compellable, at some trouble and expense, to convey these rights to the succeeding incumbent. The law therefore has wisely ordained, that the parson, quatenus (as) parson, shall never die, any more than the king; by making him and his successors a corporation. By which means all the original rights of the parsonage are preserved entire to the successor; for the present incumbent, and his predecessor who lived seven centuries ago, are in law one and the same person; and what was given to the one was given to the other also." (1 Blackstone's Commentaries, Ch 18, pp. 469-470).

The Vatican gave formal approval to the corporation sole as one of the approved methods of holding title to church property in a private letter sent to the American bishops in 1911. For the text, see 2T. Bouscaren, Canon Law Digest 443 (1966) A. Maida & N. Cafardl, Church Finances and Church Related Corporations 129 (1986).

"The office of bishop in most dioceses in the U.S. is a corporation sole." 4 New Catholic Encyclopedia, Corporation 337 (1967). A current review as of 1988 reveals approximately one-third of the diocesan bishops are corporations sole. The remainder of the dioceses have small boards, usually appointed by the bishop. See Maitland, The Corporation Sole, 16 Law Quarterly Review 335 (1900), reprinted in F. Maitland, Selected Essays 73 (1936). There is however a biography entitled Corporation Sole, a life of Cardinal Mundelain, see E. Kantowicz, The Corporation Sole (1983).

In 1985 the State of Nevada had its own statutes regarding corporation sole at Nevada Revised Statutes Section 84.010-080.

The doctrine of comity involves the recognition that one sovereignty allows within the territory to the legislative, executive, or judicial act of another sovereignty, having due regard for its own citizens. In general, the principle of comity is that the courts of one state or jurisdiction

will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect. Brown v. Babbit Ford, Inc., 117 Ariz. 192, 571, P.2d 689, 685. Although the term "comity" is defined in Black's Law Dictionary 6th ed. (1991) at page 267, the question is by no means clear whether each state, county, or other political subdivision thereof will automatically recognize a corporation sole acknowledged by the Nevada Secretary of State, or any other State.

In the relation herein, SIMPE Corp, was originally filed in Washington State (1998), Arizona (1998), and California (2009).

And, in the relation between Shawn Rice and SIMPE Corp is one of eleemosynary, religious office holder with a separation of assets between the corporation sole and its titular head/office holder. Therein, the liabilities, duties, and rights are also separate in the court, case no. 2:09-CR-078.

RESPECTFULLY SUBMITTED this 27 September, 2009.

*[signature: Shawn Talbot Rice]*

Shawn Talbot Rice, Real Party in Interest,
Third Party Intervener, Protected Creditor to
Plaintiff by revesting title, Sovereign without
subjects, Protected Creditor pursuant to UCC 8,
Trust Interest Holder, and Beneficial Owner
of the Estate by Statute Merchant, and a Title 18
Section 245 Federally Protected Legal & Lawful Municipality.

## CERTIFICATE OF SERVICE

COPY of the forgoing hand delivered, this _1st_ day of _October_, 2009, to:

Assistant U. S. Attorney Eric Johnson
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone: 702-388-6336
Fax: 702-388-5087

---

Service performed by:

Shawn Talbot Rice
PO Box 700#81
Yavapai county
Ash Fork 86320
Arizona