1 | DANIEL G. BOGDEN
United States Attorney
2 | District of Nevada
L. ERIC JOHNSON
3 | Chief, Organized Crime Strike Force
J. Gregory Damm
4 | Assistant United States Attorney
Organized Crime Strike Force
5 | 333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
6 | Telephone: (702) 388-6336
Facsimile: (702) 388-6418

7

8 | UNITED STATES DISTRICT COURT

9 | DISTRICT OF NEVADA

10 | -oOo-

11 | UNITED STATES OF AMERICA,      )      2:09-CR-078-JCM-(RJJ)
                               )
12 |     Plaintiff,              )      GOVERNMENT'S   NOTICE   OF
                               )      INTENT TO USE EVIDENCE OF
13 |     vs.                     )      OTHER   CRIMES,  WRONGS  OR
                               )      ACTS
14 | SAMUEL DAVIS, and,          )
SHAWN RICE,                    )
15 |                            )
        Defendants.            )
16 |

17 |         COMES NOW the United States of America, by and through DANIEL G.

18 | BOGDEN, United States Attorney, and J. Gregory Damm, Assistant United States

19 | Attorney and hereby gives notice that the government intends to use the following

20 | evidence in the trial of this matter.

21 |                            NOTICE

22 |         Pursuant to Fed.R.Evid. 404(b), the prosecution is providing reasonable notice

23 | in advance of trial of the general nature of any such evidence it intends to introduce at

24 | trial of other crimes, wrongs or acts allegedly committed by the defendants. Without

25 | conceding that the following evidence is governed by Fed.R.Evid. 404(b), and

26 | reserving the right to supplement this notice with additional notices, the government

hereby notifies the defendants that it intends to introduce the following evidence:

1     SAMUEL LYNN DAVIS (DAVIS) is a national leader of a redemption theory

2     program movement and sovereign citizen movement. He has ties with other known

3     sovereign citizen national leaders and teaches redemption theory and sovereign citizen

4     principles along with details regarding the execution of related fraudulent schemes. On

5     approximately January 31, 2006, DAVIS established or caused to be established a

6     nominee Nevada corporation (SELECT BUSINESS SERVICES), through APG, a

7     company owned and operated by W.S.R. and R.C.N.

8          The services provided by APG and W.S.R. allowed for a bank account to be

9     opened in the SELECT BUSINESS SERVICES' corporate name at Nevada First

10    Bank/Bank of Nevada, with W.S.R. as the only signor on the account.  The use of

11    APG's products and services allowed DAVIS to use and control the account and

12    corporation without concern that the account or corporation could be traced back to

13    him.  DAVIS used the SELECT BUSINESS SERVICES account from inception until

14    approximately January 8, 2007, when the last of the funds in the account were returned

15    to SELECT BUSINESS SERVICES/DAVIS by an FTC court appointed receiver, Robb

16    Evans & Associates.

17         Through the use of APG's products and services, DAVIS was able to conceal

18    approximately $230,000 from the IRS while he had an outstanding tax liability for tax

19    years 1986, 1987, and 1998 totaling, at the time, approximately $39,000.  Through the

20    use of the APG system, DAVIS was able to evade the payment of assessed IRS tax

21    liabilities.

22         On March 3, 2009, a federal criminal indictment was filed in the District of

23    Nevada naming DAVIS as a defendant in this case.  CR #1.  The indictment charges

24    DAVIS with conspiracy and multiple counts of money laundering between

25    approximately May 2, 2008, (Count 2) and January 5, 2009, (Count 31).  On or about

26    February 6, 2006, DAVIS caused APG/W.S.R. to open a bank account in the name of

SELECT BUSINESS SERVICES at Nevada First Bank with W.S.R. as the sole signer

on the account.  This conduct occurred more than two years before the conduct alleged in the current indictment.  From the inception of the above-stated bank account, to at least January 8, 2007, DAVIS caused approximately $150,900 to be deposited into this APG nominee corporate bank account which DAVIS controlled.

From the inception of the above-stated corporate bank account, to at least January 8, 2007, DAVIS issued checks from his APG nominee corporate bank account to multiple entities for personal expenses (i.e., Lowe's, Home Depot, auto expenses, tractor payments, payments to W.J. for land/home, etc.).   The payments were accomplished through DAVIS's use of pre-signed/stamped checks bearing W.S.R.'s signature.  DAVIS ordered these checks from APG.

Before DAVIS established SELECT BUSINESS SERVICES up until the present time, DAVIS has had a tax liability with the IRS stemming from assessments in years 1986, 1987, and 1998, now totaling approximately $50,118.77.  While DAVIS had this outstanding liability with the IRS, he was using a system (APG products and services) that was designed and promoted as a way for individuals to protect their assets from the IRS.  Additionally, DAVIS caused over $150,000 to be deposited into his nominee corporate bank account for him to use anonymously.  None of these funds were used to pay-off  the indebtedness that DAVIS owed to the IRS.

On or around February 8, 2006, DAVIS's wife wired $80,000 from a Wells Fargo bank account to APG's "Escrow Account".  DAVIS sent instructions to APG via e-mail instructing them to send the $80,000 to J.H. in Atlanta, Georgia.  During this time period, DAVIS had a tax liability with the IRS of approximately $39,000.

One of the functions for which DAVIS used his APG nominee corporation was to purchase land and a home, not in his name, but in the name of the corporation.  On or around April 4, 2006, DAVIS, through SELECT BUSINESS SERVICES, purchased a piece of real estate located at 32 Rampage Road in Boise, Idaho for $230,000, from W.J. Payments for this property were made out of DAVIS's APG nominee corporate

bank account.  Additionally on or around May 19, 2006, DAVIS purchased 16 acres of land in Idaho in the name of SELECT BUSINESS SERVICES.  According to the real estate purchase and sales agreement for the land, DAVIS paid cash for the asking price of the land, $200,000.  During this time period, DAVIS had an outstanding tax liability with the government.

On or around May 3, 2006, DAVIS wired $82,500 into APG's "Escrow Account".  He then sent instructions to APG via e-mail on May 4, 2006, instructing them to send a wire of approximately $25,500, to Tallinn, Estonia, as a deposit to an E-Gold account.  DAVIS instructed APG to deposit the rest of the $82,500 into his APG nominee corporate bank account.  On May 4, 2006, APG wired $56,650 to DAVIS's SELECT BUSINESS SERVICES bank account at Nevada First Bank. During this time period, DAVIS had an outstanding tax liability with the IRS.

DAVIS used the services of APG in order to hide his assets from the IRS.  He was aware of his tax liabilities with the IRS due to the fact that he had to sign a waiver to extend the collection statute on his 1986 and 1987 tax assessments.  In an attempt to hide from the IRS, DAVIS sought the assistance of APG/W.S.R. in order to disguise his money and property so that the IRS could not seize it.

DAVIS did not file a federal tax return for his corporation, SELECT BUSINESS SERVICES, for tax year 2006 or any subsequent years.  This information further shows that SELECT BUSINESS SERVICES was not set up as a legitimate business, but as a shell for DAVIS to hide his personal financial transactions.  DAVIS has not filed a personal federal income tax return since 1998.  The 1998 federal income tax return was in fact not filed by DAVIS himself, but rather a Substitute for Return filed on DAVIS's behalf by the IRS.

According to the indictment for DAVIS in this case filed on March 3, 2009, DAVIS received approximately $73,782 in fees from laundering proceeds of bank fraud.  These fees that DAVIS received between March 2008 and January 2009 were

1  never reported to the IRS on any federal income tax returns.

2      DAVIS along with fellow associate, J.W., signed up with APG to become

3  consultants for the company.  As a consultant of APG, DAVIS was permitted to use

4  APG's promotional materials to sell APG products and services to clients.  DAVIS

5  discussed at a few "Lawmen" meetings (sovereign citizens movement meetings) the

6  different products and services that APG/W.S.R. offered to clients. DAVIS would talk

7  about how he could use a nominee corporation and a "friendly lien" to lien-up his

8  property, and even use APG's "Escrow Account" to conduct financial transactions

9  anonymously.

10                              CONCLUSION

11      WHEREFORE, the United States respectfully gives notice of its intent to use the

12  above-recited evidence.

13          DATED this _____24th_____ day of May, 2010.

14              Respectfully submitted,

15              DANIEL G. BOGDEN
                United States Attorney

16

17              /s/    J. Gregory Damm

18              J. GREGORY DAMM
                Assistant United States Attorney

19

20

21

22

23

24

25

26

1

## Certificate of Service

2        I, J. Gregory Damm, hereby certify that I am an employee of the United

3  States Department of Justice, and that on this day I served a copy of the following:

4  GOVERNMENT'S NOTICE OF INTENT TO USE EVIDENCE OF OTHER CRIMES,

5  WRONGS OR ACTS, upon counsel for all defendants appearing in this matter via the

6  CM/ECF system, by electronically filing said GOVERNMENT'S NOTICE OF

7  INTENT TO USE EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS and

8  mailing a copy postage prepaid to Shawn Talbot Rice, P.O. Box 700, #81, Ash Fork,

9  Arizona 86320.

10

11  Dated:    May 24, 2010              /s/ Elaine Woolery
                                       Legal Assistant to J. Gregory Damm
12                                     Assistant United States Attorney
                                       District of Nevada

13

14

15

16

17

18

19

20

21

22

23

24

25

26