Shawn Talbot: Rice
in "care of" general post-office box 1092.
nation arizona. seligman city. Rice province.
United States minor, outlying islands
near [86337-1092].

2012 JUL -6  A  9: 19

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA                                    DEPUTY

_____     )
                                    )   Case Number: 2:09-cr-0078 JCM-RJJ - 2
UNITED STATES OF AMERICA            )
                                    )
       Plaintiff / Respondent,      )
                                    )   Petition in Nature of a Motion to Dismiss
       vs.                          )   because Public Law 80-772 Act of June 25,
                                    )   1948 Purporting to Enact title 18 of the
                                    )   United States Code is Unconstitutional and
SHAWN TALBOT RICE                   )   Void ab Initio
                                    )
       Defendant / Petitioner       )
                                    )
Shawn Talbot: Rice                  )
Real Party in Interest              )
_____

**PRAYER FOR RELIEF**

The Assistant United States Attorney in open court on or about March 5, 2009 stated the

law form (jurisdiction) the UNITED STATES OF AMERICA is using against SHAWN TALBOT

RICE is United States Code as enacted by Congress. In this instant case Title 18 United States

Code is specifically being used to prosecute SHAWN TALBOT RICE.  This petition is for sole

and exclusive remedy.

However the record indicates that *Public Law 80-772*, Act of June 25, 1948, Chapter 645,

62 Stat. 683 *et seq.*, which purported to enact Title 18, United States Code, is unconstitutional and

*void* because *H.R. 3190* never passed both Houses as required by Article I, Section 7, Clause 2.

The record further indicates that permitting post-adjournment legislative business pursuant to *H.Con.Res. 219* violated the Quorum, Bicameral and Presentment Requirements of Article I of the Constitution.

The record further indicates that the post-adjournment signing of *H.R. 3190* by Single Officers of the Houses and presentment to and approval thereof by the President pursuant to *H.Con.Res. 219* violated provisions of Article I of the Constitution.

The record further indicates that the purported bill signed by the Officers of both Houses of Congress and presented to the President post-adjournment and in absence of quorums, which was not certified as truly enrolled nor the enrolled bill in fact, is a clear violation of Title 1, United States Code, Section 106, House Rules and Precedents prohibiting such acts, rendered the bill signed into *Public Law 80-772* null and *void*.

The record indicates 18 U.S.C. Section 3231 thereof, 62 Stat. 826, which purported to confer upon "the district courts of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States." These legislative Acts violated the Quorum, Bicameral and/or Presentment Clauses mandated respectively by Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, of the Constitution of the United States. The federal district courts which produce orders and render judgment, under Section 3231, lack jurisdiction and, therefore, each respective order and judgment is *void ab initio*. To detain the alleged defendant under *void* orders and judgments is unconstitutional and unlawful. As such, the alleged defendant must be discharged from their present illegal proceedings and incarceration immediately.

1

2
3

**CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED**

Article I, § 1, commands and declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

4
5
6
7
8

Article I, § 5, Cl. 1, commands, in relevant part, that "a Majority of each [House of Congress] shall constitute a Quorum to do Business," excepting there from permission to "adjourn from day to day" and "to compel Attendance of its Members, in such Manner, and under such Penalties as each House may provide."

9
10

Article I, § 7, Cl. 2, commands, in relevant part, that "[e]very Bill which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

11
12
13
14
15
16

Article I, § 7, Cl. 3, commands, in relevant part, that "[e]very . . . Resolution . . . to which the Concurrence of the Senate and House of Representatives may be necessary . . . shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill."

17
18
19
20
21

Title 1, United States Code, Section 106, Act of July 30, 1947, Chapter 388, Title I, Ch. 2, § 106, 61 Stat. 634, Pub.L. 80-278, provides, in relevant part, that "[w]hen [a] bill . . . shall have passed both Houses, it shall be printed and shall then be called the enrolled bill . . . and shall be signed by the presiding officers of both Houses and sent to the President of the United States."

22
23

**STATEMENT OF FACTS**

24
25
26

United States District Courts are purporting to act pursuant to the grant of original jurisdiction purportedly created by *Public Law 80-772*, Title 18, United States Code, Section 3231.

27
28

The text of the bill, *H.R. 3190* as amended, which became *Public Law 80-772* (enacting Title 18, United States Code, and especially Section 3231), was passed only by the Senate and never passed by the House of Representatives. Moreover, that bill was never certified as enrolled, and was surreptitiously signed by the Speaker of the House and President pro tempore of the Senate under purported authority of a concurrent resolution agreed to by a Congress denounced by President Truman as a " 'body dominated by men with a dangerous lust for power and privilege,' " 27 *Encyclopedia Americana* 175 (2005), without quorums of the respective Houses sitting. Finally, that bill was mistakenly signed by the President of the United States after it was misrepresented to him by solitary Officers as a bill passed by both Houses, which was impossible since no Congress was in session.

For those reasons, *Public Law 80-772* which purportedly enacted Title 18, United States Code, Act of June 25, 1948, Chapter 645, 62 Stat. 683 *et seq.* and Section 3231 thereof, 62 Stat. 826, purporting to confer upon "the district courts of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States" violates Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and are therefore unconstitutional and *void ab initio*. This particular district court, which is acting against the defendant, does so without jurisdiction, each order and judgment is *void ab initio*, and each proceeding there under is fundamentally unconstitutional and unlawful.

### A.  *H.R. 3190* In The First Session Of The 80th Congress

*H.R. 3190* was introduced and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress entitled "Crimes and Criminal Procedure." *See House Report No. 304* (April 24, 1947), p. 1 (App. 67). *See also* 94 *Cong. Rec.* D556-D557 (Daily Digest) (charting *3190*) (App. 65-66). *H.R. 3190* differed from "five . . . bills which . . . preceded it . . . [because] it constitute[d] a revision, as well as a

codification, of the Federal laws relating to crimes and criminal procedure." 93 *Cong. Rec.* 5048-5049 (May 12, 1947) (App. 45-46). The bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." (*Id.*) "The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12, 1947, *id.*; *Journal of the House of Representatives* ("*House Journal*"), May 12, 1947, pp. 343-344 (App. 4-5); 94 *Cong. Rec.* D556-D557 (showing *H.R. 3190*'s only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred . . . to the Committee on the Judiciary." 93 *Cong. Rec.* 5121, May 13, 1947 (App. 47); *Journal of the Senate* ("*Senate Journal*"), May 13, 1947, p. 252 (App. 10).[1]

As passed and enrolled by the House of Representatives *H.R. 3190* included at section 3231, Subtitled "District Courts," the following text:

> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

*H.R. 3190 as passed by the H. of Rep.*, p. 367, § 3231 (App. 110). *See United States v. Sasscer*, 558 F. Supp. 33, 34 (D.MD. 1982).

On July 27, 1947, Congress adjourned without the Senate passing *H.R. 3190*. *See* 93 *Cong. Rec.* 10439, 10522 (July 26, 1947) (App. 48-49). On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned *sine die* on December 19,

1947," without the Senate passing *H.R. 3190*. *Kennedy v. Sampson*, 511 F.2d 430, 444 Appendix

n. 4 (D.C. Cir. 1974).

[1] The Senate Journal for May 13, 1947, was approved by the Senate on May 14, 1947, *Senate Journal*, p. 259

(App. 11), and the House Journal for May 12, 1947, was approved by the House on May 13, 1947. *House Journal*, p.

346 (App. 6). The Journals of the two Houses are admissible as evidence when properly certified. 28 U.S.C. § 1736.

*See also House Doc. No. 355*, 59th Cong., 2nd Sess., *Hinds' Precedents of the House of Representatives*, § 2810, p. 34

(G.P.O. 1907) ("Certified extracts of the Journal are admitted as evidence in the courts of the United States.") (App.

85). *Cf.* Fed. R. Evid. Rule 902(5); *see* 28 U.S.C. § 2072(a) and (b).

## B. *H.R. 3190* In Second Session Of The 80th Congress

The Senate Committee on the Judiciary reported amendments to *H.R. 3190* on June 14,

1948, under *Sen. Rep. No. 1620*. 94 *Cong. Rec.* 8075 (June 14, 1948) (App. 50); *Senate Journal*,

June 14, 1948, p. 452 (App. 34).[2] *Sen. Rep. No. 1620* contained "a large volume of amendments"

and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in

part II of [the new proposed] title 18." Heralding that, upon passage of the amended bill,

"[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a

new jurisdictional section for Title 18. 94 *Cong. Rec.* 8721 (App. 51). The report contained only

the proposed amendments. *See Sen. Rep. No. 1620*, pp. 1 & 4 (App. 103-104).

"[T]he amendments were considered and agreed to en bloc" and then "ordered to be

engrossed." 94 *Cong. Rec.* 8721-8722 (June 18, 1948) (App. 51-52), *Senate Journal*, June 18,

1948, p. 506 (*H.R. 3190*, "as amended," passed the Senate) (App. 37). It was moved that "the

Senate insist upon its amendments" by the House (94 *Cong. Rec.* at 8722); and "[o]rdered that the

Secretary request the concurrence of the House of Representatives in the amendments." *Senate*

*Journal*, *supra*, p. 506; *House Journal*, June 18, 1948, p. 688 (App. 16).

1

The House received the proposed amendments. The Clerk "read the Senate

2

_____

3

[2] The Senate approved its Journal for June 14, 1948. *Senate Journal*, June 15, 1948, pp. 461-462 (App. 35-36).

4

amendments" collectively into the record with which the House concurred. 94 *Cong. Rec.* 8864-

5

8865 (June 18, 1948) (App. 53-54); *House Journal*, June 18, 1948, p. 704 (the "said Senate

6

amendments were concurred in") (App. 17). Although "[t]he House agreed to the amendments to .

7

. . H.R. 3190," *Senate Journal*, June 18, 1948, p. 510 (App. 38), no action was taken on *H.R. 3190*

8

as amended.[3] The *Journal of the House of Representatives* is devoid of any vote on *H.R. 3190*

9

itself on June 18, 1948, and thereafter through adjournment on June 20, 1948. Moreover, the

10

official historical chart of *H.R. 3190* clearly shows the *only* passage by the House of

11

Representatives occurring on May 12, 1947, and specifically references volume 93, page 5048 of

12

the *Congressional Record* as the recorded date the House passed the bill. 94 *Cong. Rec.* D556-

13

D557 (Daily Digest).

14

15

16

17

**C. Congress Agreed By Resolution To Continue Legislative Business By A Single Officer Of**
**Each House During Adjournment**

18

19

On June 19, 1948, the House submitted and agreed to concurrent resolutions *H.Con.Res.*

20

*218* and *219* and requested concurrence by the Senate.

21

22

_____

23

[3] The House approved the Journal for June 18, 1948, *House Journal*, p. 714 (June 19, 1948, approving

24

Journal for "legislative day of. . . June 17, 1948" – *i.e.*, calendar day of June 18, 1948) (App. 18); *id.* at p. 669

25

(showing Friday, June 18, 1948, as "legislative day of Thursday, June 17, 1948") (App. 15), and the Senate approved

26

its Journal for June18, 19 and 20, 1948. *Senate Journal*, July 26, 1948, p. 593 (App. 44).

27

28

*House Journal*, June 19, 1948, pp. 771-772 (App. 19-20); *Senate Journal*, June 18, 1948,

p. 577 (App. 39). "[T]he Senate [then] passed without amendment these concurrent resolutions of

the House."[4] 94 *Cong. Rec.* 9349 (App. 57). *H.Con.Res. 218* "provid[ed] adjournment of the two

Houses of Congress until December 31, 1948," *id.*; *see Concurrent Resolutions,* Second Session,

Eightieth Cong., *H.Con.Res. 218*, June 20, 1948, 62 Stat. 1435-1436 (App. 105-106). *H.Con.Res.*

*219* "authorize[ed] the signing of enrolled bills following adjournment," 94 *Cong. Rec.* 9349,

specifically resolving:

> That notwithstanding the adjournment of the two Houses until December 31, 1948, the
>
> Speaker of the House of Representatives and the President pro tempore of the Senate be,
>
> and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by
>
> the two Houses and found truly enrolled.

*See Concurrent Resolutions, supra, H.Con.Res. 219*, June 20, 1948, 62 Stat. 1436. Congress

adjourned on June 20, 1948, pursuant to *H.Con.Res. 218*. 94 *Cong. Rec.* 9348, 9169 (App. 56, 55);

*House Journal*, June 20, 1948, p. 775; *Senate Journal*, June 20, 1948, p. 578 (App. 40). Both

Houses reconvened on July 26, 1948, pursuant to a proclamation of President Truman. *Senate*

*Journal*, July 26, 1948, p.

---

[4] The House sat from June 19 through June 20, 1948, adjourning at 6:56 A.M., *House Journal,*

June 19, 1948, p. 775 (App. 21), and approved the Journal of the 19th. *House Journal*, July 26, 1948,

pp.792-793 (reconvention by Presidential Proclamation) (App. 28-29).  showing reconvention); *House*

*Journal*, July 26, 1948, pp. 792-793 (same).[5]

**D.  Post-Adjournment Signing Of *H.R. 3190* By Single Officers Of The Houses AndPresentment To And Approval Thereof By The President Pursuant To *H.Con.Res. 219***

With both Houses adjourned, with no quorum, disassembled and dispersed, Mr. LeCompte, the Chairman of the Committee on House Administration reported that that committee had found *H.R. 3190* "truly enrolled." *House Journal*, legislative day of June 19, 1948, p. 776 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT") (App. 22).[6] He attached his certificate of enrollment to the **original** *H.R. 3190* passed by the House on May 12, 1947. *See H.R. 3190, certified after adjournment as "truly enrolled"* (as certified by Richard H. Hunt, Director, Center for Legislative Archives, The National Archives, Washington, D.C.) (App. 107-113). Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the Senate's amended *H.R. 3190* on June 22 and 23, 1948. 94 *Cong. Rec.* 9353-9354 (App. 58-59); *House Journal*, legislative day June 19, 1948, p. 777 (App. 23);

---

[5] The House Journal for July 26, 1948, was approved, *House Journal*, July 27, 1948, p. 797 (App. 30), and the Senate Journal for July 26, 1948, was approved, *Senate Journal*, July 27, 1948, p. 593 (App. 44).

[6] Mr. LeCompte's announcement was reported upon reconvention by the President's Proclamation on July 26, 1948. 94 *Cong. Rec.* 9363 (App. 60).

*Senate Journal*, legislative day June 18, 1948, pp. 578-579 (App. 40-41).*National Archives & Records Adm. Cert., H.R. 3190 signed by House and Senate officers and President Truman* (App. 114-117). The Senate's amended *H.R. 3190* was then presented by the Committee on House Administration to President Truman, on June 23, 1948, who signed it on June 25, 1948[7], at 12:23 P.M. E.D.T., 94 *Cong. Rec.* 9364-9367 (App. 61-64); *House Journal*, legislative day of June 19, 1948, pp. 778, 780-782 (App. 24, 25-27); *Senate*

1   *Journal*, legislative day of June 18, 1948, pp. 579, 583 (App. 41,43). National Archives &

2   Records Adm. Cert., *H.R. 3190,supra*; 94 *Cong. Rec.* D557 (Daily Digest).

### E. The Signatories Of *H.R. 3190* Knew the

### Enacting Clause Was False When Signed

5   *Public Law 80-772* stated that the enactment proceeded "by the Senate and House

6   of Representatives of the United States of America *in Congress assembled*." *See* National

7   Archives & Records Adm. Cert., *H.R. 3190* as signed into *P.L. 80-772*, *supra*. Each

8   signatory knew that neither "House" legislatively existed at that time, and that the

9   legislative process had ceased within the terms of Article I, Sections 5 and 7 on June 20,

10   1948.

_____

[7] That same day President Truman signed into law Public Law 80- 773 enacting into positive law Title 28, United States Code. Act of June 25, 1948, Ch. 646, § 1, 62 Stat. 869. That Act positively repealed the former criminal jurisdiction granted to the district courts. *id.*, § 39 *et seq.*, 62 Stat. 991 *et seq.* (positive repeal listing former 28 U.S.C. § 41, ¶ 2 in schedule of repealed statutes).

*F.  Public Law 80-772* Is Unconstitutional And Void Because *H.R. 3190* Never

Passed Both Houses As Required By Article I, Section 7, Clause 2

### 1. THE LEGAL PRINCIPLES

This case presents the "profoundly important issue,"[9] of the constitutionality of an act of Congress.[10]

Although "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives," (Art.I, § 1, U.S. Constitution), "when [Congress] exercises its legislative power, it must follow the 'single, finely wroughtand exhaustively considered procedures' specified in Article I." *Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise,*

*Inc.*, 501 U.S. 252, 274 (1991) (quoting *INS v. Chadha*, 462 U.S. at 951). Article I establishes "just how those powers are to be exercised." *INS v. Chadha*, 462 U.S. at 945.

An act of Congress "does ***not*** become a law unless it follows each and every procedural step chartered in Article I, § 7, cl. 2, of the Constitution." *Landgraf v. USI Film Products*, 511 U.S. 244, 263 (1994) (citing *INS v. Chadha*, 462 U.S. at 946-951 (emphasis added)); *Clinton*, 524 U.S. at 448 (noting requisite "steps" taken before bill may " 'become a law' " and holding that a procedurally defective enactment cannot " 'become a law' pursuant to the procedures designed by the

---

[9] *Clinton v. City of New York*, 524 U.S. 417, 439 (1998).

[10] *INS v. Chadha*, 462 U.S. 919, 929 (1983).

Framers of Article I, § 7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its ***exact text*** was approved by a majority of the Members of the House of Representatives; (2) the Senate approved ***precisely the same text***; and (3) ***that text*** was signed into law by the President. "If one paragraph of ***that text*** had been omitted at ***any one of those three stages***, [the] law [in question] would ***not*** have been validly enacted."[11] *Clinton*, 524 U.S. at 448 (emphasis added). Between the second and third "procedural steps," the bill " . . . shall . . . be presented to the President . . . " Article I, § 7, Cl. 2.

The text of *H.R. 3190* passed by the House of Representatives was the text as it existed on the date of passage – *i.e.*, May 12, 1947. Whereas, the text of the bill passed by the Senate on June 18, 1948, was *H.R. 3190* "as amended." *Senate Journal*, June 18, 1948, p. 506. Thus, the text of the bills passed by the respective Houses was grossly different and neither bill ever "became a law" *Clinton*, 524 U.S. at 448.

---

[11] "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1 of the Constitution.

" . . . [A] Majority of each [House] shall constitute a Quorum to do Business . . . " Art. I, § 5, Cl. 1.

"Every Bill which shall have passed [both Houses], shall, before it becomes a Law, be presented to the President of the United States; If he approves he shall sign it . . . " Art. I, § 7, Cl. 2.

"Every . . . Resolution . . . to which the Concurrence of [both Houses] may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him . . . " Art. I, § 7, Cl. 3.

### G. Permitting Post-Adjournment Legislative Business Pursuant To *H.Con.Res. 219* Violated The Quorum, Bicameral And Presentment Requirements Of Article I Of The Constitution

After Congress adjourned on June 20, 1948, pursuant to *H.Con.Res. 219*, a single officer of each House of Congress signed *a bill* purporting to be *H.R. 3190* on June 22-23, 1948, 94 *Cong. Rec.* 9354; *House Journal*, legislative day of June 19, 1948, p. 777; *Senate Journal*, legislative day of June 18, 1948, pp. 578-579, and presented *that bill* to the President, who signed it on June 25, 1948. 94 *Cong. Rec.* 9365-9367. Thus, the post-adjournment signature "provision [of *H.Con.Res. 219*] was an important part of the legislative scheme," leading to the enactment of *Public Law 80-772*, without which it would never have "become a Law." *Bowsher v. Synar*, 478 U.S. 714, 728 (1986). *Public Law 80-772 falsely* stated it was "enacted" while both Houses were "in Congress assembled," when in fact Congress was not in session. *See* National Archives & Records Adm. Cert., *H.R. 3190* as signed into *P.L. 80-772*.

The bill signed was the Senate's amended *H.R. 3190* – a bill never certified as "truly enrolled," *compare Pub.L. 80-772*, Enactment Clause & signature pages *with H.R. 3190*, certified as "truly enrolled," *supra*, and *H.Con.Res. 219* never authorized the signing of *unenrolled* bills after adjournment. *See H.Con.Res. 219*, *supra*, 62 Stat. 1436.

Article I, § 5, Clause 1 mandates a quorum of both Houses of Congress "to do Business." This constitutional requirement has been enforced by practice, Rules of the

1   Houses, custom, Supreme Court holdings and duly enacted statutes.

2        1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "

3   'Be it enacted by the Senate and House of Representatives of the United States of America

4   in Congress assembled.' " Although the bill after passage by "both Houses" must be

5   "enrolled" following which it "shall be signed by the presiding officers of both Houses and

6   sent to the President of the United States,"[12] 1 U.S.C. § 106, the actual procedure is

7   regulated by House rules and established practice. Following passage the "chairman of the

8   Committee on House Administration . . . affixes to the bills examined a certificate that the

9   bill has been found truly enrolled,"[13] *House Doc. No. 769, supra*, Stages of a Bill, § 983,

10   No. 16,

11

12        [12] 1 U.S.C. § 106 contains an exception for enrollment "[d]uring the last six days of a session," but no

13   exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.

14        [13] Formerly, the "chairman of the Committee on Enrolled Bills" performed this critical task in the legislative

15   business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by

16   the Speaker." *See House Doc. No. 355*, 59th Cong.,2nd Sess., *Hinds' Precedents of the House of Representatives*, Ch.

17   XCI,§ 3429, notes 3 & 5, p. 311 (G.P.O. 1907) (App. 92). *See House Doc. No.769, supra*, Preface, p. [VI] ("The

18   rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House

19   what the decisions of the courts are to the statutes . . .[which are] embodied in the monumental work[s] of *Hinds* and

20   *Canon*.")(App. 71). p. [483] (App. 79), after which the "enrolled bill is first laid before the House of Representatives

21   and signed by the Speaker . . . after which it is transmitted to the Senate and signed by the President of that body." *Id.*,

22   No. 17, p. [484][14] (App. 80).

23

24   The Supreme Court in *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892), defined the

25   essence of this procedure:

26        ***The signing*** by the Speaker of the House of Representatives, and, by the President

27        of the Senate, ***in open session, of an enrolled bill is an official attestation by the***

28

two houses of such bill as one that has passed Congress. It is *a declaration by the two houses*, through their presiding officers, *to the President*, that a bill, thus attested, has received, in due form, ***the sanction of the legislative branch*** of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added). 1 U.S.C. § 106 codified this implicit constitutional requirement. Reading 1 U.S.C. §§ 101 and 106 together requires that all acts must occur at least through presentment to the President while

Congress is in session. That the enrolled bill must be "layed before the House" prior to signing by the Speaker and *then* "transmitted to the Senate" before the

---

[14] The Supreme Court not only takes judicial notice of the legislative history of a bill, *Alaska v. American Can Co.*, 358 U.S. 224, 226-227 (1959), but will both judicially notice and "h[o]ld" Congress and its legislative committees "to observance of its rules." *Yellin v. United States*, 374 U.S. 109, 114 (1963).

signing by the President of that body concludes that the respective

Houses *must be in session during this transaction.*[15]

An "adjournment terminates the legislative existence of Congress." *Pocket Veto Case*, 279 U.S. at 681. " 'Th[e] expression, a "house," or "each house," [when] employed . . . with reference to the faculties and powers of the two chambers . . . always means . . . the constitutional quorum, assembled for the transaction of business, and capable of transacting business.' " 279 U.S. at 683, quoting I *Curtis' Constitutional History of the United States*, 486 n. 1. Moreover, the term " 'House' " means "the House in session," 279 U.S. at 682, and " 'as organized and entitled to exert legislative power,' that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.' " *Id.* (quoting *Missouri Pacific Railway Co. v. Kansas*, 248 U.S. 276, 281 (1919)). *See also House Doc. No. 355*, *supra*, *Hinds' Precedents*, § 2939, p. 87 (" 'The House is not a House without a quorum' ") (App. 87).

No "attestation" or "declaration **by the two houses** . . . to the President," *Field & Co.*, 143 U.S. at 672, that *H.R. 3190* had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed.

---

[15] "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." *United States v. Munoz-Flores*, 495 U.S. 385, 391 n. 4 (1990) (citing *Field & Co. v. Clark*, 143 U.S. 649 (1892), in which case the Court established the so-called "enrolled bill rule" – a rule not applicable in this case, but a *ruling* that supports alleged defendant's claims.)

*See also United States National Bank of Oregon v. Independent Insurance Agents of America*, 508 U.S. 439, 455 n. 7 (1993) (noting that the rule established in *Field & Co.*, 143 U.S. at 672, made statutory by 1 U.S.C. § 106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. *House Doc. No. 355, supra, Hinds' Precedents, Vol. IV*, § 2951, pp. 90-91 (upon "disclos[ure] . . . that there is not a quorum . . . , [t]he House thereby becomes **constitutionally disqualified** to do further business") (excepting from disqualification the exceptions stated in Art. I, § 5, Cl. 1) (emphasis added) (App. 88-89); *id.*, § 3458, p. 322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.") (App. 93); *id.* at § 3486, pp. 332-333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment) (App. 95-96); *id.* at § 3487, p. 333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment) (App. 96); *id.* at § 4788, p. 1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House.") (App. 100).

Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House . . . sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed,

1  returned signed by said Clerk." 1 U.S.C. § 106. In the immediate case H.R. 3190 was

2  passed by the House of Representatives on May 12, 1947, engrossed and sent to the Senate

3  and there referred to the Senate's Committee on the Judiciary. See 93 Cong. Rec. 5048-

4  5049, 5121; Senate Journal, May 13, 1947, p. 252. However, it was not dealt with nor

5  passed "in that form."

6      Instead, amendments were proposed which were "agreed to en bloc," read into the

7  record and "ordered to be engrossed," 94 *Cong. Rec.* 8721-8722. Then, "the [amended] bill

8  was read the third time and passed." 94 *Cong. Rec.* 8722; *Senate Journal*, June 18, 1948, p.

9  506. The House then concurred in the amendments en bloc. 94 *Cong. Rec.* 8864-8865;

10 *House Journal*, June 18, 1948, p. 704.[16]

11     "The House in which a bill originates enrolls it," *House Doc. No. 769, supra*, Stages

12 of a Bill, No. 15, p. [483] (App. 79), and, in the case of House bills, the "chairman of the

13 Committee on House Administration . . . affixes to the bills examined a certificate that the

14 bill has been found truly enrolled," *id.*, No. 16, p. [483], after which it is "laid before the

15 House . . . signed by the Speaker [then] transmitted to the Senate and signed by the

16 President of that body." *Id.*, No. 17, p. [484]. Unequivocally, "[t]he Speaker may not sign

17 an enrolled bill in the absence of a quorum." *House Doc. No. 355, supra, Hinds'*

18 *Precedents*, § 3458, p. 322. *Cf., id.*, § 2939, p. 87 ("The House is not a House without a

19 quorum.").

20     The constitutional "quorum" issue is precluded from the *Field & Co.'s*

21 ——————————
   [16] This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with

22 Senate amendments comes before the House, the House takes up each amendment by itself. . . ." *House Doc. No. 769,*

23 *Stages of a Bill in the House*, § 983, No. 13, p. [483].

24 "enrolled bill rule" by its terms – *i.e.*, "[t]he signing . . . in open session, of an enrolled

25 bill," 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of

26 [a] constitutional requirement binding Congress." *United States v. Munoz-Flores, supra,*

27

28

495 U.S. at 391 n. 4. Moreover, just as "§ 7 gives effect to all of its Clauses in determining what procedures the Legislative and Executive branches must follow to enact a law," *id.,* 495 U.S. 386 (emphasis by Court), so too does Article I, § 5, Cl. 1 "provid[e] that no law could take effect without the concurrence of the prescribed majority of the Members of both Houses," *INS v. Chadha,* 462 U.S. at 949- 950, as to all legislative "Business." *Cf. United States v. Ballin,* 144 U.S. 1, 3-5 (1892) (to determine whether constitutionally mandated quorum was present for legislative action the Court "assume[s]" the Journals of the Houses are to be considered to decide the issue).

The bill signed by the Officers of the Houses presented to and signed by the President of the United States was the Senate's amended bill, which never passed the House. *H.Con.Res. 219* only "authorized [the] sign[ing] [of] enrolled bills . . . duly passed by the two Houses and found truly enrolled," *H.Con.Res. 219, supra,* 62 Stat. 1436, voiding the signatures on the amended bill.[17]

[17] On July 26, 1948, "Mr. LeCompte, from the Committee on House Administration, reported that that committee had examined and found" that *H.R. 3190* had been "truly enrolled." 94 *Cong. Rec.* 9363. The version of *H.R. 3190* certified as "truly enrolled" by Mr. LeCompte, is the House version passed on May 12, 1947, with the text of the original § 3231 – the text of which was never passed by the Senate – to which his certificate of enrollment is attached. (App. 107-113). The statutory mandate after final passage and printing to "call[ ] " the bill in such final form "the enrolled bill," 1 U.S.C. § 106, Act of July 30, 1947, Ch. 388, Ch. 2, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill," *House Doc. No. 769,* Stages of a Bill, *supra,* No. 16, all of which is required *before* the "sign[ing] by the presiding officers of both Houses and sen[ding] to the President of the United States." 1 U.S.C. § 106.

Having not been enrolled, certified as truly enrolled, or signed by the Speaker of the House with a quorum present, the bill was rendered constitutionally void. *House Doc. No. 769, supra,* Constitution of the United States,

§ 55, p. [19] ("[w]hen action requiring a quorum was taken in the ascertained absence of a quorum . . . the action was null and void") (App. 74); *House Doc. No. 355, supra, Hinds' Precedents*, §§ 3497 & 3498, pp. 344-345 (such a bill is "not in force" and is "not a valid statute") (App. 97-98). *Cf., id., Hinds' Precedents*, § 2962, p. 94 (to vacate legislative act "the absence of a quorum should appear from theJournal") (App. 90).

Art. I, § 7, mandates that a bill that has passed both Houses " 'shall before it becomes a Law, be presented to the President of the United States . . . ,' " Art. I, § 7, Cl. 2; *INS v. Chadha*, 462 U.S. at 945, which "can **only** contemplate a presentment by the Congress in some manner, [because] . . . [a]t that point the bill is necessarily in the hands of the Congress." *United States v. Kapsalis*, 214 F.2d 677, 680 (7th Cir. 1954), *cert. denied*, 349 U.S. 906 (1955) (emphasis added). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. *INS v. Chadha*, 462 U.S. at 945, 947, 951; *La Abra Silver Mining Co. v. United States*, 175 U.S. 423, 454(1899) ("*After a bill has been presented* to the President, *no further action is required by Congress* in respect of that bill, unless it be disapproved by him. . . .") (emphasis added). *See House Doc. No. 355, supra, Hinds' Precedents*, Vol. IV, § 4788, p. 1026 (recognizing that "the presentation of enrolled bills" to the President is a "transaction]" of "business" of "the House"); *id.*, § 3486, p. 332 (recognizing presentment required prior to adjournment); *id.*, § 3487, p. 333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business"). Clearly presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" "prescri[bed] . . . in Art. 1, §§ 1, 7." *INS v. Chadha*, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.' As a consequence, Art. I, § 7, Cl. 3, . . . was added." *INS v. Chadha*, 462 U.S. at 947 (citing 2 Farrand, *supra*, 301-302, 304-305).

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.' " *INS v. Chadha*, 462 U.S. at 952 (quoting S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897)). "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7." *Metropolitan*, 501 U.S. at 276. *See also Bowsher v. Synar*, 478 U.S. at 756 (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' S. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the full Article I requirements must be observed. For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.' Ibid."). " 'Congress,' " of course, " 'cannot grant to an officer under its control what it does not possess.' " *Metropolitan*, 501 U.S. at 275 (quoting *Bowsher v. Synar*, 478 U.S. at 726). Congress does not possess the " 'capab[ility] of transacting business' " and is not " 'entitled to exert legislative power,' " when its "legislative existence" has been "terminate[d]" by an "adjournment." *Pocket Veto Case*, 279 U.S. at 681-683 (citations omitted). "The limitation of the power of less than a quorum is absolute," *House Doc. No. 355, supra, Hinds' Precedents*, Vol. V, Ch. CXL, § 6686, p. 851 (App. 102), and includes the signing of an enrolled bill by the Speaker of the House, *id.*, Vol. IV, Ch. XCI, § 3458, p. 322, and presentment to the President of the United States. *id.*, Ch. XCII, §§ 3486, 3487 & 3497, pp. 332,

333 note 3, 344 & 345 (App. 95-98). *Wright v. United States*, 302 U.S. 583, 600 (1938) (Stone, J.,

concurring) ("The houses of Congress, being collective bodies, transacting their routine business

by majority action are capable of acting only when in session and by formal action recorded in

their respective journals, or by recognition, through such action, of an established practice.") Thus,

"Congress," as defined by the Constitution and Supreme Court, never "presented" *any* version of

*H.R. 3190* to the President of the United States.

Whether the action taken under *H.Con.Res. 219* was an "exercise of legislative power"

depends upon whether it was essentially "legislative in purpose and effect." *INS v. Chadha*, 462

U.S. at 952. "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering

the legal rights, duties, and relations of persons . . . outside the Legislative Branch,' it must take

that action by the procedures authorized in the Constitution." *Metropolitan*, 501 U.S. at 276,

quoting *INS v. Chadha*, 462 U.S. at 952- 955. "If Congress chooses to use a [ ] resolution . . . as a

means of expediting action, it may do so, if it acts by both houses and presents the resolution to

the President," *Consumer Energy Council of America v. F.E.R.C.*, 673 F. 2d 425, 476 (D.C. Cir.

1982), *aff 'd mem. sub nom., Process Gas Consumers Group v. Consumer Energy Council of*

*America*, 463 U.S. 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of *H.Con.Res. 219* was to enact

***a bill*** the text of which at the time of adjournment on June 20, 1948, had not been passed by both

Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented

to the President of the United States *with quorums sitting*. In other words, *H.Con.Res. 219*

unconstitutionally permitted post-adjournment legislative business to proceed without Congress

and upon an unpassed bill. Congress did not follow the procedures mandated by Art. I § 7, Cl. 2

and attempted to supersede the quorum requirements of Art. I, § 5, Cl. 1 *via* a concurrent

resolution to carry forth legislative business with no legislature. The 80th Congress surreptitiously

provided a bill, the text of which had never passed either House " 'mask[ed] under . . . [the]

indirect measure,' " *Metropolitan, supra*, 501 U.S. at 277 (quoting Madison, *The Federalist No.*

*48*, p. 334 (J. Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative

action during adjournment with no quorum and no Congress of an extra-congressional bill. *Public*

*Law 80-772* did not "become a Law" as required by the constitutional procedures mandated under

Article I, § 5, Cl. 1, and Article I, § 7, Cls. 2 and 3, and is unconstitutional and *void ab initio*.

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum . . .

the action [is] null and void," *House Doc. No. 769, supra*, Constitution of the United States, § 55,

p. [19] (citing *Hinds' Precedents*, Vol. IV, § 2964), and "a bill . . . not actually passed [although]

signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." *House Doc.*

*No. 769*, § 103, p. [34] (citing *Hinds' Precedents*, Vol. IV, § 3498) (App. 75).

**H. The United States District Court Orders For A Warrant, Arrest, Imprisonment**

**and Indictment Pursuant to Title 18 U.S.C(Of The Unconstitutional *Public Law 80-***

***772*) Were Issued *Ultra Vires*, Are Unconstitutional And *Coram Non Judice*, And the**

**Continued Proceedings Are Unlawful**

"The challenge in this case goes to the subject-matter jurisdiction of the [respective district]

court[s] and hence [their] power to issue the order[s]," *United States Catholic Conference v.*

*Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77 (1988), placing alleged defendant in prison

and continuing such imprisonment.  Thus, the "question is, whether . . . [the district courts'] action

is judicial or extra-judicial, with or without the authority of law to render [the] judgment[s],"

*Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 718 (1838), and to issue the commitment

orders.

Subject-matter jurisdiction means " 'the courts' statutory or constitutional *power* to adjudicate the case,' " *United States v. Cotton*, 535 U.S. 625, 630 (2002), quoting *Steel Co. v. Citizens For A Better Environment*, 523 U.S. 83, 89 (1998); *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them."); *Reynolds v. Stockton*, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case."). "Subject matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).[20]

" 'Without jurisdiction the court cannot proceed at all in any cause . . . and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause.' " *Steel Co. v. Citizens*, 523 U.S. at 94, quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869); *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992)("lack of subject-matter jurisdiction . . . precludes further adjudication").

---

[20] "Federal courts are courts of limited jurisdiction . . . Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 701 (1982); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922) (all lower federal courts "derive[ ] [their] jurisdiction wholly from the authority of Congress"); *United States v. Hudson & Goodwin*, 11 U.S. 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."). *United States v. Hall*, 98 U.S. 343, 345 (1879) (federal "courts possess no jurisdiction over crimes and offenses . . . except what is given to them by the power that created them"); *Hudson & Goodwin*, 11 U.S. at 33-34. *See also, e.g., United States v. Wiltberger*, 18 U.S. 76, 95-105 (1820) ("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdiction).

This United States Supreme Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.' " *Steel Co.*, 523 U.S. at 94-95, quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884); *See also Insurance Corp. of Ireland, Ltd.*, 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived . . . correction [is mandatory] whether the error was raised in district court" or not. *United States v. Cotton*, 535 U.S. at 630 (citation omitted); *Steel Co.*, 523 U.S. at 94-95 (citing cases). When a district court did "not have subject-matter jurisdiction over the underlying action . . . [its] process[es] [are] void and an order of [punishment] based [thereupon] . . . must be reversed." *United States Catholic Conf.*, 487 U.S. at 77; *Willy v. Coastal Corp.*, 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); *Ex parte Fisk*, 113 U.S. 713, 718 (1885) ("When . . . a court of the United States undertakes, by its process . . . to punish a man . . . [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing . . . is equally void.")

A "court 'has jurisdiction to render a particular judgment *only when the offense charged is within the class of offenses placed by the law under its jurisdiction.*' " 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to prosecute the alleged defendant, the judgment is *void* and the prisoner must be discharged. *Ex parte Yarbrough*, 110 U.S. 651, 654 (1884).

The alleged defendant has established that the text of *H.R. 3190* signed by respective House officers and the President of the United States: (1) failed to pass the House of

Representatives, and (2) that the legislative process continued after Congress adjourned by single officers of each House acting pursuant to *H.Con.Res. 219* without quorums in either House, all of which violated Article I, Section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 – and any of which rendered *Public Law 80-772* unconstitutional and **void ab initio**. *Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is void; and . . . courts, as well as other departments, are bound by that instrument"). Therefore, because "the offense[s] charged . . . [were] placed by the law under [the] jurisdiction," of the respective district courts below pursuant to 18 U.S.C. § 3231 of *Public Law 80-772*, which is unconstitutional, and "void, the court was without jurisdiction and the prisoner must be discharged."

*Yarbrough*, 110 U.S. at 654. Since *Public Law 80-772* has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 and 3 thereof, rendering *void ab initio* the jurisdiction by which the district courts acts to prosecute, try, convict, enter judgment, and continue to imprison in Executive custody, the district courts' actions are " '*ultra vires*,' "*Ruhrgas AG*, 526 U.S. at 583 (quoting *Steel Co.*, 523 U.S. at 101-102), and "*coram non judice.*" *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) at 720.

The judgments of the United States District Court thereupon "being without jurisdiction, [are] void, and the order[s] punishing . . . [are] equally void." *Ex parte Fisk*, 113 U.S. at 718; *United States Cath. Conf.*, 487 U.S. at 77; *Willy v. Coastal Corp.*, 503 U.S. at 139. Where, as here, this court is clearly "without jurisdiction . . . the prisoner[s] . . . must be discharged." *Ex parte Yarbrough*, 110 U.S. at 654. *See also Ex parte Lange*, 85 U.S. (18 Wall.) 163, 166 (1874).

## CONCLUSION

For these reasons, alleged defendant/petitioner prays that this instant case be dismissed with prejudice for lack of subject matter jurisdiction and that all property unlawfully taken on or about March 5, 2009 during an unlawful search of alleged defendant's home be returned and that the alleged defendant immediately be discharged from unlawful imprisonment.

Submitted this _6_ day of _July_____, 2012.

_Shawn Talbot Rice_

Shawn Talbot: Rice

Authorized Representative

alleged defendant

U. S. Assistant Attorney Greg Damm

333 Las Vegas Blvd.

Las Vegas, NV 89101

_____

Service performed by:

_Kristin Leon Rice_

Kristin Rice
In Care of Postal Department 1092
Seligman, Arizona 86337
In Propria Persona

And

Shawn Talbot Rice
73439048 NSDC
2190 E. Mesquite Rd.
Pahrump, Nevada 89060

Title 18 Motion to Dismiss                          Page 25 of 26

1

2

3

4

5    Respectfully Submitted this ____6____ day of ___July___ 2012.

6

7                                   _Shawn Rice, Pro per_
                                    Shawn Rice, Pro per

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit** 07-05-2012-1

**Date** 06 July, 2012

**Time**

**Place**

**#**

**Copy: Page** _____ **of** _____

I swear under penalty of perjury that I have reviewed the attached documents sent by the National Archives and Records Administration, 700 Pennsylvania Avenue, NW, Washington D.C. 20408-0001, dated November 19, 2008 from Rod Ross (NWL) and addressed to Mike Murphy, and can asses to the best of my ability that they are true and accurate documents.


Kristin Leone Rice                              Date


SUBSCRIBED AND SWORN before me this _____ day of _____, 2012

Signature: _____

Residing in _____ County; State of Nevada

My commission expires _____



KIM A. ANDERSEN
Notary Public State of Nevada
No. 10-2809-14
My Appt. Exp. August 16, 2014



# National Archives and Records Administration

*700 Pennsylvania Avenue, NW*
*Washington, DC 20408-0001*

Date:       November 19, 2008

To:         The Files

From:       Rod Ross (NWL)

Subject:    Order for Mike Murphy

For:  Mike Murphy
977 Patuxent Rd.
Odenton, MD  21113

A) House Journal, 1947:  title page, and pages 294, 295, 343, 344, 346
Total of 6 pages  $4.50
Certification of above:  $15.00

B) House Journal, 1948:  title page and pages 669, 688, 704, 714, 771, 772, 775-782, 792, 793 and 797
Total of 18 pages:  $13.50
Certification of above:  $15.00

C) Senate Journal, 1947:  title page and pages 252 and 259
Total of 3 pages:  $2.25
Certification of above:  $15.00

D) Senate Journal, 1948:  title page and pages 452, 461, 462, 506, 510, 577, 578, 579, 583 and 593
Total of 11 pages:  $8.25
Certification of above:  $15.00

E) Senate Report 1620 (80th, 2nd)
Total of 6 pages:  $4.50
Certification of above:  $15.00

F) House Report 304 (80th, 1st):  cover to report, contents page, and pages 1-9, A1, A2, A80 and A81
Total of 10 pages (with two originals reproduced onto single photocopies wherever possible):  $7.50
Certification of above:  $15.00

G) From RG 233, Records of the House of Representatives, HR 80A-B5 for HR 3890: Bill HR 3190 as described in House Report 304 (80th,1st):  pages 1-8, 91, 104, 117, 118, 134, 158, 367, 415, 416, 456, 457. 467, 470 and back page.

Total of 22 pages: $16.50
Certification of above: $15.00

H)   House Document 355 (59th Congress, 2nd )
Serial Set volume 5185: VOLUME 4:  title page and pages 1-4, 34, 59, 87, 90, 91, 94-95,
282, 310, 311, 322, 329, 332, 333, 344, 345, 346
Serial Set volume 5186: VOLUME 5:  title page and pages 849-851, 985 and 1026
Total of 28 pages $21.00
Certification of above: $15.00

I)   House Document 769 (79th,2nd): title page and v, vi-vii, ix-xii, 3, 4, 5, 16, 17, 18, 19,
     20, 21, 22, 23, 24. 25. 32, 33, 34. 35, 36, 37, 58, 59, 60, 61, 62, 63, 481, 482, 483, and
     484
Total of 22 (with two originals reproduced onto single photocopies wherever possible):
$16.50
Certification of above: $15.00

J)   Bound Congressional Record, Volume 93 (80th,1st for 1947);  title page for part 4 and
     pages 5048, 5049, 5121 and title page for part 8 and pages10439 and 10522
Total of 8 pages: $6.00
Certification of above: $15.00

K)  Bound Congressional Record, Volume 94 (80th, 2nd for 1948):  title page for part 14
     and pages D556 and D557; title page for part 6 and page 8075; title page for part 7 and
     pages  8721, 8722, 8864, 8865, 9169, 9348 and 9349; title page for part 8 and pages
     9353, 9354, 9363, 9364, 9365, 9366 and 9367
Total of 21 pages: $15.75
Certification of above: $15.00

Additional:  Public laws:
Pages for the following:  61 Stat 634; 61 Stat 635; 62 Stat 683; 62 Stat 684; 62 Stat 826;
62 Stat 869; 62 Stat 991; 62 Stat 992 through 1009
Total of 25 pages: $18.75
Certification of above: $15.00

Added:

"L"  From RG 233, HR 80A-B9 for HR 3190:  enrollment form, pages 1, 367, 471 and
back page
Total of 5 pages: $3.75
Certification of above: $15.00

"M"  From RG 46, SEN 80A-C2 for HR 3190:  pages 1, 367, 471 and back
Total of 4 pages: $3.00
Certification of above: $15.00

"N" Senate Report 1335 (54th/2d):  9 pages
Total of 9 pages:  $6.75
Certification of above:  $15.00

REVISED GRAND TOTALS

198 pages photocopies, at 75 cents per page = $148.50

15 certifications at $15 each = $225

NEW TOTAL -- $373.50

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### 𝕿𝖔 𝖆𝖑𝖑 𝖙𝖔 𝖜𝖍𝖔𝖒 𝖙𝖍𝖊𝖘𝖊 𝖕𝖗𝖊𝖘𝖊𝖓𝖙𝖘 𝖘𝖍𝖆𝖑𝖑 𝖈𝖔𝖒𝖊, 𝕲𝖗𝖊𝖊𝖙𝖎𝖓𝖌:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and rect copy of documents in his custody.

| SIGNATURE | |
|-----------|--|
| NAME Richard H. Hunt | DATE 11/20/08 |
| TITLE Director Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407-A

A.

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES
# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## FIRST SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON  :  :  JANUARY 3, 1947

IN THE ONE HUNDRED AND SEVENTY-FIRST YEAR
OF THE INDEPENDENCE OF THE UNITED STATES



Prepared under the direction of
John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff, Journal Clerk
and Raymond P. Johnson, and Thomas H. Cleary, Assistant Journal Clerks

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

## PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. AUCHINCLOSS:

H. R. 3183. A bill for the relief of Harry G. Cole; to the Committee on the Judiciary.

By Mr. ENGLE of California:

H. R. 3184. A bill for the relief of Wright H. Huntley; to the Committee on the Judiciary.

By Mr. FOOTE:

H. R. 3185. A bill for the relief of Nick Papedemus; to the Committee on the Judiciary.

By Mr. HÉBERT:

H. R. 3186. A bill for the relief of Alvin A. Baumer, doing business as the Baumer Foods Products Co., of New Orleans, La.; to the Committee on the Judiciary.

By Mr. MILLER of Maryland:

H. R. 3187 A bill for the relief of Calvin D. Lynch & Son, W. Thomas Lockerman, Sudlersville Supply Co., George C. Moore & H. A. Moore, J. McKenny Willis & Son, Inc., Hobbs & Jarman, and Royse R. Spring; to the Committee on the Judiciary.

By Mr. PETERSON:

H. R. 3188. A bill to provide for the advancement of James Edgar Davis on the emergency officers' retired list of the Army; to the Committee on Armed Services.

By Mr. THOMASON:

H. R. 3189. A bill for the relief of Joe Parry; to the Committee on the Judiciary.

## PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

368. By Mr. Andrews of New York: Resolution adopted by the Fraternal Order of Eagles, Niagara Falls Aerie. No. 88, Niagara Falls, N. Y., in opposition to an increase in postage rates on fraternal publications; to the Committee on Post Office and Civil Service.

369. By Mr. GWYNNE of Iowa: Petition of Mrs. Avice D. Brown and citizens of Waterloo, Iowa, regarding S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce, etc.; to the Committee on Interstate and Foreign Commerce.

370. By Mrs. NORTON: Petition of Oak Island Lodge, No. 965, Brotherhood of Railway Carmen of America, Newark, N. J., opposing any change in the Crosser amendments to the Railroad Retirement and Unemployment Act; to the Committee on Education and labor.

371. By Mr. WOLCOTT: Petition of 20 residents of St. Clair County, Mich., expressing interest in proposed legislation which seeks to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and over the radio; to the Committee on Interstate and Foreign Commerce.

## THURSDAY, APRIL 24, 1947

The House was called to order by the Speaker.

The Journal of the proceedings of Wednesday, April 23, 1947, was read and approved.

## COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

588. A letter from the Under Secretary of the Interior, transmitting a draft of a proposed bill to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems; to the Committee on Public Lands.

589. A letter from the Secretary of the Navy, transmitting a report of proposed donations to the Borough of Haddon Heights, N. J., and to the city of Pensacola, Fla.; to the Committee on Armed Services.

590. A letter from the Under Secretary of the Interior, transmitting a printed copy of the Forty-sixth Annual Report of the Governor of Puerto Rico for the fiscal year ended June 30, 1946; to the Committee on Public Lands.

591. A communication from the President of the United States, transmitting drafts of proposed provisions pertaining to existing appropriations of the Navy Department (H. Doc. No. 215); to the Committee on Appropriations and ordered to be printed.

592. A letter from the Attorney General, transmitting request that the case of Alfredo Garofolo be withdrawn from those 1,187 cases involving suspension of deportation referred to in letter of January 15, 1947; to the Committee on the Judiciary.

593. A letter from the Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for the performance of certain functions and activities of the Coast and Geodetic Survey, and for other purposes; to the Committee on Merchant Marine and Fisheries.

594. A communication from the President of the United States, transmitting a revised estimate of appropriation for the fiscal year 1948, involving a decrease of $220,000, for the legislative branch, Library of Congress (H. Doc. No. 216); to the Committee on Appropriations and ordered to be printed.

595. A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the fiscal year 1948 in the amount of $5,420 for the judiciary (H. Doc. No. 217); to the Committee on Appropriations and ordered to be printed.

596. A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the fiscal year 1947 in the amount of $1,175,000 for the legislative branch, Government Printing Office (H. Doc. No. 218); to the Committee on Appropriations and ordered to be printed.

## MESSAGE FROM THE SENATE

A message from the Senate by Mr. Frasier, its legislative clerk, announced that the Senate had passed without amendment a joint resolution of the House of the following title:

H. J. Res. 140. Joint resolution to restore the name of Hoover Dam.

## SENATE ENROLLED BILL SIGNED

The SPEAKER announced his signature to an enrolled bill of the Senate of the following title:

S. 1009. An act to extend the time within which the municipality of Fort Lauderdale, Broward County, Fla., may consummate the purchase of the Coast Guard site (commonly known as the Base, Six property) which is located at Fort Lauderdale.

## ENROLLED JOINT RESOLUTION SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled a joint resolution of the House of the following title, which was thereupon signed by the Speaker:

H. J. Res. 140. Joint resolution to restore the name of Hoover Dam.

## BILLS PRESENTED TO THE PRESIDENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee did on April 23, 1947, present to the President, for his approval, bills of the House of the following titles:

H. R. 2102. An act to provide for a 6 months' extension and final liquidation of the farm labor supply program, and for other purposes.

H. R. 2404. An act to suspend certain import taxes on copper.

## COMMITTEE GRANTED LEAVE TO SIT

On motion of Mr. WOLCOTT, by unanimous consent, the Committee on Banking and Currency was granted permission to sit during the session of the House today.

## MILDRED HICKS

Mr. LeCOMPTE, from the Committee on House Administration, pursuant to clause (2) (a), rule XI, reported (Rept. No. 300) the following resolution (H. Res. 182):

Resolved, That there shall be paid out of the contingent fund of the House to Mildred Hicks, widow of R. C. Hicks, late an employee of the House, an amount equal to 6 months' salary at the rate he was receiving at the time of his death and an additional amount not to exceed $250 toward defraying the funeral expenses of the said R. C. Hicks.

When said resolution was considered and agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

## EXPENSES OF SELECT COMMITTEE ON SMALL BUSINESS

Mr. LeCOMPTE, from the Committee on House Administration, pursuant to

clause (2) (a), rule XI, reported (Rept. No. 301) the following resolution (H. Res. 191):

*Resolved*, That the expenses of the investigation and study to be conducted by the select committee authorized by House Resolution 18 of the Eightieth Congress, not to exceed $60,000, including expenditures for the employment of investigators, attorneys, and clerical, stenographic, and other assistants, shall be paid out of the contingent fund of the House on vouchers authorized by such committee, signed by the chairman thereof, and approved by the Committee on House Administration.

When said resolution was considered and agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

### CONSIDERATION OF LEGISLATION ON APPROPRIATION BILL

Mr. RICH, from the Committee on Rules, called up the following resolution (H. Res. 194):

*Resolved*, That, notwithstanding the provisions of clause 2, rule XXI, it shall be in order to consider, without the intervention of any point of order, in connection with the consideration of the bill (H. R. 3123) making appropriations for the Department of the Interior for the fiscal year ending June 30, 1948, and for other purposes, the appropriation and language contained in the bill on page 50, lines 13 to 21, inclusive, and on page 81, lines 1 to 9, inclusive.

When said resolution was considered. After debate,

On motion of Mr. RICH, the previous question was ordered on said resolution to its adoption or rejection, and, under the operation thereof, said resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

### INTERIOR DEPARTMENT APPROPRIATION ACT, 1948

Mr. JONES of Ohio moved that the House resolve itself into the Committee of the Whole House on the State of the Union for consideration of the bill (H. R. 3123) making appropriations for the Department of the Interior for the fiscal year ending June 30, 1948, and for other purposes.

Pending which,

On motion of Mr. JONES of Ohio, by unanimous consent,

*Ordered*, That general debate continue during the day and be equally divided and controlled by Mr. JONES of Ohio and Mr. KIRWAN, and that the first paragraph of the bill be read for amendment before the Committee rises.

The motion that the House resolve itself into the Committee was then agreed to.

Accordingly,

The House resolved itself into the Committee of the Whole House on the State of the Union for consideration of said bill; and after some time spent therein,

Mr. HALLECK, Speaker pro tempore, assumed the chair,

When Mr. MICHENER, Chairman, reported that the Committee, having had under consideration said bill, had come to no resolution thereon.

### LEAVE TO ADDRESS HOUSE

On motion of Mr. PRICE of Illinois, by unanimous consent,

*Ordered*, That on Monday, April 28, 1947, immediately after the address by Mr. KEEFE, he be permitted to address the House for 30 minutes.

### HOUR OF MEETING

On motion of Mr. JONES of Ohio, by unanimous consent,

*Ordered*, That when the House adjourn today it adjourn to meet at 11 o'clock a. m. on Friday, April 25, 1947.

### LEAVE OF ABSENCE

By unanimous consent, leave of absence was granted to Mr. JACKSON of California from April 25 to 28, 1947.

And then,

### ADJOURNMENT

On motion of Mr. JONES of Ohio, at 6 o'clock and 13 minutes p. m., the House adjourned until 11 o'clock a. m. on Friday, April 25, 1947, pursuant to a special order heretofore agreed to.

### REPORTS OF COMMITTEE ON PUBLIC BILLS AND RESOLUTIONS

Under clause 2 of rule XIII, reports of committees were delivered to the Clerk for printing and reference to the proper calendar, as follows:

Mr. LeCOMPTE: Committee on House Administration. House Resolution 191. Resolution to provide funds for the expenses of the investigation and study authorized by House Resolution 18; without amendment (Rept. No. 301). Ordered to be printed.

Mr. DONDERO: Committee on Public Works. H. R. 1874. A bill to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes; without amendment (Rept. No. 302). Referred to the Committee of the Whole House on the State of the Union.

Mr. DONDERO: Committee on Public Works. H. R. 3029. A bill to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of Columbia; without amendment (Rept. No. 303). Referred to the Committee of the Whole House on the State of the Union.

Mr. ROBSION: Committee on the Judiciary. H. R. 3190. A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," without amendment (Rept. No. 304). Referred to the Committee of the Whole House on the State of the Union.

### REPORTS OF COMMITTEES ON PRIVATE BILLS AND RESOLUTIONS

Under clause 2 of rule XIII, reports of committees were delivered to the Clerk for printing and reference to the proper calendar, as follows:

Mr. LeCOMPTE: Committee on House Administration. House Resolution 182. Resolution authorizing the payment of 6 months' salary and funeral expenses to the widow of the late R. C. Hicks; without amendment (Rept. No. 300). Ordered to be printed.

### PUBLIC BILLS AND RESOLUTIONS

Under clause 3 of rule XXII, public bills and resolutions were introduced and severally referred as follows:

By Mr. ROBSION:

H. R. 3190. A bill to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure"; to the Committee on the Judiciary.

By Mr. ANDREWS of New York:

H. R. 3191. A bill to amend Public Law 301, Seventy-ninth Congress, approved February 18, 1946, so as to extend the benefits of the Missing Persons Act, approved March 7, 1942 (56 Stat. 143), as amended, to certain members of the organized military forces of the Government of the Commonwealth of the Philippines; to the Committee on Armed Services.

By Mr. COLE of Kansas:

H. R. 3192. A bill to establish a sinking fund for the payment of Government obligations; to the Committee on Ways and Means.

By Mr. D'EWART:

H. R. 3193. A bill to make the provisions of the Internal Revenue Code granting percentage depletion with respect to vermiculite permanent; to the Committee on Ways and Means.

H. R. 3194. A bill to amend the Reclamation Project Act of 1939; to the Committee on Public Lands.

By Mr. KEOGH (by request):

H. R. 3195. A bill to extend the coverage of Panama Canal employees eligible to the benefits of the act of March 2, 1931, chapter 375, as amended, and for other purposes; to the Committee on Merchant Marine and Fisheries.

By Mr. KILDAY:

H. R. 3196. A bill to provide for the distribution of nonappropriated moneys derived from the operation of officers' clubs of the Army of the United States; to the Committee on Armed Services.

*United States or of any State or any subdivision thereof, for such copies or information furnished for official use in connection with the official duties of such officers or agencies.*

H. R. 2353. A bill to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes.

Page 3, lines 12 and 13, strike out " (1) that the lands shall be used for park and recreational purposes; (2) ".

Page 3, line 11, strike out all following "provide", and all of line 12 before "that".

Page 3, line 3. after "Interior", strike out the semicolon, insert a period and strike out balance of bill.

*Ordered,* That the Clerk request the concurrence of the Senate in said bills, severally.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill of the Senate (S. 64) granting the consent of Congress for the construction of a dam across Dan River in North Carolina, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1465) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the Committee on the Judiciary was discharged from further consideration of the bill of the Senate (S. 132) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 1465, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2076) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 273) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for

other purposes, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2076, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2238) to amend section 327 (h) of the Nationality Act of 1940.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 460) to amend section 327 (h) of the Nationality Act of 1940, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2238, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1999) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 534) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent the bill H. R. 1999, a similar House bill, was laid on the table.

The bill (H. R. 797) to change the name of the Lugert-Altus Irrigation project in the State of Oklahoma to the W. C. Austin project was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 214) to change the name of the Lugert-Altus Irrigation project in the State of Oklahoma to the W. C. Austin project, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 797, a similar House bill, was laid on the table.

—

The Committee of the Whole House on the State of the Union was discharged

from further consideration of the bill (H. R. 1467) to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts.

When said bill was considered and read twice.

Mr. SPRINGER submitted the following amendments, which were agreed to:

Page 1, line 4, after "follows:", insert *Strike the word "six" where it appears in section 1 (a) and substitute in lieu thereof the word "seven;".*

Page 1, line 4, strike out "Renumber" and insert *renumber.*

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2083) to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights."

When said bill was considered and read twice.

The following amendments, recommended by the Committee on the Judiciary, were agreed to:

Page 21, line 19, strike out "June 3" and insert *June 18.*

Page 34. line 9, strike out comma after "Puerto Rico" and "and the courts of first instance of the Philippine Islands".

Page 34, line 18, strike out "bill in equity" and insert *complaint.*

Page 39, line 22, strike out "March 2, 1913" and insert *July 1, 1909.*

Mr. ROBSION submitted the following amendment, which was agreed to:

Page 41, lines 8 and 9, strike out "and not exceeding $1 per annum for the catalogs issued during the year for any one class of subjects".

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

—

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

When said bill was considered and read twice.

Mr. WALTER submitted the following amendment, which was agreed to:

Page 434, line 11, after "of", strike out "three" and insert *five.*

Case 2:09-cr-00078-JCM-RJJ    Document 262    Filed 07/06/12    Page 38 of 100

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

*Ordered*, That the Clerk request the concurrence of the Senate in said bill.

### BILLS PASSED OVER

By unanimous consent, bills of the following titles were severally passed over without prejudice and retain their places on the Consent Calendar:

S. 26. An act to make criminally liable persons who negligently allow prisoners in their custody to escape.

S. 321. An act to amend section 17 of the Pay Readjustment Act of 1942, so as to increase the pay of cadets and midshipmen at the service academies, and for other purposes.

H. R. 174. A bill to amend section 26, title I, chapter 1, of the act entitled "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900 (31 Stat. 321), as amended by the act of May 31, 1938 (53 Stat. 588).

H. R. 673. A bill to repeal certain provisions authorizing the establishing of priorities in transportation by merchant vessels.

H. R. 966. A bill to amend section 14 of the Veterans' Preference Act of June 27, 1944 (58 Stat. 387).

H. R. 2229. A bill to amend the act of June 25, 1938, relating to the appointment of postmasters under civil service.

H. R. 2759. A bill to amend the Interstate Commerce Act, as amended, so as to provide limitations on the time within which actions may be brought for the recovery of undercharges and overcharges by or against common carriers by motor vehicle, common carriers by water, and freight forwarders.

H. R. 3214. A bill to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

### BILLS OBJECTED TO

One objection being made to the consideration of the bill (H. R. 1556) to provide basic authority for the performance of certain functions and activities of the Bureau of Reclamation, said bill was passed over on the Consent Calendar, under the rule.

Three objections being made to the consideration of the joint resolution (H. J. Res. 152) relating to the marketing of Virginia sun-cured tobacco under the Agricultural Adjustment Act of 1938, as amended, said bill was stricken from the Consent Calendar.

—

Motions severally made to reconsider the votes whereby each bill and joint resolution on the Consent Calendar was disposed of today were, by unanimous consent, severally laid on the table.

### COMMITTEE ON ARMED SERVICES

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 141):

*Resolved*, That the Committee on Armed Services, acting as a whole or by subcommittee, is authorized and directed to conduct thorough studies and investigations relating to matters coming within the jurisdiction of such committee under rule XI (1) (c) of the Rules of the House of Representatives, and for such purposes the said committee or any subcommittee thereof is authorized to sit and act during the present session of Congress at such times and places, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena or otherwise the attendance and testimony of such witnesses and the production of such books, records, papers, and documents, as it deems necessary. Subpenas may be issued over the signature of the chairman of the committee, or by any member designated by such chairman, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses.

The committee shall report to the House of Representatives during the present session of Congress the results of its studies and investigations with such recommendations for legislation or otherwise as the committee deems desirable.

When said resolution was considered. After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agred to was, by unanimous consent, laid on the table.

### COMMITTEE ON PUBLIC LANDS

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 93):

*Resolved*, That the Committee on Public Lands (now comprised of the six former Committees on Insular Affairs, Territories, Public Lands, Irrigation and Reclamation, Mines and Mining, and Indian Affairs) may make investigations into any matter within its jurisdiction. For the purpose of making such investigations the committee, or any subcommittee thereof, is authorized to sit and act during the present Congress at such times and places within or outside the United States, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require, by subpena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any member of the committee designated by him, and may be served by any person designated by such chairman or member.

When said resolution was considered. After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

### COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 153):

*Resolved*, That, effective from January 3, 1947, the Committee on Interstate and Foreign Commerce, or any duly authorized subcommittee thereof, is authorized to continue the investigation begun under authority of House Resolution 318 of the Seventy-ninth Congress, and for such purposes shall have the same power and authority as that conferred by such House Resolution 318. The committee may from time to time make such preliminary reports to the House as it deems advisable; and shall, during the present Congress, report to the House the results of its investigation, together with such recommendations as it deems advisable. Any report submitted when the House is not in session shall be filed with the Clerk of the House.

When said resolution was considered. After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to, was, by unanimous consent, laid on the table.

### ENROLLED BILLS SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

### ENROLLED SENATE JOINT RESOLUTION SIGNED

The SPEAKER announced his signature to an enrolled joint resolution of the Senate of the following title:

S. J. Res. 102. Joint resolution to permit United States common communications carriers to accord free communication privileges to official participants in the world telecommunications conferences to be held in the United States in 1947.

### LEAVE TO ADDRESS THE HOUSE

On motion of Mr. BENNETT of Missouri, by unanimous consent,

Secretary of War inactivating the United States Army post at Camp McCoy and requesting that steps be taken to prevent such order from taking effect; to the Committee on Armed Services.

### PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. EBERHARTER:

H. R. 3424. A bill for the relief of Mrs. Mitsu Yajima; to the Committee on the Judiciary.

By Mr. EVINS:

H. R. 3425. A bill for the relief of the Lebanon Woolen Mills, Inc.; to the Committee on the Judiciary.

H. R. 3426. A bill for the relief of Mr. and and Mrs. Lem Motlow; to the Committee on the Judiciary.

H. R. 3427. A bill for the relief of Mrs. Mary H. Overall and Thomas I. Baker; to the Committee on the Judiciary.

By Mr. FOGARTY:

H. R. 3428. A bill granting an annuity to Emma June Wilbur; to the Committee on the Judiciary.

### PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

488. By Mr. BRADLEY of California: Petition of Mrs. C. D. Rasmussen, of Long Beach, Calif., and 226 other residents of the Eighteenth Congressional District of California, urging favorable consideration and support of S. 265, a bill to prevent the interstate transmission of advertising of all alcoholic beverages and the broadcasting of all such advertising by means of radio; to the Committee on Interstate and Foreign Commerce.

489. By Mr. BRAMBLETT: Petition of Elmer J. Grain, Monterey, Calif., and others, regarding immediate cashing of veterans' terminal-leave bonds; to the Committee on Veterans' Affairs.

490. By Mr. HOLMES: Petitions of residents of Walla Walla, Wash., urging passage of S. 265, a bill to prohibit transportation of alcoholic-beverage advertising and broadcasting alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

491. By Mr. LEWIS: Petition of 94 residents of Cadiz and surrounding communities, in support of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

492. By Mr. McGREGOR: Petition of citizens of Mount Vernon, Ohio (Knox County), in behalf of passage of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and the broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

493. By Mr. COTTON: Petition of the executive committee of the New Hampshire Bar Association, urging Congress to endorse H. R. 1639; to the Committee on Education and Labor.

494. By Mr. SMITH of Wisconsin; Resolution of May 8, 1947, by Kenosha Jewish Welfare Fund, Kenosha, Wis., calling upon the United States Government to take the initiative during the special meeting of the General Assembly of the United Nations in championing the program for Palestine, to insist that the Jewish people be accorded full representation in all deliberations regarding Palestine within the United Nations through the Jewish agency, and to bring weight to bear on the mandatory government to the end that an interim policy based upon the existing mandate be set in motion at once providing for immediate large-scale Jewish immigration into Palestine and the removal of discriminatory land restrictions in the Jewish national home; to the Committee on Foreign Affairs.

495. By Mr. WELCH: California State Senate Resolution No. 17, relative to the development of deposits of mineral ores in the United States; to the Committee on Public Lands.

496. Also, California State Senate Resolution No. 6, memorializing and petitioning the President and Congress of the United States to pass appropriate legislation to enable veterans who obtained guaranteed loans prior to December 28, 1945, to come within provisions of Public Law 268; to the Committee on Veterans' Affairs.

497. By the SPEAKER: Petition of officers and members of the Townsend conference from the Eighth District of the State of Massachusetts, petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16; to the Committee on Ways and Means.

498. Also, petition of members of Townsend Club, No. 2, Boston, Mass, petitioning consideration of their resolution with reference to endorsement of the Townsend plan; to the Committee on Ways and Means.

499. Also, petition of Donald F. Dooley, Janesville, Wis., and others, petitioning consideration of their resolution with reference to request for an impartial investigation of the Allis-Chalmers Manufacturing Co.'s behavior in an 11-month strike; to the Committee on Education and Labor.

## TUESDAY, MAY 13, 1947

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, May 12, 1947, was read and approved.

### COMMUNICATION.

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows.

675. A letter from the Director, Administrative Office of the United States Courts, transmitting a draft of a proposed bill to provide for the appointment of an additional circuit judge for the seventh judicial circuit; to the Committee on the Judiciary.

676. A letter from the Under Secretary of Agriculture, transmitting a report on the cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

677. A communication from the President of the United States, transmitting a revised estimate of appropriation for the fiscal year 1948 involving an increase of $8,850,000 for the Navy Department (H. Doc. No. 246); to the Committee on Appropriations and ordered to be printed.

### CALENDAR WEDNESDAY BUSINESS DISPENSED WITH

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That business in order for consideration on Wednesday, May 14, 1947, under clause 7, rule XXIV, the Calendar Wednesday rule, be dispensed with.

### COMMITTEES GRANTED LEAVE TO SIT

By unanimous consent, committees were granted leave to sit during general debate in the House, as follows:

Committee on Interstate and Foreign Commerce, for today;

Committee on Banking and Currency, for today; and

Subcommittee No. 3 of the Committee on Merchant Marine and Fisheries, tomorrow.

### BILLS PRESENTED TO THE PRESIDENT

Mr. LeCOMPTE, from the Committee of House Administration, reported that that committee did on May 12, 1947, present to the President, for his approval, bills of the House of the following titles:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation, for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

### STATE, JUSTICE, AND COMMERCE, AND JUDICIARY APPROPRIATION BILL, 1948

Mr. STEFAN moved that the House resolve itself into the Committee of the Whole House on the State of the Union for the consideration of the bill (H. R. 3311) making appropriations for the Departments of State, Justice, and Commerce, and the Judiciary, for the fiscal year ending June 30, 1948, and for other purposes.

Pending which,

On motion of Mr. STEFAN, by unanimous consent,

Ordered, That the time for general debate run on today, be equally divided



COPY
Reproduced at the National Archives

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and ...ect copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| NAME Richard H. Hunt | DATE 11/20/08 | |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

B.

# JOURNAL

### OF THE

# HOUSE OF REPRESENTATIVES
# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## SECOND SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON : : JANUARY 6, 1948

IN THE ONE HUNDRED AND SEVENTY-SECOND YEAR
OF THE INDEPENDENCE OF THE UNITED STATES



Prepared for John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff,
Journal Clerk; Raymond P. Johnson and Thomas Cleary, Assistants

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

*Page 48*, strike out lines 8, 9, 10, and 11 and insert:

*(g) The term "organized unit" when used with respect to a Reserve component shall be deemed to mean a unit in which the members thereof satisfactorily participate in scheduled drills and training periods as prescribed by the Secretary of Defense.*

*Page 49*, strike out all of sections 22 and 23 and insert:

*Sec. 22. The Congress declares in accordance with our traditional military policy as expressed in the National Defense Act of 1916, as amended, that it is essential that the strength and organization of the National Guard, both ground and air, as an integral part of the first-line defenses of this Nation, be at all times maintained and assured. To this end it is the intent of the Congress that whenever Congress shall determine that units and organizations are needed for the national security in excess of those of the Regular components of the Ground Forces and the Air Forces, and those in active service under this Act, the National Guard of the United States, both ground and air, or such part thereof as may be necessary for a balanced force, shall be ordered to active Federal service and continued therein so long as such necessity exists.*

*Sec. 23. This Act shall be effective upon its enactment.*

The bill, as amended, was ordered to be engrossed and read a third time.

Mr. MARCANTONIO demanded the reading of the engrossed copy of said bill.

**RECESS**

On motion of Mr. HALLECK, at 8 o'clock and 12 minutes p. m., the House stood in recess until 10 o'clock a. m. on Friday, June 18, 1948.

**FRIDAY, JUNE 18, 1948**

*(Legislative day of Thursday, June 17, 1948)*

**AFTER RECESS**

The SPEAKER called the House to order at 10 o'clock a. m.

**FURTHER MESSAGE FROM THE SENATE**

A still further message from the Senate, by Mr. Frazier, its legislative clerk, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, a bill of the House of the following title:

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

The message also announced that the Senate insists upon its amendments to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. GURNEY, Mr. BROOKS, Mr. REED, Mr. FERGUSON, Mr. BRIDGES, Mr. THOMAS of

Oklahoma, Mr. HAYDEN, and Mr. RUSSELL to be the conferees on the part of the Senate.

The message also announced that the Senate had passed, with amendments in which the concurrence of the House is requested, a bill of the House of the following title:

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

The message also announced that the Senate insists upon its amendments to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. AIKEN, Mr. YOUNG, Mr. THYE, Mr. THOMAS of Oklahoma, and Mr. ELLENDER to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to a joint resolution (S. J. Res. 117) entitled "Joint resolution providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States."

**CORRECTION OF ROLL CALLS**

On motion of Mr. BLATNIK, by unanimous consent, roll call No. 111 was corrected to show him voting in the negative.

On motion of Mr. DAVIS of Wisconsin, by unanimous consent, roll call No. 113 was corrected to show him present.

**FOOD, DRUG, AND COSMETIC ACT**

Mr. LEONARD W. HALL submitted a conference report (Rept. No. 2400) on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 4071) to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended, together with a statement thereon for printing in the Record under the rule.

**MILITARY ESTABLISHMENT APPROPRIATIONS, 1949**

On motion of Mr. ENGEL of Michigan, by unanimous consent, the bill (H. R. 6771) making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes, together with the amendments of the Senate thereto, was taken from the Speaker's table.

When, on motion of Mr. ENGEL of Michigan,

*Resolved,* That the House disagree to the amendments of the Senate to said

bill and agree to the conference asked by the Senate on the disagreeing votes of the two Houses thereon.

Thereupon the Speaker announced the appointment of Messrs. ENGEL of Michigan, CASE of South Dakota, TIBBOTT, SCRIVNER, KERR, MAHON, and NORRELL managers on the part of the House at said conference.

*Ordered,* That the Clerk notify the Senate thereof.

**SELECTIVE SERVICE**

The SPEAKER laid before the House the unfinished business, being the reading of the engrossed copy of the bill H. R. 6401.

Mr. MARCANTONIO withdrew his demand for the reading of the engrossed copy of said bill.

The bill was then read a third time by title.

Mr. PHILBIN moved to recommit the bill to the Committee on Armed Services.

On motion of Mr. ANDREWS of New York the previous question was ordered on the motion to recommit to its adoption or rejection.

The question being put, viva voce,

Will the House recommit said bill?

The SPEAKER announced that the nays had it.

Mr. MARCANTONIO objected to the vote on the ground that a quorum was not present and not voting.

A quorum not being present,

The roll was called under clause 4, rule XV,

When there appeared— Yeas----- 125
                       Nays----- 283

[Roll No. 118]

Those voting in the affirmative—

| | | |
|---|---|---|
| Allen, Ill. | Gillie | Morris |
| Andersen, | Granger | Murray, Wis. |
| H. Carl | Grant, Ind. | Nicholson |
| Andresen, | Griffiths | Nodar |
| August H. | Gross | O'Hara |
| Arnold | Gwynne, Iowa | O'Konski |
| Banta | Hagen | Pfeifer |
| Barden | Harness, Ind. | Philbin |
| Beall | Havenner | Powell |
| Bender | Heffernan | Rankin |
| Bishop | Hill | Reed, Ill. |
| Blatnik | Hoeven | Reed, N. Y. |
| Bloom | Hoffman | Rees |
| Bolton | Holifield | Rich |
| Bradley | Horan | Rockwell |
| Brehm | Hull | Rooney |
| Buffett | Isacson | Sabath |
| Busbey | Jenison | Sadowski |
| Butler | Jenkins, Ohio | Schwabe, Mo. |
| Carson | Johnson, Ill. | Schwabe, Okla. |
| Celler | Johnson, Ind. | Scoblick |
| Chenoweth | Jones, Wash. | Scott, Hardie |
| Chiperfield | Keefe | Scott, |
| Church | Keogh | Hugh D., Jr. |
| Clevenger | Klein | Shafer |
| Clippinger | Knutson | Short |
| Cole, Mo. | Landis | Simpson, Ill. |
| Crosser | Lemke | Smith, Kans. |
| Crow | Lewis, Ohio | Smith, Ohio |
| Cunningham | Love | Smith, Wis. |
| Davis, Wis. | McCowen | Snyder |
| Dawson, Utah | McCulloch | Somers |
| Delaney | McGarvey | Stanley |
| Dolliver | McGregor | Stefan |
| Donohue | Madden | Stevenson |
| Doughton | Maloney | Stratton |
| Douglas | Mansfield | Twyman |
| Elliott | Marcantonio | Vail |
| Ellis | Martin, Iowa | Vursell |
| Elsaesser | Mason | Weichel |
| Feighan | Miller, Conn. | Welch |
| Folger | Miller, Nebr. | Youngblood |
| Gallagher | Mitchell | |

hereupon, at my request, the Attorney General on March 19 instituted an action and obtained an injunction in the United States District Court for the Eastern District of Tennessee. This order enjoined both the Corporation and the Council, and all persons in active participation with them, from engaging in any strike or lock-out or from interfering with normal continuance of work, or from making any change in terms or conditions of employment other than by mutual agreement.

On March 24 I reconvened the Board of Inquiry. Negotiations between the parties continued, with the assistance of the Federal Mediation and Conciliation Service. On May 18 the Board of Inquiry submitted to me its second report, stating that the position of the parties remained unaltered and the dispute unsettled.

On June 1 and 2 the National Labor Relations Board conducted a secret ballot of the employees to ascertain whether they wished to accept the final offer of settlement as stated and made by the employer. The employees, by a vote of 771 to 26, rejected the employer's last offer. On June 7 the National Labor Relations Board certified to the Attorney General the results of this election. On June 8 the employees at a union meeting took action looking to a possible stoppage if the injunction were lifted and if the employer unilaterally placed in effect the terms proposed in its final offer.

On June 10, pursuant to section 210 of the Labor Management Relations Act, the Attorney General moved the court to discharge the injunction. The injunction was discharged on June 11.

During this period, the parties continued negotiations, with the assistance of the Federal Mediation and Conciliation Service. On June 15 the parties reached agreement on the terms of a new contract.

All parties to this dispute and the Government agencies concerned complied with all legal and procedural requirements of title II of the Labor Management Relations Act, 1947.

A number of additional facts concerning this dispute are set forth in the first and second reports of the board of inquiry. Copies of these reports are transmitted to the Congress with this message.

Both parties are to be commended for achieving settlement of this dispute without an interruption of work.

The dispute at Oak Ridge has raised some question, nevertheless, as to the sufficiency of present collective-bargaining methods in atomic-energy installations.

This question is somewhat different from others which have arisen in the past. On the one hand, it is clear that the national security and the development of the beneficial arts and sciences are bound up with the progress of our atomic-energy program. Thus, every dispute which threatens to seriously impair that program imperils the national health and safety.

On the other hand, it is equally clear that the progress of our atomic-energy program requires the support and drive of broad sectors of the American economy. In order to encourage such support, the Atomic Energy Commission has lodged in its contractors a large measure of responsibility and authority. The progress of the program is equally dependent upon the full and willing support of the men and women who work in atomic-energy plants and laboratories.

Under these circumstances, it is imperative that the most successful techniques of the collective-bargaining process should be adopted for the atomic-energy program.

The objective should be twofold: The parties should continue to enjoy the maximum of voluntary action and freedom of choice; secondly, the public interest must be protected at all times.

I believe that special study should be given to the problem of peaceful and orderly settlement of labor disputes in Government-owned, privately operated atomic-energy installations, such as those at Richland, Wash.; Oak Ridge, Tenn.; Los Alamos, N. Mex.; the Argonne National Laboratory, Chicago, Ill.; and others.

I propose, therefore, to establish a commission composed of men having expert knowledge in the field of labor relations, to study this problem and to make such recommendations as they may find necessary. The commission should explore the question whether any special legislation should be enacted to protect the national interest without depriving management or labor organizations of the initiative and freedom necessary for the progress of our atomic-energy program. The commission should study ways and means of adapting to the atomic-energy program the best of our experience in the complex field of labor relations. The commission should concern itself also with special aspects of the problem, such as questions of bargaining representation, uniformity of working conditions and wages, and procedures for grievance handling.

The commission should concern itself, in short, with the broad code of conduct which should be observed by management and labor in their relations with each other in this vital program.

In appointing this commission I shall request the advice of the Atomic Energy Commission and the Joint Committee on Atomic Energy both as to the membership of the commission and the specific questions to be studied.

I believe that the report of this commission, which should be submitted as soon as possible, will be of great value in guiding contractors, labor organizations, and the Government in this new and vital field. I am confident that this is the best avenue to follow to achieve and maintain that proper balance between freedom and responsibility which is the tradition in all our economic relations, including those between management and labor.

HARRY S. TRUMAN.

THE WHITE HOUSE, June 18, 1948.

The message was referred to the Committee on Education and Labor and ordered to be printed.

### MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 5710. An act to amend the Act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended.

The message also announced that the Senate insists upon its amendment to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H. R. 2192) entitled "An act for the relief of the Massman Construction Company."

The message also announced that the Senate had passed without amendment bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 1220. An act for the relief of James Sigler and Frederick R. Vogelsland III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp. of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

read a third time, was read a third time by title, and passed.

A motion to reconsider the vote whereby said bill was passed was, by unanimous consent, laid on the table.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

### AMENDING SECTIONS 3108 AND 3250 OF INTERNAL REVENUE CODE

On motion of Mr. GRANT of Indiana, by unanimous consent, the Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 6800) to amend sections 3108 and 3250 of the Internal Revenue Code, and for other purposes.

When said bill was considered and read twice, ordered to be engrossed and read a third time, was read a third time by title, and passed.

A motion to reconsider the vote whereby said bill was passed was, by unanimous consent, laid on the table.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

### CRIMES AND CRIMINAL PROCEDURE

On motion of Mr. REED of Illinois, by unanimous consent, the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," together with the following amendments of the Senate thereto, was taken from the Speaker's table:

Page 3, following "13. Laws of States adopted for areas within Federal jurisdiction." insert 14. Applicability to Canal Zone.

Page 5, line 4, after "States", insert , except the Canal Zone.

Page 8, after line 15 insert:

§ 14. Applicability to Canal Zone.

In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 498, 502, 506, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2199, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2390, 2421, 2422, 2423, 2424, 3059, 3105, 3109.

Page 91, strike out "610. Contributions by national banks or corporations." and insert 610. Contributions or expenditures by national banks, corporations or labor organizations.

Page 104, strike out lines 4 to 21, inclusive, and insert:

§ 610. Contributions by National Banks, Corporations or Labor Organizations

It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commission to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

For the purposes of this section "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rate of pay, hours of employment, or conditions of work.

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "institution," in line 23.

Page 134, line 19, after "both", insert ; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

Page 158, after line 12, insert While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association.

Page 367, strike out lines 15 to 18, inclusive, and insert The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of

the courts of the several States under the laws thereof.

Page 415, line 10, after "Zone.", insert District of Columbia.

Page 415, after line 17, insert:

Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.

Page 416, after line 21, insert:

Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.

Page 443, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert Title 1 of the United States Code.

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "18" and insert 18.

Page 457, line 3, strike out "20" and insert 19.

Page 457, strike out lines 8 to 15, inclusive, and insert:

Sec. 20. This Act shall take effect September 1, 1948.

Page 457, line 16, strike out "22" and insert 21.

Page 463, about middle of page, strike out

| "July 3 ....... | 129 | 4, 5 | 40 | 755, 788 | 15 | 704, 705" |

Page 467, below middle of page, strike out

| "June 20....... | 634 | 4 | 49 | 1566 | 16 | 708 |
| Do ....... | 635 | 1, 2 | 49 | 1577 | 22 | 243" |

and insert

| June 20.......... | 635 | 1, 2 | 49 | 1577 | 22 | 243 |

Page 470, after

| "June 8 ......... | 179 | 1, 2, 3 | 69 | 204, 236 | 18 | 241, 241a, 242" |

insert:

| July 31......... | 599 | 2, 69 | 519 | 31 | 244 |

Page 471, at the end of the schedule of repeals on this page, insert:

| 1847—Apr. 16.. | 59 | ..... | 61 | 68 | 18 | 411 |
| May 16.. | 73 | ..... | 61 | 97 | 13 | 744—1 |
| June 9.. | 117 | ..... | 61 | 134 | 18 | 344 |
| June 23.. | 189 | 30 | 61 | 160 | 9 | 591 |

When, on motion of Mr. REED of Illinois, said Senate amendments were concurred in.

A motion to reconsider the vote whereby said Senate amendments were concurred in was, by unanimous consent, laid on the table.

Ordered, That the Clerk notify the Senate thereof.

### BUREAU OF RECLAMATION EMERGENCY FUND

On motion of Mr. WELCH, by unanimous consent, the bill (H. R. 3218) to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems, together with the following amendment of the Senate thereto, was taken from the Speaker's table.

After line 10, insert:

Sec. 2. The term "unusual or emergency conditions", as used in this Act, shall be construed to mean canal bank

cases; to the Committee on the Judiciary.

By Mr. HARNESS of Indiana:

H. Res. 691. Resolution authorizing the appointment of a select committee to conduct a study and investigation of the organization, personnel, and activities of the Federal Communications Commission; to the Committee on Rules.

By Mrs. ROGERS of Massachusetts:

H. Res. 693. Resolution providing for the consideration of H. R. 6958; to the Committee on Rules.

H. Res. 694. Resolution providing for the further expenses for conducting the study and inspection authorized by House Resolution 120 of the Eightieth Congress; to the Committee on House Administration.

### PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. BLAND:

H. R. 6991. A bill for the relief of Hampton Institute; to the Committee on the Judiciary.

By Mr. GAMBLE:

H. R. 6992. A bill for the relief of the estate of James J. Barnett, deceased; to the Committee on the Judiciary.

By Mr. KLEIN:

H. R. 6993. A bill for the relief of Leonid Zankowsky; to the Committee on the Judiciary.

H. R. 6994. A bill for the relief of Gronislav Vydaevich; to the Committee on the Judiciary.

H. R. 6995. A bill to authorize the admission of Mrs. Julia Balint to the United States; to the Committee on the Judiciary.

By Mrs. ST. GEORGE:

H. R. 6998. A bill for the relief of Janos and Marianne Mero Somogyi; to the Committee on the Judiciary.

By Mr. MANSFIELD:

H. R. 6996. A bill for the relief of the Montana Engineering & Construction Co.; to the Committee on the Judiciary.

By Mr. REEVES:

H. R. 6997. A bill for the relief of Ferd Owen, Berdie Owen, Gilbert Good, Lela Owen Good, Audit Owen, Wayne Owen, Art Owen, Has Owen, Marvin Owen, and Gene Owen, doing business as Owen Bros.; to the Committee on the Judiciary.

### PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

2105. By the Speaker: Petition of New York Teachers Chapter, American Veterans Committee, petitioning consideration of their resolution with reference to endorsement of the Taft-Ellender-Wagner housing bill; to the Committee on Banking and Currency.

2106. By Mr. CASE of South Dakota: Petition of Mrs. Isaac De Haan, Corsica,

S. Dak., and 14 others, urging the defeat of any legislation proposing the establishing of a universal military training program; to the Committee on Armed Services.

2107. By Mr. GRAHAM: Petition of 17 members of the Winfield Township WCTU, of Butler County, Pa., opposing the Towe bill, H. R. 4278, or recommending prohibiting the sale of beer to trainees, especially those under the age of 21 years; to the Committee on Armed Services.

2108. By Mr. SMITH of Wisconsin: Resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., favoring a change to the hundredweight system for grain; to the Committee on Agriculture.

2109. Also, resolution adopted by Upper Mississippi Valley Water Use Council at its meeting held in Dubuque on June 4, urging Congress to adequately support the United States Geological Survey's program of water investigations; to the Committee on Agriculture.

2110. Also, resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., endorsing legislation to bring into the open all groups whose aim is to overthrow our constitutional form of government; to the Committee on Un-American Activities.

2111. Also, resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., endorsing all legislation which is designed to keep the Commodity Credit Corporation from competing with private business; to the Committee on Banking and Currency.

2112. By Mr. SABBATH: Memorial of the City Council of the City of Chicago, memorializing Congress to provide appropriations for the operation of airtraffic control towers by the Civil Aeronautics Administration in cities throughout the United States; to the Committee on Appropriations.

2113. By the SPEAKER: Petition of New York Teachers Chapter, American Veterans Committee, petitioning consideration of their resolution with reference to endorsement of the Taft-Ellender-Wagner housing bill; to the Committee on Banking and Currency.

2114. By Mr. BUCK: Petition of Dr. and Mrs. Frank E. Becker, containing 1,215 signatures, including those of 223 residents of Staten Island, N. Y., urging the appropriation by the Congress of sufficient funds for the education and general rehabilitation of the Navajo Indians; to the Committee on Public Lands.

## SATURDAY, JUNE 19, 1948

The House was called to order by the Speaker.

The Journal of the legislative day of Thursday June 17, 1948, was read and approved.

### COMMUNICATION

A communication from the Acting Secretary of the Interior, pursuant to clause 2, rule XXIV, transmitting a draft of a proposed bill to promote the settlement and development of the public domain in the Territory of Alaska by facilitating the construction of necessary housing therein, and for other purposes, was taken from the Speaker's table and referred to the Committee on Banking and Currency.

### MESSAGE FROM THE SENATE

A message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $250,000 to each State for the construction of hospitals.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and other purposes.

H. R. 6116. An act to amend the Trading With the Enemy Act.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred, enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes.

The message also announced that the Senate had passed bills and joint resolutions of the following titles, in which the concurrence of the House is requested:

S. 411. An act for the relief of Ghetel Pollak Kahan, Magdalena Linda Kahan (wife), and Susanna Kahan (daughter, 10 years old).

S. 2054. An act for the relief of Engebert Axer.

S. 2075. An act for the relief of Wisia Paryzenberg.

S. 2235. An act for the relief of Milo Jurisevic, Mrs. Jelena Jurisevic, Svetozar, Jurisevic. and Radmila Jurisevic.

**ADJOURNMENT RESOLUTION**

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 218):

*Resolved,* That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said concurrent resolution was agreed to was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said concurrent resolution.

**AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS**

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 219):

*Resolved,* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said resolution was considered and agreed to was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said concurrent resolution.

**AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES**

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

**REPORTS OF INVESTIGATING COMMITTEES TO BE DOCUMENTS OF THE EIGHTIETH CONGRESS**

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That reports filed with the Clerk following the adjournment of the House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

**GENERAL LEAVE TO EXTEND REMARKS**

On motion of Mr. HALLECK, by unanimous consent, all Members were granted permission, until the last edition authorized by the Joint Committee on Printing is published, to extend and revise their own remarks in the Record on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

**CLERK TO RECEIVE MESSAGES**

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

**REPORTS FROM THE OFFICE OF THE COMPTROLLER GENERAL**

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 700):

*Resolved,* That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (56 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

**DESIGNATION OF ACTING CLERK OF THE HOUSE OF REPRESENTATIVES**

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 701):

*Resolved,* That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

The SPEAKER laid before the House the following communication from the Clerk, which was read:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
*Washington, D. C., June 20, 1948.*
The honorable the SPEAKER,
*House of Representatives.*

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,
JOHN ANDREWS,
*Clerk of the House of Representatives.*

**EMPIRE PARLIAMENTARY ASSOCIATION**

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 201, Eightieth Congress, he had appointed the following Members on the part of the House to attend the meeting of the Empire Parliamentary Association to be held in Bermuda beginning November 15, 1948: Mr. TALLE, of Iowa, chairman; Mr. CORBETT, of Pennsylvania; Mr. KEFAUVER, of Tennessee; Mr. WORLEY, of Texas.

**INVESTIGATIONS OF PACIFIC ISLANDS AND AREAS**

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 129, Eightieth Congress, he had appointed as members of the joint committee to make a study and investigation of the islands and other areas of the Pacific subject to the authority of the United States the following members of the Committee on Public Lands of the House of Representatives: Mr. CRAWFORD, Mr. LEMKE, Mr. FERNANDEZ.

And the following Members of the Committee on Foreign Affairs of the House of Representatives: Mr. FULTON, Mr. JACKSON of California, Mr. PFEIFER.

**FURTHER MESSAGE FROM THE SENATE**

A still further message from the Senate, by Mr. Burke, one of its clerks, announced that the Senate had passed without amendment a bill of the House of the following title:

H. R. 5355, An act authorizing a per capita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation.

The message also announced that the Senate agrees to the amendment of the House to the bill (S. 2877) entitled "An act to amend the Reconstruction Finance Corporation Act, as amended," with an amendment, as follows: Strike out, "$35,000,000" and insert in lieu thereof "$40,000,000."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amend-

ment of the House to the bill (S. 2242) entitled "An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes."

The message also announced that the Senate agrees to the amendment of the House to a bill of the Senate of the following title:

S 2730. An act to credit, in certain cases, military service and training preparatory thereto performed by employees of the postal service.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the House to the bill (S. 2830) entitled "An act to extend for 5 years the authority to provide for the maintenance of a domestic tin-smelting industry."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6771) entitled "An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate agrees to the amendments of the House to the amendments of the Senate Nos. 28 and 30 to the above-entitled bill.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 2510) entitled "An act to provide for certain administrative expenses in the Post Office Department, including retainment of pneumatic-tube systems, and for other purposes."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6829) entitled "An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate had passed without amendment a joint resolution of the House of the following title:

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

The message also announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 199. Concurrent resolution authorizing the printing of additional copies of the report (H. Rept. 1920) on the Communist Party of the United

States as an advocate of overthrow of Government by force and violence.

H. Con. Res. 213. Concurrent resolution authorizing the Committee on Expenditures in the Executive Departments, House of Representatives, to have printed for its use additional copies of the hearings held before a special subcommittee of said committee, current Congress, relative to investigation as to the manner in which the United States Board of Parole is operating and as to whether there is a necessity for a change in either the procedure or basic law.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6481) entitled "An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate recedes from its amendments Nos. 1, 2, and 3 to the above-entitled bill; and that the Senate agrees to the amendments of the House to Senate amendments Nos. 7, 13, 16, 24, and 26 to said bill.

The message also announced that the Senate agrees to the amendment of the House to a bill of the Senate of the following title:

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following titles:

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6935) entitled "An act making appropriations for the fiscal year ending June 30, 1948, and for other purposes."

The message also announced that the Senate recedes from its amendment numbered 25 to the above-entitled bill.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1322) entitled "An act to provide a Federal charter for the Commodity Credit Corporation."

The message also announced that the Senate agrees to the report of the com-

mittee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to bills of the House of the following titles:

H. R. 5904. An act to incorporate Virgin Islands Corporation, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and additional compensation for postmasters and employees of the field service in the Post Office Department.

H. R. 6801. An act making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes.

The message also announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 218. Concurrent resolution providing for adjournment of the two Houses of Congress until December 31, 1948.

H. Con. Res. 219. Concurrent resolution authorizing the signing of enrolled bills following adjournment.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (H. R. 6248) entitled "An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes."

The message also announced that the Senate had passed without amendment joint resolutions of the House of the following titles:

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following titles:

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitments.

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

**ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED**

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions

service-connected disabilities who have dependents.

S. 2825. An act to increase the rates of service-connected death compensation payable to certain widows, children, and dependent parents of persons who served in the active military or naval service, and for other purposes.

S. J. Res. 37. Joint resolution requesting the President to proclaim February 1 as National Freedom Day.

S. J. Res. 208. Joint resolution consenting to an interstate boundary compact by and between the States of Michigan, Minnesota, and Wisconsin.

And then.

ADJOURNMENT

On motion of Mr. HALLECK, pursuant to House Concurrent Resolution 218, at 6 o'clock and 56 minutes a. m., June 20, 1948, the House adjourned until 12 o'clock meridian on Friday, December 31, 1948.

REPORTS OF COMMITTEES OF PUBLIC BILLS AND RESOLUTIONS

Under clause 2 of rule XIII, reports of committees were delivered to the Clerk for printing and reference to the proper calendar, as follows:

Mr. WELCH: Committee on Public Lands. H. R. 6697. A bill to authorize the sale and grant to the city of Los Angeles, Calif., of certain interests in public lands, and repealing a certain act; with amendments (Rept. No. 2429). Referred to the Committee of the Whole House on the State of the Union.

Mr. WOLVERTON: Committee on Interstate and Foreign Commerce. Report on the activity of the Committee on Interstate and Foreign Commerce, Eightieth Congress; without amendment (Rept. No. 2433). Referred to the Committee of the Whole House on the State of the Union.

Mr. REES: Committee on Post Office and Civil Service. Report on the survey and study of the postal service; without amendment (Rept. No. 2434). Referred to the Committee of the Whole House on the State of the Union.

Mr. HOFFMAN: Committee on Expenditures in the Executive Departments. Seventeenth intermediate report on the investigation as to the manner in which the United States Board of Parole is operating; without amendment (Rept. No. 2441). Referred to the Committee of the Whole House on the State of the Union.

Mr. WEICHEL: Committee on Merchant Marine and Fisheries. Senate Joint Resolution 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provisions for certain ocean-transportation service to, from, and within Alaska; without amendment (Rept. No. 2447). Referred to the Committee of the Whole House on the State of the Union.

CHANGE OF REFERENCE

Under clause 3 of rule XXII, the Committee on Ways and Means was discharged from the consideration of the bill (H. R. 5849) to amend the Federal Alcohol Administration Act, and for other purposes, and the same was referred to the Committee on Interstate and Foreign Commerce.

PUBLIC BILLS AND RESOLUTIONS

Under clause 3 of rule XXII, public bills and resolutions were introduced and severally referred as follows:

By Mr. HARDIE SCOTT:

H. R. 6999. A bill to provide for capital-gain treatment with respect to income received on the redemption of certain United States saving bonds; to the Committee on Ways and Means.

By Mr. BARTLETT:

H. R. 7000. A bill authorizing municipalities o fthe Territory of Alaska to enact transaction taxes; to the Committee on Public Lands.

By Mr. WELCH:

H. R. 7001. A bill to aid the settlement and development of Alaska; to the Committee on Public Lands.

H. R. 7002. A bill to settle and extinguish land claims to the public domain in the Territory of Alaska; to the Committee on Public Lands.

By Mr. WOLCOTT:

H. R. 7003. A bill to provide for a cash allowance for uniforms for employees of the United States Government; to the Committee on Post Office and Civil Service.

By Mr. MARCANTONIO:

H. R. 7004. A bill repealing section 202 (e) of the Sugar Act of 1948; to the Committee on Agriculture.

By Mr. FULTON:

H. R. 7005. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. WEICHEL:

H. R. 7006. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. KELLEY:

H. R. 7007. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. McDOWELL:

H. R. 7008. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. MORGAN:

H. R. 7009. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McMAHON:

H. R. 7010. A bill to provide for the admission to the United States of certain persons who served in the Polish Army, and for other purposes; to the Committee on the Judiciary.

By Mr. MEADE of Kentucky:

H. R. 7011. A bill to amend section 2 of the act entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," as amended; to the Committee on the Judiciary.

By Mr. SANBORN:

H. R. 7012. A bill to promote a sound monetary system; to the Committee on Banking and Currency.

By Mr. SMATHERS:

H. R. 7013. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mrs. BOLTON:

H. R. 7014. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. CORBETT:

H. R. 7015. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. EATON:

H. R. 7016. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McDONOUGH:

H. R. 7017. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. PFEIFER:

H. R. 7018. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. BARTLETT:

H. R. 7019. A bill to promote the settlement and development of the public domain in the Territory of Alaska by facilitating the construction of necessary housing therein, and for other purposes; to the Committee on Banking and Currency.

Case 2:09-cr-00078-JCM-RJJ   Document 262   Filed 07/06/12   Page 50 of 100

# JOURNAL OF THE

H. R. 7020. A bill to authorize a program of useful public works for the development of the Territory of Alaska; to the Committee on Public Lands.

By Mr. JENKINS of Pennsylvania:

H. R. 7021. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. VAN ZANDT:

H. R. 7022. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. EBERHARTER:

H. R. 7023. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. KERSTEN of Wisconsin:

H. R. 7024. A bill to amend an act entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," approved October 15, 1914 (38' Stat. 730), as amended; to the Committee on the Judiciary.

By Mr. JAVITS:

H. R. 7025. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. BUCHANAN:

H. R. 7026. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. CHELF:

H. R. 7027. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McMAHON:

H J Res. 435. Joint resolution to establish a commission to investigate and study the entire field of educational nursing; to the Committee on Interstate and Foreign Commerce.

By Mr. SOMERS:

H. Res. 695. Resolution authorizing an investigation of conditions in Palestine; to the Committee on Rules.

By Mr. MULTER:

H. Res. 696. Resolution authorizing an investigation of conditions in Palestine; to the Committee on Rules.

By Mr. LeCOMPTE:

H. Res. 697. Resolution providing expenses for conducting the investigation incurred by the select committee authorized by House Resolution 691, which was referred to the Committee on House Administration.

By Mr. DONOHUE:

H. Res. 698. Resolution calling upon Congress to take effective action against the spread of inflation and the high cost of living; to the Committee on Banking and Currency.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. JENKINS of Pennsylvania:

H. R. 7028. A bill for the relief of Maria Forbes; to the Committee on the Judiciary.

By Mr. McCORMACK:

H. R. 7029. A bill for the relief of John J. O'Mara; to the Committee on the Judiciary.

By Mr. PHILBIN:

H. R. 7030. A bill for the relief of Adalbert (Bela) Juth; to the Committee on the Judiciary.

PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

. 2115. By Mr. KEARNEY: Petition by the members of Otsego County (N. Y.) Pomona Grange, urging that the Congress of the United States take immediate steps to appropriate money to set up a laboratory for the study and research of the causes, remedies, and final eradication of the hoof-and-mouth disease; to the Committee on Appropriations.

2116. By Mrs. ROGERS of Massachusetts: Petition of the General Court of Massachusetts, relative to the recognition of the state of Israel and the lifting of the embargo on arms to Palestine; to the Committee on Foreign Affairs.

APPOINTMENTS BY THE SPEAKER SUBSEQUENT TO ADJOURNMENT

INVESTIGATION OF FEDERAL COMMUNICATIONS COMMISSION

The SPEAKER, pursuant to the authority conferred upon him by House Resolution 691, Eightieth Congress, and the order of the House of June 19, 1948, empowering him to appoint commissions, boards, and committees authorized by law or by the House, did on June 29, 1948, appoint as members of the select committee to conduct a study and investigation of the organization, personnel, and activities of the Federal Communications Commission the following Members of the House: Hon. FOREST A. HARNESS, Indiana, chairman; Hon. J EDWARD W. HALL, New York; Hon. CHARLES H. ELSTON, Ohio; Hon. J. PERCY PRIEST, Tennessee; Hon. OREN HARRIS, Arkansas.

WASHINGTON AND LEE UNIVERSITY BICENTENNIAL COMMISSION

The SPEAKER, pursuant to the authority conferred upon him by Public Law 636, Eightieth Congress, and the order of the House of June 19, 1948, empowering him to appoint commissions, boards and committees authorized by law or by the House, did on July 9, 1948, appoint as members of the United States Washington and Lee University Bicentennial Commission the following members on the part of the House to serve with himself: Hon. CLARENCE J. BROWN, Ohio; Hon. JAMES W. WADSWORTH, New York; Hon. JOHN W. FLANNAGAN, Jr., Virginia; Hon. FADJO CRAVENS, Arkansas.

A FURTHER MESSAGE FROM THE SENATE SUBSEQUENT TO ADJOURNMENT

A message from the Senate, received by the Clerk of the House on June 24, 1948, announced that the Senate had passed a concurrent resolution of the following title in which the concurrence of the House is requested:

S. Con. Res. 59. Concurrent resolution relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements.

BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading with the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the oHuse of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series

of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTION SIGNED SUBSEQUENT TO ADJOURNMENT

The SPEAKER, pursuant to the authority granted him by House Concurrent Resolution 219, second session of the Eightieth Congress, did on June 22, 1948, sign enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarnot.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED SUBSEQUENT TO ADJOURNMENT

The SPEAKER, pursuant to the authority granted him by House Concurrent Resolution 219, second session, Eightieth Congress, did, on the follow-

*ing* dates, sign enrolled bills and joint *resolutions* of the Senate of the following titles:

On June 22, 1948:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes.

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war.

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 1280. An act to create a commission to hear and determine the claims of certain motor carriers.

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton.

S. 1717. An act for the relief of the estate of William R. Stigall, deceased.

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes.

S. 2381. An act to provide for an air parcel-post service, and for other purposes.

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance.

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold.

S. 2440. An act for the relief of Charles Duncan Montrieth.

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes.

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks.

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes.

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota.

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund.

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes.

S. 2705. An act to reimburse the James & Phelps Construction Co.

S. 2709. An act for the relief of Stefan Magura and Michal Magura.

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department.

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians.

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company.

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment.

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations.

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry.

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans.

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor.

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On June 23, 1948:

S. 165. An act for the relief of Doris E. Snyder.

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

BILLS AND JOINT RESOLUTIONS PRESENTED TO THE PRESIDENT SUBSEQUENT TO ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee did on the following dates present to the President, for his approval, bills and joint resolutions of the House of the following titles:

On June 21, 1948:

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 703. An act for the relief of Leon Nikolaivich Volkov.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph de Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America.

H. R. 1076. An act for the relief of Chester O. Glenn.

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp., of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1733. An act for the relief of G. C. Hedrick.

H. R. 1734. An act for the relief of Gabel Construction Co.

H. R. 1779. For the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor.

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation.

H. R. 2096. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes.

H. R. 2192. An act for relief of the Massman Construction Co.

H. R. 2193. An act for the relief of Robert E. Graham.

H. R. 2352. An act to provide for sale to the Crow tribe of interests in the estates of deceased Crow Indian allottees, and to provide for the sale of certain lands to the Board of County Commissioners of Comanche County, Okla., and for other purposes.

H. R. 2372. An act for the relief of George Cleve Williams.

H. R. 2395. An act for the relief of the Cypress Creek drainage district of the State of Arkansas.

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased.

H. R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins.

H. R. 2551. An act for the relief of William R. Ramsey.

H. R. 2552. An act for the relief of Thomas A. Hanley.

H. R. 2696. An act for the relief of Otto Kraus, receiver of the Neafie and Levy Ship & Engine Building Co.

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor.

H. R. 2732. An act for the relief of Dennis Stanton.

H. R. 2734. An act for the relief of Joseph M. Henry.

H. R. 2878. An act to amend the act approved May 18, 1928 (45 Stat. 602), as amended, to revise the roll of the Indians of California provided therein.

H. R. 2889. An act for the relief of Aubrey F. Houston.

H. R. 2918. An act for the relief of the Sumner County Colored Fair Association.

H. R. 3062. An act for the relief of the estate of Rudolph Maxmilian Goepp, Jr.

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems.

H. R. 3261. An act for the relief of Capt. Carroll C. Garretson.

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker.

H. R. 3499. An act for the relief of Petrol Corp.

H. R. 3566. An act to amend subsection (c) of section 19 of the Immigration Act of 1917, as amended, and for other purposes.

H. R. 3735. An act to authorize the Secretary of the Army to sell and convey to Okaloosa County, State of Florida, all the right, title, and interest of the United States in and to a portion of Santa Rosa Island, Fla., and for other purposes.

H. R. 3937. An act for the relief of William C. Reese.

H. R. 3999. An act to authorize the Attorney General to adjudicate certain claims resulting from evacuation of certain persons of Japanese ancestry under military orders.

H. R. 4047. An act for the relief of Edmund Huppler.

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended.

H. R. 4103. An act for the relief of Charles M. Davis.

H. R. 4199. An act for the relief of George Haniotis.

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes.

H. R. 4330. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions.

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.

H. R. 4435. An act to amend the Civil Aeronautics Act of 1938 by redefining certain powers of the Administrator, by authorizing delegation of certain powers by the Civil Aeronautics Board to the Administrator, and for other purposes.

H. R. 4441. An act for the relief of the William J. Burns International Detective Agency.

H. R. 4452. An act for the relief of Douglas L. Craig.

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming.

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.

H. R. 4518. An act for the relief of Gerald S. Furman.

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey).

H. R. 4590. An act for the relief of Mrs. Loraine Thomsen.

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes."

H. R. 4644. An act for the relief of E. Brevard Walker, trading as E. B. Walker Lumber Co.

H. R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain merchandise between Hyder, Alaska, and point in the continental United States.

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $100,000 to each State for the construction of hospitals.

H. R. 4856. An act to delay the liquidation of mineral interests reserved to the United States as required by the Farmers' Home Administration Act of 1946, and for other purposes.

H. R. 4881. An act for the relief of Dimitri Petrou.

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection.

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park and for other purposes.

H. R. 5252. An act to extend the time for commencing the construction of a toll bridge across the Rio Grande at or near Rio Grande City, Tex.

H. R. 5355. An act authorizing a percapita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation.

H. R. 5508. An act to amend the Veterans' Preference Act of 1944 to extend the benefits of such act to certain mothers of veterans.

H. R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended.

H. R. 5716. An act to record the lawful admission to the United States for permanent residence of Patricia Schwartz and Beatrice Schwartz.

H. R. 5734. An act to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and golf-course purposes, certain land situated within the boundaries of the Veterans' Administration center at Cheyenne, Wyo.

H. R. 5750. An act to provide for the extension and improvement of post-office facilities at Los Angeles, Calif., and for other purposes.

H. R. 5861. An act to direct the Secretary of Agriculture to convey certain land to the State of Oklahoma.

H. R. 5886. An act to amend section 332 (a) of the Nationality Act of 1940.

H. R. 5888. An act to amend and supplement the Federal-Aid Road Act, approved July 11, 1916 (39 Stat. 355), as amended and supplemented, to authorize appropriations for continuing the construction of highways, and for other purposes.

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes.

H. R. 6089. An act to amend the act of July 6, 1945 (Public Law 134).

H. R. 6090. An act authorizing the Secretary of the Interior to issue patents for lands held under color of title.

H. R. 6096. An act to provide for making available the Government-owned alcohol plants at Muscatine, Iowa; Kansas City, Mo.; and Omaha, Nebr., for the production of products from agricultural commodities in the furtherance of authorized programs of the Department of Agriculture, and for other purposes.

H. R. 6116. An act to amend the Trading With the Enemy Act.

H. R. 6162. An act to make imported beer and other similar imported fer-

mented liquors subject to the internal-revenue tax on fermented liquor.

H. R. 6184. An act for the relief of the East Coast Ship & Yacht Corp., of Noank, Conn.

H. R. 6186. An act for reimbursement of the Hawaiian Dredging Co., Ltd.

H. R. 6224. An act for the relief of John Watkins.

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives.

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone.

H. R. 6327. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette.

H. R. 6412. An act to codify and enact into law title 3 of the United States Code, entitled "The President."

H. R. 6419. An act authorizing the construction, repair, and preservation of certain public works on rivers and harbors for navigation, flood control, and for other purposes.

H. R. 6428. An act to reimburse the Luther Bros. Construction Co.

H. R. 6452. An act to amend section 7 of the act entitled "An act making appropriations to provide for the government of the District of Columbia for the fiscal year ending June 30, 1903, and for other purposes," approved July 1, 1902, as amended.

H. R. 6454. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended, to provide annuities for certain Federal employees who have rendered at least 20 years' service in the investigation, apprehension, or detention of persons suspected or convicted of offenses against the United States.

H. R. 6507. An act to amend subsection 602 (f) of the National Service Life Insurance Act of 1940, as amended, to authorize renewal of level premium term insurance for a second 5-year period, and for other purposes.

H. R. 6598. To amend section 2 of the act entitled "An act to provide for insanity proceedings in the District of Columbia," approved August 9, 1939.

H. R. 6633. An act to authorize an exchange of lands and interests therein between the city of San Diego, Calif., and the United States, and for other purposes.

H. R. 6634. An act to authorize the issuance of a special series of stamps in honor and commemoration of Moina Michael, originator of Flanders Field memorial poppy idea.

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines.

H. R. 6705. An act making appropriations for the Department of the Interior for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6707. An act to amend the Office Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes.

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6818. An act to amend title X of the Social Security Act (relating to aid to the blind) so as to provide greater encouragement to blind recipients thereunder to become self-supporting.

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State.

H. R. 6860. An act to amend the Federal Airport Act.

H. J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statue of Commodore John Barry.

H. J. Res. 421. Joint resolution to authorize and direct the Commissioners of the District of Columbia to investigate and study certain matters relating to parking lots in the District of Columbia.

H. J. Res. 427. Joint resolution correcting act establishing the Theodore Roosevelt National Memorial Park, as amended.

H. J. Res. 428. Joint resolution providing an extension of time for claiming credit or refund with respect to war losses.

H. J. Res. 429. Joint resolution relating to the marital deduction, for estate-tax purposes, in the case of life insurance or annuity payments.

On June 23, 1948:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief of internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to

service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

BILLS AND JOINT RESOLUTIONS APPROVED
SUBSEQUENT TO ADJOURNMENT

The President of the United States, subsequent to adjournment, notified the Clerk of the House of Representatives that on the following dates he approved and signed bills and joint resolutions of the House bill of the following titles:

On June 19, 1948:

H. R. 238. An act for the extension of admiralty jurisdiction.

H. R. 636. An act for the relief of W. A. Knox, W. L. M. Knox, and Frank C. Morris, operating as Knox Lumber Sales Co., of Thomson, Ga.

H. R. 1222. An act for the relief of Mr. and Mrs. M. C. Lewis.

H. R. 1726. An act for the relief of Elsie L. Rosenow.

H. R. 1781. An act for the relief of Annie L. Taylor and William Benjamin Taylor.

H. R. 1855. An act for the relief of Elbert Spivey.

H. R. 2062. An act for the relief of Mrs. Carrie M. Lee.

H. R. 2273. An act to amend the act of May 29, 1944, providing for the recognition of the services of the civilian officials and employees, citizens of the United States, engaged in and about the construction of the Panama Canal.

H. R. 2479. An act for the relief of Hardy H. Bryant.

H. R. 2684. An act for the relief of sundry fruit growers of the State of Delaware who sustained losses as the result of the fumigation of apples with methyl bromide in order to comply with the requirements of the United States Department of Agriculture relating to the Japanese beetle quarantine.

H. R. 2721. An act to amend the act of March 10, 1934, entitled "an act to promote the conservation of wildlife, fish, and game, and for other purposes," as amended by the act approved August 14, 1946.

H. R. 2916. An act for the relief of Walter Vandahl and Esther S. Vandahl, Allabrada Adams, Mrs. Lucile L. Rice Talbot, Mrs. Gladys Webb, and John E. Webb.

H. R. 2922. An act for the relief of Charles B. Featherstone.

H. R. 3007. An act for the relief of Ernest F. Lutzken.

H. R. 3114. An act for the relief of the estate of John Delman.

H. R. 3159. An act for the relief of Mrs. Mae H. Fitzgerald.

H. R. 3260. An act for the relief of Clarence S. Osika.

H. R. 3352. An act for the relief of Emeline Latigue.

H. R. 3402. An act to extend the authorized maturity date of certain bridge revenue bonds to be issued in connection with the refunding of the acquisition cost of the bridge across the Missouri River at Rulo, Nebr.

H. R. 3433. An act to amend the act entitled "An act to classify the officers and members of the Fire Department of the District of Columbia, and for other purposes," approved June 20, 1906, and for other purposes.

H. R. 3500. An act for the relief of Lester L. Elder and Mrs. Esther E. Elder.

H. R. 3841. An act for the relief of Mrs. Helen E. Scofield.

H. R. 3883. An act to authorize and direct the Secretary of the Army to transfer to the Territory of Alaska the title to the Army vessel Hygiene.

H. R. 3915. An act to increase the size of the Arkansas-Mississippi Bridge Commission, and for other purposes.

H. R. 4244. An act to authorize assistance to certain veterans in acquiring specially adapted housing which they require by reason of the nature of their service-connected disabilities.

H. R. 4455. An act to authorize the conveyance by the Secretary of the Interior to the Richmond, Fredericksburg & Potomac Railroad Co., of certain lands lying in the bed of Roaches Run, Arlington County, Va., and for other purposes.

H. R. 4663. An act to confer jurisdiction upon the District Court of the United States for the Middle District of Georgia to hear, determine, and render judgment on the claims of the owners of the fee-simple titles and leasehold interests in lands leased to the United States by the city of Macon, Ga., for use as a part of the site of Camp Wheeler, Ga.

H. R. 4688. An act to enlarge the Gettysburg National Cemetery.

H. R. 4830. An act for the relief of Cooperative for American Remittances to Europe, Inc.

H. R. 4874. An act to transfer Pelican Rock in Crescent City Harbor, Del Norte County, Calif., to that county.

H. R. 5065. An act to amend section 1700 (a) (1) of the Internal Revenue Code so as to exempt hospitalized servicemen and veterans from the admissions tax when admitted free.

H. R. 5112. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended.

H. R. 5147. An act authorizing the Secretary of the Interior to issue a patent in fee to Florence A. W. Arens.

H. R. 5174. An act to authorize Commodity Credit Corporation to make adjustment payments to certain producers of raw cane sugar in Puerto Rico and Hawaii.

H. R. 5330. An act for the relief of W. W. DeLoach.

H. R. 5344. An act to prevent retroactive checkage of retired pay in the cases of certain enlisted men and warrant officers appointed or advanced to commissioned rank or grade under the act of July 24, 1941 (55 Stat. 603), as amended, and for other purposes.

H. R. 5655. An act confirming the claim of Juan Berrar to certain lands in the State of Louisiana, county of Attakapas, now parish of St. Martin, said claim being listed as No. B-690 in the report of the commissioners dated June 1811, so as to include section 2, township 11 south, range 6 east, Louisiana meridian, containing one hundred and thirty-nine and sixty-two one-hundredths acres.

H. R. 5758. An act to amend further the Armed Forces Leave Act of 1946, as amended, to permit certain payments to be made to surviving brothers and sisters, and nieces and nephews, of deceased members and former members of the armed forces.

H. R. 5808. An act to continue a system of nurseries and nursery schools for the day care of school-age and under-school-age children of the District of Columbia.

H. R. 5820. An act to aid in the development of improved prosthetic appliances, and for other purposes.

H. R. 5893. An act making appropriations for the Department of Agriculture (exclusive of the Farm Credit Administration) for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 5889. An act to extend the provisions of title VI of the Public Health Service Act to the Virgin Islands.

H. R. 5891. An act to repeal an act approved August 24, 1894, entitled "An act to authorize the purchasers of the property and franchises of the Choctaw Coal & Railway Co. to organize a corporation, and to confer upon the same all the powers, privileges, and franchises vested in that company," and all acts amendatory thereof and supplemental thereto.

H. R. 5957. An act to provide for the establishment of the Fort Vancouver National Monument, in the State of Washington, to include the site of the old Hudson's Bay Co. stockade, and for other purposes.

H. R. 5983. An act to amend section 202 of title II of the Army-Navy Medical Services Corps Act of 1947, as amended, to remove the present restriction on appointments to the Navy Medical Service Corps.

H. R. 6073. An act to provide for the acquisition of lands for grazing and related purposes.

H. R. 6110. An act to permit the landing of halibut by Canadian fishing vessels to Alaskan ports, and for other purposes.

H. R. 6113. An act to transfer certain land in Langlade County, Wis., to the United States Forest Service.

H. R. 6114. An act to amend title I of the Bankhead-Jones Farm Tenant Act, as amended, so as to increase the interest rate on title I loans, to provide for the redemption of nondelinquent insured mortgages, to authorize advances for the preservation and protection of the insured loan security, and for other purposes.

H. R. 6229. An act to authorize the extension of leases of certain land in the Territory of Hawaii.

H. R. 6234. An act to authorize the establishment of internships in the Department of Medicine and Surgery of the Veterans' Administration.

H. R. 6252. An act to authorize the issuance of a land patent to certain public lands, situated in the county of Kauai, Territory of Hawaii, for school purposes.

H. R. 6339. An act to amend the provisions of title VI of the Public Health Service Act relating to standards of maintenance and operation for hospitals receiving aid under that title.

H. R. 6430. An act making appropriations for the government of the District of Columbia and other activities chargeable in whole or in part against the revenues of such District for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6489. An act to provide for the temporary free importation of lead.

H. R. 6716. An act to authorize the Administrator of Veterans' Affairs to transfer a portion of the Veterans' Administration center at Los Angeles, Calif., to the State of California for the use of the University of California.

H. R. 6758. An act making supplemental appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1949, and for other purposes.

On June 21, 1948:

H. R. 633. An act for the relief of Mrs. Myrtle Hovde.

H. R. 6368. An act to provide for the issuance of a special postage stamp in commemoration of the dedication of the Palomar Mountain Observatory.

On June 22, 1948:

H. R. 929. An act for the relief of Ernest L. Godfrey.

H. R. 4964. An act to preserve seniority rights of 10-point preference eligibles in the postal service transferring from the position of letter carrier to clerk or from the position of clerk to letter carrier.

H. R. 5071. An act to extend the public land laws of the United States to certain lands, consisting of islands, situated in the Red River in Oklahoma.

H. R. 5272. An act relating to the compensation of certain railway postal clerks.

H. R. 5822. An act to establish the Saratoga National Historical Park, in the State of New York, from the lands that have been acquired by the Federal Government for that purpose pursuant to the act of June 1, 1938 (52 Stat. 608), and for other purposes.

H. R. 6239. An act to provide for the suspension of annual assessment work on mining claims held by location in the Territory of Alaska.

H. R. 6246. An act to authorize the transfer of certain Federal lands within the Chopawamsic Park to the Secretary of the Navy, the addition of lands surplus to the Department of the Army to this park, the acquisition of additional lands needed to round out the boundaries of this park, to change the name of said park to Prince William Forest Park, and for other purposes.

H. R. 6289. An act to provide for the voluntary admission and treatment of mental patients at St. Elisabeths Hospital.

On June 23, 1948:

H. R. 2588. An act requiring all mails consigned to an airport from a post office or branch, or from an airport to a post office or branch, within a radius of 35 miles of a city in which there has been established a Government-owned vehicle service to be delivered by Government-owned motor vehicles.

H. R. 6766. An act to amend the Railroad Retirement Act of 1937, as amended, and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard.

H. R. 2867. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes.

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases.

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended.

H. R. 4047. An act for the relief of Edmund Huppler.

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection.

H. RJ 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948.

H. R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizers.

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes.

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State.

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa.

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines.

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes.

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

On June 25, 1948:

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2193. An act for the relief of Robert E. Graham.

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased.

H. R. 2734. An act for the relief of Joseph M. Henry.

H. R. 2766. An act to amend section 2 of an act entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725).

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

Case 2:09-cr-00078-JCM-RJJ    Document 262    Filed 07/06/12    Page 58 of 100

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On July 2, 1948:

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war.

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes.

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians.

S. 3821. An act to provide increases of compensation for certain veterans with service-connected disabilities who have dependents.

On July 3, 1948:

S. 1242. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment.

---

The message also announced that the President of the United States had transmitted to the Secretary of the Senate a list of bills of the Senate disapproved, with his reason for such action, as follows:

On July 2, 1948:

ESTATE OF WILLIAM R. STIGALL, DECEASED

S. 1717. I have withheld my approval from S. 1717, an act for the relief of the estate of William R. Stigall, deceased.

The purpose of this bill is to compensate the estate of William R. Stigall, deceased, for his death from injuries sustained by him while in the military service.

It appears that on September 5, 1941, Pvt. William R. Stigall, a member of

Headquarters Company, First Signal Armored Battalion, Fort Knox, Ky., which was en route from Fort Knox to Camp Polk, La., by Army convoy, was accidentally electrocuted when the antenna of the radio scout car in which he was riding touched a high-tension electric power line. The convoy had halted by the roadside for the noonday meal. The antenna of the radio scout car was released to permit the canvas top of the car to be rolled back, and as the antenna rose into the air it came into contact with a high-tension power line approximately 19 feet above the ground. Private Stigall dismounted from the car, with one hand on the door thereof, and as he stepped on the ground, completing the circuit, the current flowed through his body, causing his death almost instantly. It appears that the power line had not been recognized as such by any member of the military personnel, in view of the fact that it was composed of two light wires suspended comparatively close to the ground.

In view of the fact that at the time of his death Private Stigall was in line of duty as an enlisted man of the Army, any dependents left by him would be entitled to all of the benefits conferred by general law on dependents of members of the armed forces of the United States who die in line of duty. It appears, however, that Private Stigall left no one who was dependent upon him. His service record, under the heading "Government Insurance," bears the notation "No insurance desired." Had he chosen to take advantage of the opportunity afforded him to obtain national service life insurance, he could have been insured in the maximum amount of $10,000, and his beneficiary, or beneficiaries, would have been compensated in that amount for his death. However, his father, Dumont Stigall, received the statutory death gratuity benefit, in an amount equal to the decedent's Army pay for 6 months.

The approval of this bill awarding compensation for the death of Private Stigall would be discriminatory in that it would grant to his estate a special benefit denied to the estates of other members of the armed forces where the facts are similar and to the estates of military and naval personnel who are killed in action. There are no circumstances present in this case that would warrant singling out this estate for preferential treatment. On June 11, 1948, I withheld my approval from a similar bill, S. 252, "An act for the relief of the estate of Lee Jones Cardy," (Congressional Record, vol. 94, p. 8355, June 14, 1948). While deeply regretting the untimely death of Private Stigall, I am obliged to withhold my approval from this bill.

RATES OF PAY FOR CERTAIN VETERANS AFFAIRS FIELD INSTALLATION POSITIONS

S. 2794. I am withholding my approval from S. 2794, an act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations.

This bill would authorize the Administrator to establish pay scales for some 60,000 field employees of the Veterans' Administration, including hospital attendants, dental mechanics, and others who work in veterans' hospitals. These employees are now paid under the provisions of the Classification Act of 1923.

It is argued that this authority is needed since the Administrator has had difficulty in recruiting and retaining personnel to staff veterans' hospitals. It is estimated that the increase to be given the employees affected by this bill would have been about $80 per year. Since I have just approved a bill increasing salaries for persons covered by the Classification Act by $330 per year, the authority granted by this bill should be unnecessary.

Furthermore, I do not believe that this bill represents a sound approach to the problem of recruiting and retaining Government employees. It would have affected only certain employees of one agency, whereas the same problem confronts many other agencies, and should be dealt with by general legislation. It would have set no standards or limits to guide the Administrator except the single provision that he could not set rates of pay lower than those prescribed by the Classification Act. This would have been a step toward uncoordinated and diverse pay scales for Government employees, when the need is for greater uniformity.

---

The message further announced that the President, on July 3, 1948, had pocket-vetoed the following bill and joint resolution:

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes. (No statement.)

S. J. Res. 84. Joint resolution to provide for the restoration and preservation of the Francis Scott Key Mansion, to establish the Francis Scott Key National Memorial, and for other purposes. (No statement.)

---

## MONDAY, JULY 26, 1948

On which day, being the day fixed by the proclamation of the President of the United States, on the 15th day of July 1948 for the meeting of Congress, which proclamation is in the words following, to wit:

PRESIDENT'S PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon, on Monday, the twenty-sixth day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the

gress of the United States to convene the Capitol in the city of Washington on Monday, the twenty-sixth day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this fifteenth day of July, in the year of our Lord nineteen hundred and forty-eight, and of the independence of the United States of America the one hundred and seventy-third.

[SEAL]    HARRY S. TRUMAN.
By the President:
G. C. MARSHALL,
Secretary of State.

In conformity with the foregoing proclamation of the President of the United States, the House of Representatives assembled in its Chamber in the city of Washington.

—

The House was called to order by JOSEPH W. MARTIN, Jr., the Speaker (a Representative from the State of Massachusetts), by whose order the foregoing proclamation was read.

The Journal of the proceedings of Saturday, June 19, 1948, was read and approved.

COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

1668. A letter from the Under Secretary of Agriculture, transmitting a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

1669. A letter from the Acting Secretary of the Navy, transmitting a report of a proposed transfer of a submarine chaser to the University of North Carolina Institute of Fisheries, State of North Carolina; to the Committee on Armed Services.

1670. A letter from the Acting Secretary of the Navy, transmitting a report of the number of professors and instructors and the amount of compensation for each employed at the United States Naval Postgraduate School; to the Committee on Armed Services.

1671. A letter from the Attorney General, transmitting a copy of a letter from the Secretary of Agriculture advising that he is withdrawing his request for the voluntary plan for the conservation of grain by the brewing industry; to the Committee on Banking and Currency.

1672. A letter from the Acting Attorney General, transmitting copies of the voluntary plan covering the allocation of steel products for the United States Atomic Energy Commission projects; to the Committee on Banking and Currency.

1673. A letter from the Acting Attorney General, transmitting copies of the voluntary plan covering the allocation of steel products for warm-air heating equipment for residential housing and copies of the requests for compliance therewith which the Secretary of Commerce has issued to various steel producers and steel consumers; to the Committee on Banking and Currency.

1674. A letter from the Vice Chairman, Reconstruction Finance Corporation, transmitting a report on the Government-owned tin smelter at Texas City, Tex., and the program for purchase and sale of tin metal in the United States; to the Committee on Banking and Currency.

1675. A letter from the Commissioner, Federal Housing Administration, transmitting the Fourteenth Annual Report of the Federal Housing Administration, for the calendar year 1947; to the Committee on Banking and Currency.

1676. A letter from the Attorney General, transmitting a report showing the special assistants employed during the period from January 1, 1948, to June 30, 1948; to the Committee on Expenditures in the Executive Departments.

1677. A letter from the Chairman, Federal Communications Commission, transmitting a recommendation in the form of an amendment to section 4 (g) of the Communications Act; to the Committee on Interstate and Foreign Commerce.

1678. A letter from the Chairman, Federal Trade Commission, trnasmitting a report entitled "The Merger Movement: A Summary Report"; to the Committee on Interstate and Foreign Commerce.

1679. A letter from the Chairman, Federal Power Commission, transmitting one copy of the report "Production of Electric Energy and Capacity of Generating Plants in the United States" for the year 1946 and one copy of the report "Power Market Survey, Colorado River, Upper Basin, Part 1—Power Requirements"; to the Committee on Interstate and Foreign Commerce.

1680. A letter from the Chairman, Federal Trade Commission, transmitting a report on manufacture and distribution of farm implements; to the Committee on Interstate and Foreign Commerce.

1681. A letter from the Chairman, Federal Trade Commission, transmitting a report on international steel cartels; to the Committee on Interstate and Foreign Commerce.

1682. A letter from the Acting Chairman, Federal Trade Commission, transmitting the report of the Federal Trade Commission entitled "The International Electrical Equipment Cartel"; to the Committee on Interstate and Foreign Commerce.

1683. A letter from the Attorney General, transmitting a request that the case of Angele Charlotte Douthe, nee Rivis, or Simone Rivis, or Simone Douhte, be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1684. A letter from the Attorney General, transmitting a request that the case of Viggo John Schmidt be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1685. A letter from the Attorney General, transmitting a request that the case of Armando Pinto y Bisquerra be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1686. A letter from the Acting Attorney General, transmitting a request that the case of Camilo Crestes Rafael Panerai y Bertini be withdrawn from those now before the Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1687. A letter from the Attorney General, transmitting a report reciting the facts and pertinent provisions of law in the cases of 10 individuals whose deportation has been suspended for more than 6 months under the authority vested in the Attorney General; to the Committee on the Judiciary.

1688. A letter from the Secretary, Department of Agriculture, transmitting a report of all claims paid under the Federal Tort Claims Act of August 2, 1946 (Public Law 601, 79th Cong.), for the period July 1, 1947, to the end of the fiscal year June 30, 1948; to the Committee on the Judiciary.

1689. A letter from the Postmaster General, transmitting a draft of a proposed bill for the relief of John I. Malarin, former Army mail clerk at APO 932, a branch of the San Francisco, Calif., post office relative to a shortage in his fixed credit account; to the Committee on the Judiciary.

1690. A letter from the Acting Postmaster General, transmitting a report of claims paid by the Post Office Department under the provisions of the Federal Tort Claims Act during the fiscal year 1947–48; to the Committee on the Judiciary.

1691. A letter from the chairman, United States Maritime Commission, transmitting Report No. 15 of action taken under section 217 of the Merchant Marine Act, 1936, as amended (Public Law 498, 77th Cong.); to the Committee on Merchant Marine and Fisheries.

1692. A letter from the Chairman, United States Maritime Commission, transmitting the quarterly report of the United States Maritime Commission on the activities and transactions of the Commission under the Merchant Ship Sales Act of 1946 from April 1, 1948, through June 30, 1948; to the Committee on Merchant Marine and Fisheries.

1693. A letter from the Assistant Secretary of the Interior, transmitting the Forty-seventh Annual Report of the Governor of Puerto Rico, for the fiscal year ended June 30, 1947; to the Committee on Public Lands.

1694. A letter from the Acting Secretary of the Interior, transmitting one

laries of Labor; to the Committee on Banking and Currency.

2118. Also, petition of Adam Daniel and others, of New York City, petitioning consideration of their resolution with reference to making such necessary representations to England as will bring about the end of the partition of Ireland; to the Committee on Foreign Affairs.

2119. Also, petition of President Fernando Leon de Vivero, of Peru, petitioning consideration of his resolution with reference to expression of profound condolence of the passing of Gen. John J. Pershing; to the Committee on Foreign Affairs.

2120. Also, petition of Hector J. Campora, President of the House of Deputies, Buenos Aires, Argentina, petitioning consideration of his resolution with reference to notifying the Speaker of the United States House of Representatives that the House of Deputies of Argentina paid hearty homage to the anniversary of the independence of their great brother country the United States; to the Committee on Foreign Affairs.

2121. Also, petition of Kaminskis V. & Ritums H., Esslingen a. N., Germany, United States zone, petitioning consideration of their resolution with reference to a booklet entitled "We Accuse the Eastern Power of Despotism—the Western Ones of Indifference," asking for support in the abolishment of the inhuman terror as is executed by the Communists; to the Committee on Foreign Affairs.

2122. Also, petition of Greek-American Parliamentary Group, of Athens, Greece, petitioning consideration of their resolution with reference to the one hundred and seventy-second anniversary of the Fourth of July; to the Committee on Foreign Affairs.

2123. Also, petition of Leroy Switzer, Illinois State Penitentiary, Menard, Ill., petitioning consideration of his petition for a writ of habeas corpus; to the Committee on the Judiciary.

2124. Also, petition of Nicholas J. Curtis, petitioning consideration of his resolution with reference to a redress of grievance according to the provisions of the decision of the board of review in the case of Nicholas J. Curtis against Phillip Forman, United States district judge, district of New Jersey, and Guy L. Fake, United States district judge, district of New Jersey, Newark, N. J.; to the Committee on the Judiciary.

2125. Also, petition of the Municipal Council of St. Croix, V. I., petitioning consideration of their resolution with reference to the Virgin Island Company, St. Croix, V. I.; to the Committee on Public Lands.

2126. Also, petition of the secretary, Lions International, petitioning consideration of his resolution with reference to favoring statehood for Hawaii; to the Committee on Public Lands.

2127. Also, petition of Manhattan Wallace Committee, New York 16, N. Y.,

petitioning consideration of their resolution with reference to demanding the abolition of the House Un-American Activities Committee; to the Committee on Rules.

2128. Also, petition of the Board of Supervisors of Milwaukee County, Wis., petitioning consideration of their resolution with reference to an amendment to the Wigglesworth bill, H. R. 6829; to the Committee on Veterans' Affairs.

2129. By Mr. EATON: Joint resolution of the Senate and General Assembly of the State of New Jersey, memorializing the Congress of the United States to proceed with all possible dispatch to the preparation and adoption of necessary legislation designed to encourage and make adequately effectual a comprehensive program of merchant shipbuilding in this country's shipyards and expanding our merchant marine; to the Committee on Merchant Marine and Fisheries.

---

## TUESDAY, JULY 27, 1948

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, July 26, 1948, was read and approved.

### COMMUNICATION

A communication, pursuant to clause 2, rule XXIV, was referred as follows:

1702. A letter from the Chairman, Munitions Board, National Military Establishment, transmitting a report detailing the activities with respect to stock piling between January 1 and June 30, 1948, was taken from the Speaker's table and referred to the Committee on Armed Services.

### ADJOURNMENT OVER

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That when the House adjourns today it adjourn to meet on Thursday, July 29, 1948.

### CORRECTION OF RECORD—ROLL CALL NO. 127

On motion of Mr. RANKIN, by unanimous consent,

Ordered, That roll call No. 127, as printed in the Congressional Record of Monday, July 26, 1948, be corrected to show the names of the Members present and answering to their names.

### RECESS

At 12 o'clock and 4 minutes p. m. the House stood in recess, subject to the call of the Chair.

### AFTER RECESS 12:18

The SPEAKER called the House to order.

### MESSAGE FROM THE SENATE

A message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate had passed without amendment a concurrent resolution of the House of the following title:

H. Con Res. 220. Concurrent resolution providing for a joint session of Congress on July 27, 1948.

### JOINT SESSION TO RECEIVE THE PRESIDENT'S MESSAGE

The Doorkeeper announced the President pro tempore and Members of the Senate, who entered the Hall of the House and took seats assigned them.

Whereupon, pursuant to House Concurrent Resolution 220, the Speaker called the joint session of the two Houses to order.

The SPEAKER appointed Mr. HALLECK, Mr. ALLEN of Illinois, and Mr. McCORMACK members on the part of the House of the committee to escort the President into the Hall of the House.

The PRESIDENT pro tempore of the Senate appointed Mr. WHERRY, Mr. MILLIKIN, and Mr. BARKLEY members on the part of the Senate of the committee to escort the President into the Hall of the House.

The Doorkeeper announced ambassadors, ministers and chargés d'affaires of foreign governments, who entered the Hall of the House and took seats assigned them.

The Doorkeeper announced the members of the President's Cabinet, who entered the Hall of the House and took seats assigned them.

The President of the United States, at 12:30 p. m., escorted by the committee on the part of both Houses, entered the Hall of the House and, at the Clerk's desk, delivered the following message:

Mr. President, Mr. Speaker, Members of the Eightieth Congress, the urgent needs of the American people require our presence here today.

Our people demand legislative action by their Government to do two things: First, to check inflation and the rising cost of living; and, second, to help in meeting the acute housing shortage.

These are matters which affect every American family. They also affect the entire world, for world peace depends upon the strength of our economy.

The Communists, both here and abroad, are counting on our present prosperity turning into a depression. They do not believe that we can—or will—put the brake on high prices. They are counting on economic collapse in this country.

If we should bring on another great depression in the United States by failing to control high prices, the world's hope for lasting peace would vanish. A depression in the United States would cut the ground from under the free nations of Europe. Economic collapse in this country would prevent the recovery throughout the world which is essential to lasting peace. We would have only ourselves to blame for the tragedy that would follow.

In these tense days, when our strength is being tested all over the world, it would be reckless folly if we failed to act against inflation.



COPY
Reproduced at the National Archives

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

correct copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| *[signature]* | | |
| NAME   Richard H. Hunt | | DATE   11/20/08 |
| TITLE   Director | | |
| Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY | | |
| The National Archives | | |
| Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

# JOURNAL OF THE SENATE

### OF THE

## UNITED STATES OF AMERICA

---

## FIRST SESSION

### OF THE

## EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 3, 1947, IN THE ONE HUNDRED
AND SEVENTY-FIRST YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1948

(c) The expenses of the committee, which shall not exceed $      , shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers signed by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

### FEDERAL LABOR RELATIONS ACT OF 1947

The Senate resumed the consideration of the bill (S. 1126) to amend the National Labor Relations Act, to provide additional facilities for the mediation of labor disputes affecting commerce, to equalize legal responsibilities of labor organizations and employers, and for other purposes.

The question being on agreeing to the amendment proposed by Mr. MURRAY (for himself and others) as a substitute for the bill, as amended,

Pending debate,

On motion by Mr. LANGER to further amend the bill by inserting on page 8, after line 24, provisions defining the terms "superintendent" and "assistant superintendent",

Pending debate,

### MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed each without amendment the following bills of the Senate:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project.

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The House has passed the following bills in which it requests the concurrence of the Senate:

H. R. 84. An act to amend the Nationality Act of 1940, as amended;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 1179. An act to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947;

H. R. 1203. An act to provide compensation to persons performing the duties of postmasters at post offices of the fourth class during annual and sick leave of the postmasters;

H. R. 1237. An act to regulate the marketing of economic poisons and devices, and for other purposes;

H. R. 1362. An act to permit certain naval personnel to count all active service rendered under temporary appointment as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officer in the United States Navy or the United States Marine Corps, respectively;

H. R. 1371. An act to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes;

H. R. 1412. An act to grant to the Arthur Alexander Post, No. 68, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938;

H. R. 1467. An act to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts;

H. R. 1565. An act to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions";

H. R. 1566. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States";

H. R. 1567. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds";

H. R. 1874. An act to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes;

H. R. 2054. An act to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service;

H. R. 2083. An act to codify and enact into positive law title 17 of the United States Code, entitled "Copyrights";

H. R. 2084. An act to codify and enact into positive law title 9 of the United States Code, entitled "Arbitration";

H. R. 2181. An act relating to institutional on-farm training for veterans;

H. R. 2237. An act to correct an error in section 342 (b) (8) of the Nationality Act of 1940, as amended;

H. R. 2331. An act to amend section 20a of the Interstate Commerce Act;

H. R. 2353. An act to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes;

H. R. 2368. An act to amend paragraph 8 of part VII, Veterans Regulation No. 1 (a), as amended, to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes;

H. R. 2573. An act to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis;

H. R. 2654. An act to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.;

H. R. 3029. An act to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of the United States for the District of Columbia; and

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

### HOUSE BILLS REFERRED

The bills this day received from the House of Representatives for concurrence were severally read the first and second times by unanimous consent.

*Ordered,* That the bills H. R. 84, H. R. 1467, H. R. 1565, H. R. 1566, H. R. 1567, H. R. 2083, H. R. 2084, H. R. 2237, and H. R. 3190 be referred to the Committee on the Judiciary;

That the bills H. R. 239, H. R. 2054, H. R. 2331, and H. R. 2654 be referred to the Committee on Interstate and Foreign Commerce;

That the bill H. R. 1179 be referred to the Committee on Foreign Relations;

That the bill H. R. 1203 be referred to the Committee on Civil Service;

That the bill H. R. 1237 be referred to the Committee on Agriculture and Forestry;

That the bills H. R. 1362 and 1371 be referred to the Committee on Armed Services;

### MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

Mr. President: The House of Representatives insists upon its amendments to the bill (S. 938) to provide for assistance to Greece and Turkey; it agrees to the conference asked by the Senate on the disagreeing votes of the two Houses thereon, and has appointed Mr. EATON, Mr. MUNDT, Mr. JONKMAN, Mr. BLOOM, and Mr. KEE managers at the same on its part.

### RELIEF TO PEOPLE OF COUNTRIES DEVASTATED BY WAR

The Senate resumed the consideration of the joint resolution (H. J. Res. 153) providing for relief assistance to the people of countries devastated by war.

The question being on agreeing to the reported amendment, as amended, striking out all after the resolving clause and inserting in lieu thereof other words,

Pending debate,

### SENATORS EXCUSED FROM ATTENDANCE

The following-named Senators, on their own request, were excused from attendance upon the Senate for the periods indicated:

Mr. LANGER, for 1 week;

Mr. CAPEHART, until Monday next;

Mr. FLANDERS, for the balance of the week;

Mr. STEWART, for a few days; and

Mr. McCARRAN, for 2 weeks.

### EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted by unanimous consent, as in executive session.

### RECESS

On motion by Mr. WHITE, at 7 o'clock and 43 minutes p. m.,

The Senate took a recess until 11 o'clock a. m. tomorrow.

## WEDNESDAY, MAY 14, 1947

*(Legislative day of Monday, April 21, 1947)*

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and the Chaplain offered prayer.

### JOURNAL

On motion by Mr. WHITE, and by unanimous consent,

The Journal of the proceedings of Tuesday, May 13, 1947, was approved.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Swanson, one of its clerks:

Mr. President: The Speaker of the House of Representatives having signed six enrolled bills, viz, S. 64, S. 132, S. 214, S. 273, S. 460, and S. 534, I am directed to bring the same to the Senate for the signature of its President.

The President of the United States has informed the House that he approved and signed the following acts:

On April 16, 1947:

H. R. 1943. An act to establish a permanent Nurse Corps of the Army and the Navy and to establish a Women's Medical Specialist Corps in the Army.

On April 25, 1947:

H. R. 731. An act to establish the Theodore Roosevelt National Memorial Park; to erect a monument in memory of Theodore Roosevelt in the village of Medora, N. Dak., and for other purposes.

On April 29, 1947:

H. R. 2404. An act to suspend certain import taxes on copper.

On May 1, 1947:

H. R. 2849. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1947, and for other purposes.

### ENROLLED BILLS SIGNED

The Secretary reported that he had examined and found truly enrolled the following bills:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project;

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The PRESIDENT pro tempore thereupon signed the same.

### QUESTION OF QUORUM

Mr. WHITE raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Eighty-four Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Downey | Janner |
| Ball | Dworshak | Johnson, Colo. |
| Barkley | Eastland | Johnston, S. C. |
| Brewster | Ecton | Kem |
| Bricker | Ellender | Kilgore |
| Bridges | Ferguson | Knowland |
| Brooks | Fulbright | Lodge |
| Buck | George | Lucas |
| Bushfield | Green | McCarthy |
| Butler | Gurney | McClellan |
| Byrd | Hatch | McFarland |
| Cain | Hawkes | McGrath |
| Capper | Hayden | McKellar |
| Chavez | Hickenlooper | McMahon |
| Connally | Hill | Magnuson |
| Cooper | Hoey | Malone |
| Cordon | Holland | Martin |
| Donnell | Ives | Maybank |
| Millikin | Robertson, Va. | Tydings |
| Moore | Robertson, Wyo. | Umstead |
| Morse | Russell | Vandenberg |
| Murray | Saltonstall | Watkins |
| Myers | Smith | Wherry |
| O'Conor | Sparkman | White |
| O'Daniel | Taft | Wiley |
| O'Mahoney | Taylor | Williams |
| Pepper | Thomas, Okla. | Wilson |
| Reed | Thye | Young |

A quorum being present,

### COMMITTEES AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The following committees were authorized to sit during the session of the Senate, on today:

A subcommittee of the Committee on the Judiciary considering a nomination, and another subcommittee of the same committee considering S. 104; on the request of Mr. WILEY; and

The Committee on Rules and Administration; on the request of Mr. BROOKS.

### SENATORS EXCUSED FROM ATTENDANCE

Mr. CAIN and Mr. HATCH, on their own request, were excused from attendance upon the Senate for tomorrow.

### REPORT ON COOPERATION OF UNITED STATES WITH MEXICO IN CONTROL AND ERADICATION OF FOOT-AND-MOUTH DISEASE

The PRESIDENT pro tempore laid before the Senate a communication from the Under Secretary of Agriculture, transmitting, pursuant to law, a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease, under the act of February 28, 1947, for the 30-day period ended April 29, 1947; which, with the accompanying report, was referred to the Committee on Agriculture and Forestry.

### TRANSFER OF NAVY VESSEL

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of the Navy, transmitting, pursuant to law, a report of the transfer of the U. S. S. *Texas* to the State of Texas under the provisions of section 1 of the act of August 7, 1946; which was referred to the Committee on Armed Services.

### EXPORT-IMPORT BANK OF WASHINGTON AUDIT REPORTS OF 1945 AND 1946

The PRESIDENT pro tempore laid before the Senate two communications from the Comptroller General of the United States, transmitting, pursuant to law, two audit reports of the Export-Import Bank of Washington for the fiscal years ended June 30, 1945, and 1946, respectively; which, with the accompanying reports, were referred to the Committee on Expenditures in the Executive Departments.

### SUPPLEMENTAL ESTIMATE OF APPROPRIATION

The PRESIDENT pro tempore laid before the Senate a communication from the President of the United States, together with a letter from the Acting Director of the Bureau of the Budget, transmitting, pursuant to law, supplemental estimates of appropriations for



Reproduced at the ...

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

correct copy of documents in his custody.

| SIGNATURE | |
|---|---|
| NAME Richard H. Hunt | DATE 11/20/08 |
| TITLE Director Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407-A

# JOURNAL OF THE SENATE

### OF THE

## UNITED STATES OF AMERICA

---

## SECOND SESSION

### OF THE

## EICHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 6, 1948, IN THE ONE HUNDRED
AND SEVENTY-SECOND YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

Case 2:09-cr-00078-JCM-RJJ   Document 282   Filed 07/06/12   Page 69 of 100

## PETITIONS AND MEMORIALS

The PRESIDENT pro tempore laid before the Senate the following petitions, etc., which were referred as indicated:

A resolution of the Maryland State and District of Columbia Federation of Labor, Washington, D. C., remonstrating against the passage of any bill to control subversive and un-American activities;

A memorial of sundry citizens of the Sixth Congressional District, State of Washington, remonstrating against the passage of legislation to control subversive and un-American activities; and

A petition of Laura B. Prisk, National Flag Day Association, New York, N. Y., praying the enactment of legislation to make June 14 a legal national holiday; to the Committee on the Judiciary.

The PRESIDENT pro tempore laid before the Senate a petition of the chairman of the municipal committee of St. Croix, V. I., praying the enactment of legislation to continue the Virgin Islands Company; which was ordered to lie on the table.

## REPORTS OF COMMITTEES

Mr. BUTLER, by unanimous consent, from the Committee on Interior and Insular Affairs, to whom was referred the bill (H. R. 6090) authorizing the Secretary of the Interior to issue patents for lands held under color of title, reported it without amendment and submitted a report (No. 1618) thereon.

Mr. BUTLER, by unanimous consent, from the Committee on Interior and Insular Affairs, to whom was referred the bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, reported it with amendments and submitted a report (No. 1622) thereon.

Mr. COOPER, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (S. 2784) to amend the Trading With the Enemy Act, reported it without amendment and submitted a report (No. 1619) thereon.

Mr. SALTONSTALL, by unanimous consent, from the Committee on Appropriations, to whom was referred the bill (H. R. 6772) making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes, reported it with amendments and submitted a report (No. 1621) thereon.

Mr. BYRD, by unanimous consent, from the Committee on Armed Services, to whom was referred the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, reported it with amendments and submitted a report (No. 1624) thereon.

Mr. WILEY, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," reported it without amendment and submitted a report (No. 1623) thereon.

Mr. WILEY, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure," reported it with amendments and submitted a report (No. 1620) thereon.

Mr. AIKEN, by unanimous consent, from the Committees on Expenditures in the Executive Departments, submitted a report (No. 1617) on survey of space leased by the Federal Government; which was ordered to be printed.

Mr. FERGUSON, by unanimous consent, from the Committee on the Judiciary, submitted a report (No. 1625) accompanied by a bill (S. 2860) to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes; which was read the first and second times by unanimous consent and placed on the calendar.

## INTRODUCTION OF BILLS

Bills were introduced by unanimous consent, severally read the first and second time, and referred as follows:

By Mr. CAIN:

S. 2858. A bill to establish a reclamation project fund; to provide for an orderly rate of construction of self-liquidating reclamation and irrigation projects; to provide for the issuance of revenue bonds to finance the cost of constructing, operating, and maintaining the self-liquidating portions of certain reclamation and irrigation projects; and for other purposes; to the Committee on Finance.

By Mr. BALDWIN:

S. 2859. A bill for the relief of Isiah Johnson; to the Committee on the Judiciary.

By Mr. TAFT:

S. 2861. A bill to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans; to the Committee on Labor and Public Welfare.

By Mr. JOHNSON of Colorado:

S. 2852. A bill to remove the restrictions upon the acquisition, possession, and ownership of gold, and to permit the sale of gold within the United States, its Territories, and possessions, including Alaska, and for other purposes; to the Committee on Banking and Currency.

## COMMITTEE AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The Committee on Public Works was authorized to sit during the session of the Senate on today, on the request of Mr. WHERRY.

## EXTENSION OF RECIPROCAL TRADE AGREEMENTS ACT

The Senate resumed the consideration of the bill (H. R. 6556) to extend the authority of the President under section 350 of the Tariff Act of 1934, as amended, and for other purposes.

On motion by Mr. GEORGE, and by unanimous consent,

Ordered, That Mr. Barkley control the time for debate on the part of the opponents of the bill.

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Ninety Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Gurney | Myers |
| Baldwin | Hatch | O'Conor |
| Ball | Hawkes | O'Daniel |
| Barkley | Hayden | O'Mahoney |
| Brewster | Hickenlooper | Pepper |
| Bricker | Hill | Reed |
| Bridges | Hoey | Revercomb |
| Brooks | Holland | Robertson, Va. |
| Buck | Ives | Robertson, Wyo. |
| Butler | Jenner | Russell |
| Byrd | Johnson, Colo. | Saltonstall |
| Cain | Johnston, S. C. | Smith |
| Capehart | Kem | Sparkman |
| Capper | Kilgore | Stennis |
| Chaves | Knowland | Stewart |
| Connally | Langer | Taft |
| Cooper | Lodge | Taylor |
| Cordon | Lucas | Thomas, Okla. |
| Donnell | McCarthy | Thye |
| Downey | McClellan | Tobey |
| Dworshak | McFarland | Tydings |
| Eastland | McGrath | Umstead |
| Ecton | McKellar | Vandenberg |
| Ellender | McMahon | Watkins |
| Feazel | Magnuson | Wherry |
| Ferguson | Malone | White |
| Flanders | Martin | Wiley |
| Fulbright | Millikin | Williams |
| George | Morse | Wilson |
| Green | Murray | Young |

A quorum being present,

Pending debate,

Mr. HATCH raised a question as to the presence of a quorum;

Whereupon

The PRESIDING OFFICER (Mr. ECTON in the chair) directed the roll to be called;

When

Ninety Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Gurney | Myers |
| Baldwin | Hatch | O'Conor |
| Ball | Hawkes | O'Daniel |
| Barkley | Hayden | Pepper |
| Brewster | Hickenlooper | Pepper |
| Bricker | Hill | Reed |
| Bridges | Hoey | Revercomb |
| Brooks | Holland | Robertson, Va. |
| Buck | Ives | Robertson, Wyo. |
| Butler | Jenner | Russell |
| Byrd | Johnson, Colo. | Saltonstall |
| Cain | Johnston, S. C. | Smith |
| Capehart | Kem | Sparkman |
| Capper | Kilgore | Stennis |
| Chaves | Knowland | Stewart |
| Connally | Langer | Taft |
| Cooper | Lodge | Taylor |
| Cordon | Lucas | Thomas, Okla. |
| Donnell | McCarthy | Thye |
| Downey | McClellan | Tobey |
| Dworshak | McFarland | Tydings |
| Eastland | McGrath | Umstead |
| Ecton | McKellar | Vandenberg |
| Ellender | McMahon | Watkins |
| Feazel | Magnuson | Wherry |
| Ferguson | Malone | White |
| Flanders | Martin | Wiley |
| Fulbright | Millikin | Williams |
| George | Morse | Wilson |
| Green | Murray | Young |

A quorum being present,

Pending debate,

Mr. WHERRY raised a question as to presence of a quorum;

Whereupon

The PRESIDING OFFICER (Mr. BALD-WIN in the chair) directed the roll to be called;

When

Seventy-seven Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hayden | O'Daniel |
| Baldwin | Hickenlooper | O'Mahoney |
| Ball | Hill | Pepper |
| Barkley | Hoey | Robertson, Va. |
| Bricker | Holland | Robertson, Wyo. |
| Bridges | Jenner | Russell |
| Buck | Johnson, Colo. | Saltonstall |
| Butler | Johnston, S. C. | Smith |
| Byrd | Kem | Sparkman |
| Capehart | Kilgore | Stennis |
| Connally | Knowland | Stewart |
| Cooper | Langer | Taft |
| Cordon | Lodge | Taylor |
| Donnell | Lucas | Thomas, Okla. |
| Downey | McCarthy | Thye |
| Dworshak | McClellan | Tydings |
| Eastland | McFarland | Umstead |
| Ecton | McGrath | Vandenberg |
| Ellender | McKellar | Watkins |
| Feazel | McMahon | Wherry |
| Ferguson | Magnuson | White |
| Fulbright | Martin | Wiley |
| Green | Millikin | Williams |
| Gurney | Morse | Wilson |
| Hatch | Myers | Young |
| Hawkes | O'Conor | |

A quorum being present,

The question being taken, Shall the bill pass, the objections of the President of the United States to the contrary notwithstanding?

It was determined in the affirmative—————— {Yeas————— 65 {Nays————— 12

The Senators who voted in the affirmative are—

| | | |
|---|---|---|
| Aiken | Hayden | Robertson, Va. |
| Baldwin | Hickenlooper | Robertson, Wyo. |
| Ball | Hill | Russell |
| Bricker | Hoey | Saltonstall |
| Bridges | Holland | Smith |
| Buck | Jenner | Sparkman |
| Butler | Johnson, Colo. | Stennis |
| Capehart | Johnston, S. C. | Stewart |
| Connally | Kem | Taft |
| Cooper | Kilgore | Thomas, Okla. |
| Cordon | Knowland | Thye |
| Donnell | Lodge | Tydings |
| Downey | McCarthy | Umstead |
| Dworshak | McClellan | Vandenberg |
| Eastland | McFarland | Watkins |
| Ecton | McKellar | Wherry |
| Ellender | Magnuson | White |
| Feazel | Martin | Wiley |
| Ferguson | Millikin | Williams |
| Fulbright | Myers | Wilson |
| Gurney | O'Conor | Young |
| Hawkes | O'Daniel | |

Senators who voted in the negative are—

| | | |
|---|---|---|
| Barkley | Langer | Morse |
| Byrd | Lucas | O'Mahoney |
| Green | McGrath | Pepper |
| Hatch | McMahon | Taylor |

So it was

Resolved, That the bill do pass, two-thirds of the Senators present having voted in the affirmative.

Ordered, That the Secretary notify the House of Representatives thereof.

The PRESIDENT pro tempore announced the time of the passage of the said bill to be 7 o'clock and 19 minutes p. m.

### AUTHORITY TO REPORT H. R. 6801

On motion by Mr. WHERRY, and by unanimous consent,

Ordered, That the Committee on Appropriations be authorized to report, dur-ing the adjournment of the Senate following today's session, the bill (H. R. 6801) making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes.

### INTERIOR DEPARTMENT APPROPRIATIONS

The Senate resumed the consideration of the bill (H. R. 6705) making appro-priations for the Department of the In-terior for the fiscal year ending June 30, 1949, and for other purposes.

The reported amendments, in part, were agreed to, in part amended, and, as amended, agreed to, and the bill further amended on the motion of Mr. O'MAHONEY, on behalf of the Committee on Appropriations.

Ordered, That the amendments be en-grossed and the bill read a third time.

The said bill, as amended, was read the third time.

Resolved, That it pass.

On motion by Mr. WHERRY,

Resolved, That the Senate insist upon its amendments to the said bill and ask a conference with the House of Repre-sentatives thereon.

Ordered, That the conferees on the part of the Senate be appointed by the Presiding Officer; and

The PRESIDING OFFICER (Mr. BALD-WIN in the chair) appointed Mr. WHERRY, Mr. GURNEY, Mr. BALL, Mr. CORDON, Mr. HAYDEN, Mr. THOMAS of Oklahoma, and Mr. O'MAHONEY.

Ordered, That the Secretary notify the House of Representatives thereof.

### MESSAGE FROM THE HOUSE

A message from the House of Repre-sentatives, by Mr. Maurer, one of its clerks:

Mr. President: The House of Repre-sentatives has passed without amend-ment the joint resolution (S. J. Res. 203) providing for the ratification by Con-gress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

The House has passed the bill (S. 2821) to provide increases of compensa-tion for certain veterans with service-connected disabilities who have depend-ents, with amendments, in which it re-quests the concurrence of the Senate.

The House has agreed to the amend-ments of the Senate to the bill (H. R. 2744) to provide for the elimination of Regular Army and Regular Air Force officers and for the retirement of officers, warrant officers, and enlisted men of the Regular Army and the Regular Air Force, and to provide retirement benefits for members of the Reserve components of the Army of the United States, the Air Force of the United States, United States Navy and Marine Corps, and Coast Guard.

The House has agreed to the amend-ment of the Senate to the bill (H. R. 6028) to authorize appropriations for the Bu-reau of Reclamation for payments to school districts on certain projects during their construction status.

The House has passed the following joint resolutions, in which it requests the concurrence of the Senate:

H. J. Res. 412. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to strengthen the American merchant marine, to encourage invest-ment in the American merchant marine to build more ships, and to remove in-equities; and

H. J. Res. 413. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to further promote the de-velopment and maintenance of the American merchant marine, and for other purposes.

### JOINT RESOLUTIONS REFERRED

The joint resolutions H. J. Res. 412 and H. J. Res. 413, this day received from the House of Representatives for con-currence, were read the first and second times by unanimous consent and referred to the Committee on Interstate and For-eign Commerce.

### ENROLLED BILL PRESENTED

The Secretary reported that on today he presented to the President of the United States the enrolled bill (S. 1675) to authorize the Secretary of the Navy to proceed with the construction of cer-tain public works, and for other pur-poses.

### APPROPRIATIONS FOR GOVERNMENT CORPO-RATIONS AND INDEPENDENT EXECUTIVE AGENCIES

On motion by Mr. FERGUSON, and by unanimous consent,

The Senate proceeded to consider the bill (H. R. 6481) making appropriations for Government corporations and inde-pendent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

Pending debate.

### EXECUTIVE BUSINESS

During legislative session, certain ex-ecutive business was transacted by unan-imous consent, as in executive session.

### ADJOURNMENT

On motion by Mr. WHERRY, at 10 o'clock and 8 minutes p. m.,

The Senate adjourned until 11 o'clock a. m. tomorrow.

## TUESDAY, JUNE 15, 1948

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and Rev. Bernard Braskamp, D. D., of Washington, D. C., offered prayer.

### THE JOURNAL

Mr. WHERRY submitted a request that the Journal of the proceedings of yesterday be approved without reading, to which Mr. RUSSELL objected.

On motion by Mr. TAFT, and by unanimous consent,

Ordered, That the calendar be called under the rule applicable to Calendar Monday, and that at 1 o'clock p. m., the

Case 2:09-cr-00078-JCM-RJJ   Document 262   Filed 07/06/12   Page 71 of 100

Senate resume the consideration of its unfinished business, viz, the bill (S. 2318) to provide for a coordinated agricultural program.

The Journal of the proceedings of yesterday was then approved.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Chaffee, one of its clerks:

*Mr. President:* The House of Representatives has passed the bill (S. 418) to provide for water-pollution-control activities in the United States Public Health Service of the Federal Security Agency and the Federal Works Agency, and for other purposes, with an amendment, in which it requests the concurrence of the Senate.

The House has passed the joint resolution (S. J. Res. 117) providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States, with an amendment, in which it requests the concurrence of the Senate.

The House has agreed to the concurrent resolution (S. Con. Res. 56) welcoming the Inter-American Bar Association to the United States for its conference in Detroit, Mich., in May 1949.

The House has passed the following bills, in which it requests the concurrence of the Senate:

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 6247. An act to provide for the air security and defense of the United States, to establish the composition of the Air Force, and for other purposes; and

H. R. 6411. An act to provide for the issuance of a special postage stamp in furtherance of national safety against traffic and other accident hazards.

The Speaker having signed an enrolled bill, viz, S. 2642, and an enrolled joint resolution, viz, S. J. Res. 84, I am directed to bring the same to the Senate for the signature of its President.

### ENROLLED BILLS AND JOINT RESOLUTION SIGNED

The Secretary reported that he had examined and found truly enrolled the following bill and joint resolution:

S. 2642. An act to amend the District of Columbia Motor Vehicle Parking Facility Act of 1942, approved February 16, 1942; and

S. J. Res. 84. Joint resolution to provide for the restoration and preservation of the Francis Scott Key National Memorial, and for other purposes.

The PRESIDENT pro tempore thereupon signed the same.

### HOUSE BILLS REFERRED

The bills this day received from the House of Representatives were severally read the first and second times by unanimous consent.

*Ordered,* That the bill H. R. 6247 be referred to the Committee on Armed Services;

That the bill H. R. 6411 be referred to the Committee on Post Office and Civil Service; and

That the bills H. R. 4462 and H. R. 5053 be placed on the calendar.

### INCREASE IN PRODUCTION AND PROCUREMENT OF COPRA AND PALM OIL IN NETHERLANDS INDIES

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of Agriculture, transmitting, pursuant to law, a proposed agreement between the Netherlands Indies Government and the United States to stimulate and increase the production and procurement of copra and palm oil in the Netherlands Indies; which, with the accompanying paper, was referred to the Committee on Banking and Currency.

### USELESS PAPERS IN DEPARTMENTS AND AGENCIES

The PRESIDENT pro tempore laid before the Senate a communication from the Archivist of the United States, transmitting, pursuant to law, a list of records of various departments and agencies of the Government recommended for disposition, which appear to have no permanent value or historical interest; which, with the accompanying papers, was referred to the Joint Select Committee on the Disposition of Papers in the Executive Departments; and

The PRESIDENT pro tempore appointed Mr. LANGER and Mr. MCKELLAR as members of the committee on the part of the Senate.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### PETITION AND MEMORIAL

The PRESIDENT pro tempore laid before the Senate a memorial of members of the Department Store Union, CIO, Local 3, of New York State, remonstrating against the enactment of legislation against subversive and un-American activities; which was referred to the Committee on the Judiciary.

Mr. BUTLER presented a resolution adopted by the Farwell, Nebr., irrigation district, favoring the enactment of legislation to bring about early construction and completion of the irrigation work in that district; which was referred to the Committee on Interior and Insular Affairs.

### REPORTS OF COMMITTEES

Under the authority of the order of yesterday, Mr. BRIDGES, from the Committee on Appropriations, to whom was referred the bill (H. R. 6801) making ap-

propriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes, reported it on yesterday, with amendments, and submitted a report (No. 1626) thereon.

Mr. WILEY, from the Committee on the Judiciary, to whom were referred the following bills, reported them each without amendment and submitted reports thereon, as follows:

S. 617. A bill for the relief of Richard T. Charrett (Rept. No. 1688);

S. 1872. A bill for the relief of Jose Babace (Rept. No. 1631);

S. 2050. A bill for the relief of Gracy Mariluch (Rept. No. 1633);

S. 2054. A bill for the relief of Engebert Axer (Rept. No. 1634);

S. 2075. A bill for the relief of Wisia Paryzenberg (Rept. No. 1635);

S. 2235. A bill for the relief of Milo Jurisevic, Mrs. Jelena Jurisevic, Svetozar Jurisevic, and Radmila Jurisevic (Rept. No. 1636);

S. 2360. A bill for the relief of Dr. Chung Kwai Lui (Rept. No. 1637);

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II (Rept. No. 1649);

H. R. 371. An act for the relief of Jenness C. Thomas (Rept. No. 1658);

H. R. 584. An act for the relief of Sarah Lee Cregg (Rept. No. 1659);

H. R. 700. An act for the relief of Anthony Arancio (Reprt. No. 1650);

H. R. 851. An act for the relief of Adney W. Gray (Rept. No. 1690);

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado (Rept. No. 1651);

H. R. 912. An act for the relief of Hiro Higa and Kana Higa (Rept. No. 1652);

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III (Rept. No. 1691);

H. R. 1409. An act for the relief of Franticek Jiri Pavlik or Georg Pavlik (Rept. No. 1638);

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader (Rept. No. 1660);

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn. (Rept. No. 1692);

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor (Rept. No. 1693);

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation (Rept. No. 1642);

H. R. 2269. An act for the relief of Frank A. Constable (Rept. No. 1694);

H. R. 2372. An act for the relief of George Cleve Williams (Rept. No. 1643);

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased (Rept. No. 1695);

H. R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins (Rept. No. 1654);

Case 2:09-cr-00078-JCW-RJS Document 262 Filed 07/06/12 Page 72 of 100

The said bill, as amended, was read the third time.

*Resolved*, That it pass.

On motion by Mr. CAIN,

*Resolved*, That the Senate insist upon its amendment to the said bill and ask a conference with the House of Representatives thereon.

*Ordered*, That the conferees on the part of the Senate be appointed by the President pro tempore; and

The PRESIDENT pro tempore appointed Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT.

*Ordered*, That the Secretary notify the House of Representatives thereof.

*Ordered*, by unanimous consent, That the bill (S. 2736) to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended, and for other purposes, be postponed indefinitely.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 6116. An act to amend the Trading With the Enemy Act;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor; and

H. R. 2009. An act for the relief of the estate of Vito Abarno.

*Ordered*, That the amendments be engrossed and the bills read a third time.

The said bills, as amended, were severally read the third time.

*Resolved*, That they pass.

*Ordered*, That the Secretary request the concurrence of the House of Representatives in the amendments.

The bill (S. 2820) to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public park and golf course purposes, certain land situated within the boundaries of the Veterans' Administration center at Cheyenne, Wyo., having been reached,

On motion by Mr. MILLIKIN, and by unanimous consent,

The Committee on Finance was discharged from the further consideration of the bill (H. R. 5734) to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and golf-course purposes, certain land situation within the boundaries of the Veterans' Administration center at Cheyenne, Wyo.

The Senate proceeded, by unanimous consent, to consider the said bill; and having been amended on the motion of Mr. MOSSS,

*Ordered*, That the amendment be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved*, That it pass.

*Ordered*, That the Secretary request the concurrence of the House of Representatives in the amendment.

*Ordered*, by unanimous consent, That the bill S. 2820 be postponed indefinitely.

The Senate proceeded to consider the bill (H. R. 2352) to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees; and the reported amendment having been agreed to,

*Ordered*, That the amendment be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved*, That it pass, and that the title thereof be amended, as reported by the committee to read: "An act to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees, and to provide for the sale of certain lands to the Board of County Commissioners of Comanche County, Okla., and for other purposes."

*Ordered*, That the Secretary request the concurrence of the House of Representatives in the amendments.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

S. 2551. A bill authorizing the Secretary of the Interior to issue a patent in fee to Mrs. Pearl Scott Loukes;

S. 1973. A bill for the relief of certain Basque aliens; and

S. 2861. A bill to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans.

*Ordered*, That the bills be engrossed and read a third time.

The said bills were severally read the third time.

*Resolved*, That they pass, and that the respective titles thereof be as aforesaid.

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 2764) to amend the Trading With the Enemy Act; and having been amended on the motion of Mr. COOPER,

*Ordered*, That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved*, That it pass, and that the title thereof be as aforesaid.

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, having been reached,

The Senate proceeded, by unanimous consent, to consider the bill (H. R. 5053) to provide for the establishment of the Independence National Historical Park, and for other purposes; and no amendment being made,

*Ordered*, That it pass to a third reading.

The said bill was read the third time.

*Resolved*, That it pass.

*Ordered*, That the Secretary notify the House of Representatives thereof.

*Ordered*, by unanimous consent, That the bill S. 2080 be postponed indefinitely.

The Senate proceeded to consider the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution; and the reported amendments having been agreed to,

*Ordered*, That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved*, That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, and for other purposes."

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (H. R. 4462) authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming; and no amendment being made.

*Ordered*, That it pass to a third reading.

The said bill was read the third time.

*Resolved*, That it pass.

*Ordered*, That the Secretary notify the House of Representatives thereof.

*Ordered*, by unanimous consent, That the bill (S. 1821) of an identical title be postponed indefinitely.

The bill (S. 2816) to direct the Secretary of Agriculture to convey certain land to the State of Oklahoma having been reached,

The Senate proceeded, by unanimous consent, to consider the bill (H. R. 5861) of an identical title; and no amendment being made,

*Ordered*, That it pass to a third reading.

The said bill was read the third time.

*Resolved*, That it pass.

*Ordered*, That the Secretary notify the House of Representatives thereof.

*Ordered*, by unanimous consent, That the bill S. 2816 be postponed indefinitely.

The Senate proceeded to consider the bill (S. 1301) for the relief of Alfonso Felice; and the reported amendments having been agreed to,

*Ordered*, That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved*, That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill for the relief of Alfonso Felici."

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (H. R. 6295) to provide increased pensions for widows and children of de-

The Senate proceeded to consider the following bills; and no amendment was made:

S. 2299. A bill for the relief of Ella L. Browning;

S. 2850. A bill to amend the act entitled "An act to fix and regulate the salaries of teachers, school officers, and other employees of the Board of Education of the District of Columbia, and for other purposes," approved July 7, 1947;

S. 1995. A bill for the relief of George Bailey; and

S. 2605. A bill for the relief of the widow of Robert V. Holland.

*Ordered,* That they be engrossed and read a third time.

The said bills were severally read the third time.

*Resolved,* That they pass, and that the respective titles thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 1691) for the relief of the First, Second, and Third National Steamship Cos.; and the reported amendment having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 2482) to amend sections 2, 4, and 8 of the Migratory Bird Hunting Stamp Act of March 16, 1934 (48 Stat. 451; 16 U. S. C. 718b), as amended, and section 5 of the Migratory Bird Conservation Act of February 18, 1929 (45 Stat. 1222; 16 U. S. C. 715), as amended, and the reported amendment to the text having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill to amend sections 2 and 4 of the Migratory Bird Hunting Stamp Act of March 16, 1934 (48 Stat. 451; 16 U. S. C. 718b), as amended."

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes;

H. R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes; and

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended;

to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

*Ordered,* That the amendments be engrossed and the bills read a third time.

The said bills, as amended, were severally read the third time.

*Resolved,* That they pass.

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendments.

The Senate proceeded to consider the bill (S. 2686) to establish the Navajo-Hopi Indian Administration, to provide for the rehabilitation of the Navajo and Hopi Indian Tribes, and for other purposes; and the reported amendments having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

**TERMS OF MEMBERS OF THE ATOMIC ENERGY COMMISSION**

The Senate resumed the consideration of the bill (S. 2589) to provide for the extension of the terms of office of the present members of the Atomic Energy Commission.

Pending debate,

**INCREASE OF STRENGTH OF THE ARMED FORCES OF THE UNITED STATES**

The PRESIDENT pro tempore laid before the Senate the message this day received from the House of Representatives, insisting upon its amendment to the bill (S. 2655) to provide for the common defense by increasing the strength of the armed forces of the United States, including the reserve components thereof, and for other purposes, and asking a conference with the Senate thereon.

On motion by Mr. GURNEY that the Senate disagree to the amendment of the House of Representatives to the said bill, agree to the conference asked by the House, and that the conferees on the part of the Senate be Mr. GURNEY, Mr. SALTONSTALL, Mr. MORSE, Mr. TYDINGS, and Mr. BYRD,

Pending debate.

**SUPPLEMENTAL APPROPRIATION FOR INDEPENDENT OFFICES**

On motion by Mr. WHERRY, and by unanimous consent,

The Senate proceeded to consider the bill (H. R. 6829) making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes.

The reported amendments in part were agreed to.

Mr. EASTLAND raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Eighty-nine Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hawkes | O'Conor |
| Baldwin | Hayden | O'Daniel |
| Ball | Hickenlooper | O'Mahoney |
| Barkley | Hill | Pepper |
| Brewster | Hoey | Reed |
| Bricker | Holland | Revercomb |
| Bridges | Ives | Robertson, Va. |
| Brooks | Jenner | Robertson, Wyo. |
| Buck | Johnson, Colo. | Russell |
| Butler | Johnston, S.C. | Saltonstall |
| Byrd | Kem | Smith |
| Cain | Kilgore | Sparkman |
| Capehart | Knowland | Stennis |
| Chavez | Langer | Stewart |
| Connally | Lucas | Taft |
| Cooper | McCarthy | Taylor |
| Cordon | McClellan | Thomas, Okla. |
| Donnell | McFarland | Thye |
| Downey | McGrath | Tobey |
| Dworshak | McKellar | Tydings |
| Eastland | McMahon | Umstead |
| Ecton | Magnuson | Vandenberg |
| Ellender | Malone | Watkins |
| Ferguson | Martin | Wherry |
| Flanders | Maybank | White |
| Fulbright | Millikin | Wiley |
| Green | Moore | Williams |
| Gurney | Morse | Wilson |
| Hatch | Murray | Young |
| | Myers | |

A quorum being present,

The reported amendments in part were further agreed to.

**MESSAGE FROM THE HOUSE**

A message from the House of Representatives, by Mr. Chaffee, one of its clerks:

*Mr. President:* The House of Representatives has passed without amendment the joint resolution (S. J. Res. 37) requesting the President to proclaim February 1 as National Freedom Day.

The House has agreed to the respective reports of the committees of conference on the disagreeing votes of the two Houses on the amendment of the House to each of the following bills of the Senate:

S. 418. A bill to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes; and

S. 2242. A bill to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes.

The House has agreed to the amendments of the Senate to each of the following bills of the House:

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes; and

H. R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national

*mand for milk or its products in the marketing area to which the contemplated marketing agreement, order, or amendment relates. Whenever the Secretary finds, upon the basis of the evidence adduced at the hearing required by section 8b or 8c, as the case may be, that the parity prices of such commodities are not reasonable in view of the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk and its products in the marketing area to which the contemplated agreement, order, or amendment relates, he shall fix such prices as he finds will reflect such factors, insure a sufficient quantity of pure and wholesome milk, and be in the public interest. Thereafter, as the Secretary finds necessary on account of changed circumstances, he shall, after due notice and opportunity for hearing, make adjustments in such prices."*

*(c) Section 8c (17) of the Agricultural Adjustment Act, as reenacted and amended by the Agricultural Marketing Agreement Act of 1937, is amended by striking out "and section 8e".*

*(d) Section 8c of the Agricultural Adjustment Act, as reenacted and amended by the Agricultural Marketing Agreement Act of 1937, is repealed.*

*(e) Section 4 of the Agricultural Marketing Agreement Act of 1937, as amended, is amended by inserting after the section designation the subsection designation "(a)" and by adding at the end thereof a new subsection to read as follows:*

*"(b) Any program in effect under the Agricultural Adjustment Act, as reenacted and amended by this Act, on the effective date of section 302 of the Agricultural Act of 1948 shall continue in effect without the necessity for any amendatory action relative to such program, but any such program shall be continued in operation by the Secretary of Agriculture only to establish and maintain such orderly marketing conditions as will tend to effectuate the declared purpose set out in section 2 or 8c (18) of the Agricultural Adjustment Act, as reenacted and amended by this Act."*

*(f) All references in other laws to—*

    *(1) parity,*
    *(2) parity prices,*
    *(3) prices comparable to parity prices, or*
    *(4) prices to be determined in the same manner as provided by the Agricultural Adjustment Act of 1938 prior to its amendment by this Act for the determination of parity prices,*

*with respect to prices for agricultural commodities and products thereof, shall hereafter be deemed to refer to parity prices as determined in accordance with the provisions of section 301 (a) (1) of the Agricultural Adjustment Act of 1938, as amended by this Act.*

*Effective Date*

Sec. 303. Titles II and III of this Act shall take effect on January 1, 1950.

And the Senate agree to the same.

That the Senate recede from its amendment to the title.

    GEORGE D. AIKEN,
    MILTON R. YOUNG,
    EDWARD J. THYE,
    ELMER THOMAS,
    ALLEN J. ELLENDER,
*Managers on the Part of the Senate.*
    CLIFFORD R. HOPE,
    AUG. H. ANDRESEN,
    ANTON J. JOHNSON,
    GEO. W. GILLIE,
*Managers on the Part of the House.*

The Senate proceeded to consider the said report; and

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

#### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Swanson, one of its clerks:

*Mr. President:* The House of Representatives has agreed to the following concurrent resolutions, in which it requests the concurrence of the Senate:

#### House Concurrent Resolution 218

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

#### House Concurrent Resolution 219

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

#### CONDITIONAL ADJOURNMENT, SECOND SESSION, EIGHTIETH CONGRESS

The PRESIDING OFFICER laid before the Senate the concurrent resolution (H. Con. Res. 218) to provide for the

adjournment of the two Houses of Congress until December 31, 1948, this day received from the House of Representatives for concurrence, which was read.

The Senate proceeded to consider the said concurrent resolution; and

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

#### AUTHORITY FOR SIGNING ENROLLED BILLS FOLLOWING ADJOURNMENT

The PRESIDING OFFICER laid before the Senate the concurrent resolution (H. Con. Res. 219) authorizing the signing of enrolled bills following adjournment, this day received from the House of Representatives for concurrence, which was read.

The Senate proceeded to consider the said concurrent resolution; and

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

#### AUTHORITY FOR SECRETARY TO RECEIVE MESSAGES FROM THE HOUSE OF REPRESENTATIVES AND THE PRESIDENT PRO TEMPORE TO MAKE APPOINTMENTS DURING THE ADJOURNMENT

Mr. WHERRY submitted the following order, which was considered by unanimous consent, and agreed to:

*Ordered,* That notwithstanding the final adjournment of the present session of the Congress, the President pro tempore be, and he is hereby, authorized to make appointments to commissions or committees authorized by law, by concurrent action of the two Houses, or by order of the Senate.

*Ordered further,* That the Secretary of the Senate be, and he is hereby, authorized to receive messages from the House of Representatives subsequent to the adjournment of the present session.

#### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed the bill (S. 2767) to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment, with amendments, in which it requests the concurrence of the Senate.

#### FARM LABOR

The PRESIDING OFFICER laid before the Senate the amendments this day received from the House of Representatives for concurrence to the bill (S. 2767) to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural

commodities to meet domestic needs and foreign commitment.

The Senate proceeded to consider the said amendments; and,

On motion by Mr. AIKEN,

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### PRODUCTION OF STRATEGIC AND CRITICAL MATERIALS

The Senate resumed the consideration of the bill (S. 2756) to stimulate the production and conservation of strategic and critical ores, metals, and minerals in the interest of national defense and for the establishment within the Department of the Interior of a Mine Incentive Payments Division, and for other purposes.

The question being, Shall the bill pass?

Pending debate.

### DEVELOPMENT OF CIVIL TRANSPORT AIRCRAFT

On motion by Mr. BREWSTER,

The Senate proceeded to consider the bill (S. 2644) to provide for the development of civil transport aircraft adaptable for auxiliary military service, and for other purposes.

On the question of agreeing to the reported amendment, striking out all after the enacting clause and inserting in lieu thereof other words,

Pending debate.

### ISSUANCE OF STAMP COMMEMORATIVE OF JULIETTE LOW

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 327) to authorize the issuance of a special series of stamps commemorative of Juliette Low, founded and organizer of Girl Scouting in the United States of America; and no amendment being made.

*Ordered,* That it pass to a third reading.

The said joint resolution was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### ISSUANCE OF STAMP COMMEMORATIVE OF ROUGH RIDERS

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 305) to authorize the issuance o fa special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and no amendment being made.

*Ordered,* That it pass to a third reading.

The said joint resolution was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted as in executive session, by unanimous consent.

### CONSTRUCTION OF RAILROADS IN ALASKA

On motion by Mr. MAGNUSON, and by unanimous consent,

The Senate proceeded to consider the concurrent resolution (S. Con. Res. 59) relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements; and the reported amendments having been agreed to,

The concurrent resolution, as amended, together with the accompanying preamble, was agreed to, as follows:

*Whereas* the defense of the Territory of Alaska is essential to the national security of the United States; and

*Whereas* further development of mineral, timber, and other resources of Alaska is necessary to the defense of that Territory and to the welfare and security of the United States; and

*Whereas* adequate transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are essential to the development of the resources and the defense of Alaska; and

*Whereas* existing transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are inadequate for the development of the resources and the defense of Alaska: Therefore be it

*Resolved by the Senate (the House of Representatives concurring),* That the President is requested to commence negotiations with the Canadian Government with a view toward determining the desirability of extending the existing railroad system now terminating at Prince George, British Columbia, Canada, to the Territory of Alaska, and to cause surveys to be made and plans, specifications, and cost estimates be prepared covering the construction of a railroad connecting the existing railroad system terminating at Fairbanks, Alaska, with a railroad system extended from Prince George, British Columbia, Canada, to the Territory of Alaska; also including studies with the Canadian Government for reciprocal tariff and immigration arrangements in connection with this project.

### ADJOURNMENT

On motion by Mr. WHERRY, at 7 o'clock and 14 minutes a. m. (Sunday, June 20, 1948),

The Senate, pursuant to House Concurrent Resolution 218, adjourned.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had been previously signed by the Speaker of the House of Representatives, and examined and found truly enrolled by the Secretary of the Senate:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co .and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizin gthe extension of the functions and duties of Fed-

eral Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended;

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2369. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho; and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government agencies and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or post-war national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor;

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTIONS PRESENTED

Subsequent to the adjournment of the Senate on June 20, 1948, the following enrolled bills and joint resolutions, heretofore duly signed by the Presiding Officers of the two Houses, were presented to the President of the United States by the Secretary of the Senate:

On June 21, 1948:

S. 83. An act authorizing the naturalization of Elizabeth Pickering Winn;

S. 1107. An act relating to the arming of American vessels;

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes;

S. 1730. An act for the relief of Mrs. Anna V. Reyer, Alexander A. Reyer, and Vitaly A. Reyer;

the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

S. 1266. An act to amend section 1064 of the act entitled "An act to establish a Code of Law for the District of Columbia," approved March 3, 1901, relating to admissibility of testimony by a party to a transaction when the other party is incapable of testifying;

S. 1274. An act conveying all right, title, and interest of the United States in and to certain lands in Wilkinson County, Miss., to the heirs, assigns, and successors in title of William Collins;

S. 1275. An act conveying all right, title, and interest of the United States in and to certain lands in Warren County, Miss., to the heirs, assigns, and successors in title of Moses Evans;

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2223. An act to authorize the promotion of Lt. Gen. Leslie Richard Groves to the permanent grade of major general, United States Army, and for other purposes;

S. 2237. An act to increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act;

S. 2505. An act to amend the act of August 1, 1947, to clarify the position of the Secretary of the Air Force with respect to such act, and to authorize the Secretary of Defense to establish six additional positions in the reserve components thereof, and for other purposes;

S. 2508. An act relating to salaries of certain officers and employees of the United States and certain officers and employees of Puerto Rico;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the reserve components thereof, and for other purposes;

S. 2706. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2857. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes;

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H. R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948;

H. R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizer;

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes;

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa;

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes;

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes; and

S. J. Res. 203. Joint resolution providing for the ratification by Congress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

On June 25, 1948:

S. 1409. An act for the relief of Markoto Iwamatsu, Atsushi Jun Imamatsu, and Tomoe Iwamatsu;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2401. An act to provide for the administration of military justice within the United States Air Force, and for other purposes;

S. 2875. An act to amend the Organic Act of Puerto Rico;

S. 2770. An act to fix the rank of the Assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements.

S. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2766. An act to amend section 2 of an act, entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725);

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3214. An act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary";

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 4114. An act to amend the Public Health Service Act to permit certain expenditures, and for other purposes;

H. R. 4298. An act for the relief of Henry Hill;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4566. An act for the relief of William Nally;

H. R. 4567. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4659. An act to ratify and confirm amendments to certain contracts for the furnishing of petroleum products to the United States;

H. R. 4981. An act for the relief of Dimitri Petrou;

H. R. 5524. An act making appropriations for civil functions administered by the Department of the Army for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 5826. An act to amend section 332 (a) of the Nationality Act of 1940;

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for dis-

MONDAY, JULY 26, 1948

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord nineteen hundred and forty-eight, and of the independence of the United States of America the one hundred and seventy-third.

[SEAL]                                                                                                     HARRY S. TRUMAN.

By the President:

G. C. MARSHALL,

*Secretary of State.*

In conformity with the foregoing proclamation of the President of the United States, the Senate reassembled in its Chamber in the city of Washington.

The PRESIDENT pro tempore called the Senate to order and Rev. Bernard Braskamp, D. D., of Washington, D. C. offered prayer.

### READING OF PROCLAMATION OF THE PRESIDENT

The proclamation of the President convening the Senate in session was read.

### QUESTION OF QUORUM

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Seventy-eight Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Newcomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnson, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Gordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

A quorum being present.

### THE JOURNAL

On motion by Mr. WHERRY, and by unanimous consent,

The Journal of the proceedings of Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, was approved.

### NOTIFICATION TO THE PRESIDENT

Mr. WHERRY submitted the following resolution (S. Res. 266), which was considered by unanimous consent and agreed to:

*Resolved,* That a committee of two Senators be appointed to join such committee as may be appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is reassembled and that the Congress is ready to receive any communication he may be pleased to make.

The PRESIDENT pro tempore appointed Mr. WHERRY and Mr. BARKLEY as the members of the committee on the part of the Senate.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### ADJOURNMENT

On motion by Mr. WHERRY, at 12 o'clock and 11 minutes p. m.,

The Senate adjourned.

## TUESDAY, JULY 27, 1948

The PRESIDENT pro tempore called the Senate to order, and Rev. Bernard Braskamp, D. D., of Washington, D. C., offered prayer.

### THE JOURNAL

On motion by Mr. WHERRY, and by unanimous consent,

The Journal of the proceedings of Monday, July 26, 1948, was approved.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Swanson, one of its clerks:

*Mr. President:* The House of Representatives has passed the following resolution, which I am directed to communicate to the Senate:

*Resolved,* That a committee of three members be appointed by the Speaker on the part of the House of Representatives to join with the committee on the part of the Senate to notify the President of the United States that a quorum of each House is assembled and that Congress is ready to receive any communications that he may be pleased to make.

The Speaker of the House has appointed Mr. HALLECK, Mr. ARENDS, and Mr. McCORMACK as the members of the said committee on the part of the House.

The House has passed the following concurrent resolution (H. Con. Res. 220), in which it requests the concurrence of the Senate:

*Resolved by the House of Representatives (the Senate concurring),* That the two Houses of Congress assemble in the Hall of the House of Representatives on Tuesday, July 27, 1948, at 12:30 o'clock in the afternoon, for the purpose of receiving such communication as the President of the United States may be pleased to make to them.

### REPORT OF NOTIFICATION COMMITTEE

Mr. WHERRY, from the committee appointed to join a similar committee appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is reassembled



**COPY**
Reproduced at the National Ar

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

nder the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

ct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| NAME Richard H. Hunt | | DATE 11/20/08 |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407·A

# Calendar No. 1675

| | | |
|---|---|---|
| 80TH CONGRESS<br>2d Session | SENATE | REPORT<br>No. 1620 |

---

### REVISION OF TITLE 18, UNITED STATES CODE

---

JUNE 14 (legislative day, JUNE 1), 1948.—Ordered to be printed

---

Mr. WILEY, from the Committee on the Judiciary, submitted the
following

## REPORT

### [To accompany H. R. 3190]

The Committee on the Judiciary, to whom was referred the bill
(H. R. 3190) to revise, codify, and enact into positive law, title 18
of the United States Code, entitled "Crimes and Criminal Procedure,"
having considered the same, do now report the bill to the Senate
favorably, with amendments, and recommend that the bill, as amended
do pass.

The purpose of the bill is to codify and revise the laws relating to
Federal crimes and criminal procedure.

With the amendments proposed by the committee the bill includes
all pertinent laws to January 5, 1948, and is made effective September
1, 1948.

The bill makes it easy to find the criminal statutes because of the
arrangement, numbering, and classification. The original intent of
Congress is preserved. A uniform style of statutory expression is
adopted. The new Federal Rules of Criminal Procedure are keyed
to the bill and are reflected in part II of title 18.

Obsolete and executed provisions are eliminated. Uncertainty will
be ended and there will no longer be any need to examine the many
volumes of the Statutes at Large as the bill, upon enactment, will
itself embody the substantive law which will thus appear in full in the
United States Code.

Codification and revision of the criminal statutes was undertaken
in October 1943 by the House Committee on Revision of the Laws.
A bill prepared by that committee passed the House on July 16, 1946,
Seventy-ninth Congress, was reintroduced in the present Congress as
H. R. 3190, and passed the House again on May 12, 1947.

The care with which the bill has been prepared and brought to
date in the present Congress under the supervision of the House
Committee on the Judiciary is reflected by that committee's report,
House Report No. 304 of the Eightieth Congress. For a detailed

2  REVISION OF TITLE 18, UNITED STATES CODE

explanation of the statutes embodied in the bill, reference is made to the appendix of House Report 304, consisting of 458 pages.

The amendments proposed by the committee consisting of new legislation enacted since passage of the bill by the House, perfecting amendments, and corrections of printing errors, together with the reasons for each, are listed below.

## AMENDMENTS AND EXPLANATIONS

*Amendments Nos.*

1. On page 3, preceding line 1, after and underneath item "13. Laws of States adopted for areas within Federal jurisdiction.", insert "14. Applicability to Canal Zone.".

### EXPLANATION

This amendment includes in the section analysis of chapter 1, the catch line to new section 14 which is being added by amendment No. 3.

2. On page 5, line 4, after "United States", strike out the period and insert ", except the Canal Zone.".

### EXPLANATION

This amendment together with amended section 3241 and inserted section 14 will clarify the applicability of Federal criminal statutes within the Canal Zone.

3. On page 8, after line 15, insert:

§ 14. APPLICABILITY TO CANAL ZONE

In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: Sections 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 499, 502, 506, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2199, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2890, 2421, 2422, 2423, 2424, 3059, 3105, 3109.

### EXPLANATION

This amendment, adding a new section 14, together with amended section 5 will clarify the applicability of Federal criminal statutes within the Canal Zone. It was particularly desired by the Governor of the Canal Zone and the compiler of the Canal Zone Code. The Governor of the Canal Zone, in a letter dated September 22, 1945, and filed with the House Judiciary Committee, advised:

"General criminal laws of the United States are now applicable to the Canal Zone only if applicability is indicated by language expressly referring to the Canal Zone, or to possessions of the United States, or to territory subject to the jurisdiction of the United States, etc. * * * The bill in its present form would have undesirable effects insofar as concerns the continued operation of the Canal Zone Criminal Code and Code of Criminal Procedure, established

ε

ce is made to
ces.
sting of new
se, perfecting
her with the

NS

th item "13.
urisdiction.",

sis of chapter
ing added by

ut the period

section 3241
plicability of
e.

as apply to and
l likewise apply
. 474, 478, 479,
595, 598, 600,
. 796, 797, 915,
965, 966, 967,
4, 1621, 1622,
31, 2234, 2235,
2, 2423. 2424,

ogether with
y of Federal
was particu-
one and the
ernor of the
45. and filed

tes are now
is indicated
Zone, or to
y subject to
* * The
ffects insofar
Canal Zone
, established

by Congress as titles 5 and 6 of the Canal Zone Code, enacted by act of June 19, 1934 (ch. 667, 48 Stat. 1122), and also would perhaps have undesirable effects insofar as concerns the continued applicability to the Canal Zone of the body of general criminal laws which are now applicable."

4. On page 91, preceding line 1, after and underneath item 609, in the section analysis, strike out—

610. Contributions by national banks or corporations.

And insert—

610. Contributions or expenditures by national banks, corporations, or labor organizations.

#### EXPLANATION

This amendment makes the section analysis correspond with corrected catch line of 610 of the revision.

5. On page 104, lines 4–21, after line 3, strike out all of lines 4 to 21, inclusive, and insert—

§610. CONTRIBUTIONS BY NATIONAL BANKS, CORPORATIONS, OR LABOR ORGANIZATIONS

It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to, Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

For the purposes of this section "labor organization" means any organization of any kind, or any agency or employee-representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

#### EXPLANATION

This amendment incorporates section 304 of the Labor-Management Relations Act, 1947, Public Law 101, prohibiting campaign contributions. etc., by labor unions.

6. On page 117, line 8, after "or receiver," strike out "with".
On page 117, lines 9 to 14, after line 8, strike out lines 9 to 14, inclusive.
On page 117, line 15, before "shall", strike out "system,".

7. On page 118, line 18, after "or otherwise intrusted to its care," strike out "with intent to defraud such".
On page 118, lines 19 to 22, after line 18, strike out lines 19 to 22, inclusive.

**4**        REVISION OF TITLE 18, UNITED STATES CODE

On page 118, line 23, before "shall be fined", strike out "amine into the affairs of such institution,".

### EXPLANATION

Amendments Nos. 6 and 7 involve no change in existing law. The stricken words are unnecessary and inconsistent with other sections of this revision defining embezzlement but are necessary and appropriate in defining the offense of false entries in sections 1005 and 1006. See sections 641, 645, and 659 of this title.

8. On page 134, line 19, after "both", strike out the period at the end of this line and insert—

; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

### EXPLANATION

This amendment gives effect to the act of June 21, 1947, (ch. 111, 61 Stat. 134). amending section 138 of the Criminal Code of 1909 (35 Stat. 1113; 18 U. S. C. sec. 244), the latter being section 755 of revised title 18 as set out in this bill.

9. On page 158. insert new matter after line 12, as follows:

While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organisation or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government. political subdivision. organisation, or association.

### EXPLANATION

This amendment incorporates in section 955 of title 18 the exception made to the Johnson Act by act of July 31, 1945 (ch. 339. sec. 9, 59 Stat. 516; 31 U. S. C., sec. 804b).

10. On page 367, lines 15 to 18, inclusive, strike out all of lines 15 to 18, inclusive, and insert in lieu thereof the following two paragraphs:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States. of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

### EXPLANATION

This amendment is necessary to preserve the provisions of section 371 (1) of title 28 United States Code, 1940 edition, giving the district court of the United States original jurisdiction of all offenses against the laws of the United States, exclusive of State courts.

11. On page 415, line 10, after "Canal Zone," insert "District of Columbia,".

CODE

1ed", strike out


bange in existing
 and inconsistent
ng embezzlement
ing the offense of
See sections 641,


ut the period at


all be fined not more
oth.


of June 21, 1947,
8 of the Criminal
c. 244), the latter
ut in this bill.

as follows:

of the International
Reconstruction and
r purchase of bonds,
ny political subdivi-
f for or on behalf of
of any loan to such
ciation.


o 955 of title 18
y act of July 31,
C., sec. 804b).

out all of lines 15
he following two


origina. jurisdiction,
inst the laws of the


pair the jurisdiction
of.


the provisions of
ode, 1940 edition,
tes original juris-
he United States,


insert "District of

### EXPLANATION

This amendment makes it clear that the Supreme Court may also promulgate rules for the District Court for the District of Columbia.  The District of Columbia is specifically mentioned in section 3772.

12.     On page 415, after line 17, insert at end of section the following new paragraph:

Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore proscribed by the Supreme Court.

13.     On page 416, line 21, insert at end of section the following new paragraph:

Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.

### EXPLANATION

Amendments 12 and 13 are necessary in order to make clear that no provisions of the existing Federal Rules of Criminal Procedure are amended or otherwise affected by this bill.

14.     On page 448, line 24, after "of", strike out "The Revised Statutes (1 U. S. C.," and insert "Title 1 of the United States Code".

### EXPLANATION

This amendment corrects reference to Revised Statutes, section 1, which was originally codified in Title 1, United States Code, section 1.   It was repealed by act of July 30, 1947 (ch. 388, sec. 2, 61 Stat. 640 (Public Law 278)).   The same act enacted said title 1 United States Code into positive law; therefore, the amendments proposed by this section of the bill should be directed to section 1 of title 1, United States Code, rather than to Revised Statutes, section 1.

On page 448, line 25, preceding "is", strike out "sec. 1)":

### EXPLANATION

This amendment is a part of the change made necessary as explained immediately above.

15.     On page 456, lines 3 to 21, after line 2, strike out all of section 18 (lines 3 through 21).

### EXPLANATION

The inclusion of new section 14 and the amendment of section 5 renders section 18 unnecessary.

16.     On page 456, line 22, preceding "If any", etc., strike out "Sec. 19."   And insert "Sec. 18."

17.     On page 457, line 3, preceding "no inference", etc., strike out "Sec. 20."   And insert "Sec. 19.".

6       REVISION OF TITLE 18, UNITED STATES CODE

EXPLANATION

Amendments 16 and 17 renumber sections 19 and 20 of the bill to be sections 18 and 19, respectively.

18.    On page 457, lines 8 to 15, after line 7, strike out all of lines through 15, inclusive, and insert—

SEC. 20. This Act shall take effect September 1, 1948

Also at line 16, strike out "Sec. 22." And insert "Sec. 21."

EXPLANATION

This amendment supplies effective date provision of the bill and renumbers section 22 as section 21.

19.    On page 463, about middle of page, strike out—

| July 3 | 122 | 4, 8 | 40 | 755, 756 | 16 | 706, 706 |
|---|---|---|---|---|---|---|

20.    On page 467, below middle of page, strike out—

| June 20 | 634 | 4 | 42 | 1556 | 16 | 706 |
| Do | 635 | 1, 3 | 42 | 1657 | 22 | 343 |

and insert in lieu thereof—

| June 20 | 634 | 1, 2 | 40 | 1657 | 22 | 345 |
|---|---|---|---|---|---|---|

EXPLANATION

Amendments 19 and 20 save from repeal the enforcement sections of the Migratory Bird Act, act of July 3, 1918, and leaves them in title 16, Conservation, United States Code, where they are incorporated by reference in other bird acts.

21.    On page 470 after—

| June 8 | 172 | 1, 2, 3, | 40 | 234, 235 | 12 | 341, 341a, 342 |

Insert—

| July 31 | 339 | 9 | 40 | 615 | 31 | 804b |

EXPLANATION

This amendment includes in the schedule of repeals the act of July 31, 1945 (ch. 339, sec. 9, 59 Stat. 516), which added a section 3 to the act of April 13, 1934 (ch. 112, 48 Stat. 574). The provisions of this section 3, heretofore set out as section 804b of title 31 United States Code, 1940 edition, Money and Finance, are being incorporated, by accompanying amendment to this bill, in section 955 of revised title 18, hence the necessity to repeal the prior provisions as contained in the said act of July 31, 1945 (ch. 339, sec. 9).

22.    On page 471, at the end of the schedule of repeals on this page, insert—

| 1947—Apr. 18 | 30 | | 61 | 52 | 18 | 411 |
| May 16 | 73 | | 61 | 97 | 18 | 740b-1 |
| June 21 | 111 | | 61 | 134 | 18 | 244 |
| June 23 | 120 | 304 | 61 | 136 | 3 | 252 |

EXPLANATION

This amendment repeals the 1947 Acts which are hereby incorporated in the bill.



COPY

Reproduced at the National Archives

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| NAME Richard H. Hunt | DATE 11/20/08 | |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407·A

80th Congress, 1st Session - - - - - - House Report No. 304

# REVISION OF TITLE 18, UNITED STATES CODE

## REPORT

FROM THE

## COMMITTEE ON THE JUDICIARY
## HOUSE OF REPRESENTATIVES

TO ACCOMPANY

# H. R. 3190

### A BILL TO REVISE, CODIFY, AND ENACT INTO POSITIVE LAW TITLE 18 OF THE UNITED STATES CODE, ENTITLED "CRIMES AND CRIMINAL PROCEDURE"



April 24, 1947.—Committed to the Committee of the Whole House
on the State of the Union and ordered to be printed

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

60770

COMMITTEE ON THE JUDICIARY

HOUSE OF REPRESENTATIVES

EARL C. MICHENER, Michigan, *Chairman*

JOHN M. ROBSION, Kentucky
CHAUNCEY W. REED, Illinois
JOHN W. GWYNNE, Iowa
LOUIS E. GRAHAM, Pennsylvania
RAYMOND S. SPRINGER, Indiana
FRANK FELLOWS, Maine
EARL R. LEWIS, Ohio
JOHN JENNINGS, JR., Tennessee
ANGIER L. GOODWIN, Massachusetts
CLIFFORD P. CASE, New Jersey
E. WALLACE CHADWICK, Pennsylvania
ALBERT L. REEVES, JR., Missouri
KENNETH B. KEATING, New York
EDWARD J. DEVITT, Minnesota

EMANUEL CELLER, New York
FRANCIS E. WALTER, Pennsylvania
SAM HOBBS, Alabama
WILLIAM T. BYRNE, New York
ESTES KEFAUVER, Tennessee
JOSEPH R. BRYSON, South Carolina
FADJO CRAVENS, Arkansas
THOMAS J. LANE, Massachusetts
MARTIN GORSKI, Illinois
MICHAEL A. FEIGHAN, Ohio
FRANK L. CHELF, Kentucky
ED GOSSETT, Texas

C. MURRAY BERNHARDT, *Chief Clerk*
VELMA SMEDLEY, *Assistant Chief Clerk*

SUBCOMMITTEE No. 1

JOHN M. ROBSION, Kentucky, *Chairman*

CHAUNCEY W. REED, Illinois
JOHN JENNINGS, Jr., Tennessee
E. WALLACE CHADWICK, Pennsylvania

EMANUEL CELLER, New York
FRANK L. CHELF, Kentucky
ED GOSSETT, Texas

CHARLES J. ZINN, *Law Revision Counsel*

II

# TABLE OF CONTENTS

| | Page |
|---|---|
| Preliminary statement: | |
| Scope of revision | 1 |
| History of the Criminal Code | 2 |
| Staff of experts assembled | 2 |
| Advisory committee | 3 |
| Cooperation with bench and bar | 4 |
| Cooperation with Federal agencies | 4 |
| Cooperation and endorsement by the Committee on the Judiciary | 6 |
| Classification and numbering | 7 |
| General provisions of title 18 | 7 |
| Changes in punishment | 7 |
| Uniform style | 8 |
| Consolidation of sections | 8 |
| Federal Rules of Criminal Procedure | 8 |
| Amendments, effective date, repeals | 9 |
| Reviser's notes and tables | 9 |
| Appendix: | |
| Reviser's notes | A1 |
| Tables: | |
| 1. Revised Statutes and Statutes at Large | A193 |
| 2. United States Code | A206 |
| 3. Criminal Code | A210 |
| 4. Judicial Code | A211 |
| 5. Bankruptcy table | A211 |
| 6. Omitted laws | A211 |
| 7. Transferred sections | A219 |
| 8. Cross-references | A220 |
| 9. Popular names | A231 |
| Text of statutes for repeal | A233 |
| Comparative text of statutes for amendment | A452 |

III

80TH CONGRESS  } HOUSE OF REPRESENTATIVES  {  REPORT
1st Session                                        No. 304

# REVISION OF TITLE 18, UNITED STATES CODE

APRIL 24, 1947.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. ROBSION, from the Committee on the Judiciary, submitted the following

# REPORT

[To accompany H. R. 3190]

The Committee on the Judiciary submits the following report in explanation of the accompanying bill entitled "A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled 'Crimes and Criminal Procedure.'" The present bill has been substituted for an earlier bill [H. R. 1600] on which hearings were held, and contains changes recommended by the subcommittee.

## PRELIMINARY STATEMENT

### SCOPE OF REVISION

The starting point in this revision was the Criminal Code of 1909. To that were added those criminal provisions in other titles of the United States Code which could be transferred without injury to the text of such titles, and with due regard to maintaining the framework of the official United States Code prepared for Congress in 1926 by the former Committee on Revision of Laws of the House and enacted by Congress June 30, 1926.

This revision includes all applicable criminal laws in effect April 15, 1947.

Before actual revision was begun a scientific plant was assembled. This included:

1. The complete text of title 18, United States Code, 1940 edition.
2. Criminal provisions from other titles of the code pertinent to this revision.
3. Applicable constructions of the courts.
4. Notes based upon a careful examination of the Code of Federal Regulations and law review articles.
5. Exhaustive historical notes.

1

6. Notes referring to the Rules of Civil Procedure and the Rules of Criminal Procedure approved by the Supreme Court and submitted to the Seventy-ninth Congress on January 3, 1945, by the Attorney General.

7. Suggestions from the bench and bar.

Revision, as distinguished from codification, meant the substitution of plain language for awkward terms, reconciliation of conflicting laws, omission of superseded sections, and consolidation of similar provisions.

## HISTORY OF THE CRIMINAL CODE

The first Federal criminal laws were enacted by the Crimes Act of 1790—act of April 30, 1790, chapter 9, 1 Statutes 112. That act defined, among others, such offenses as treason, misprision of felony, forgery, and bribery, and prescribed the punishment for each. Many of these offenses and their punishments have survived the years almost verbatim. It was a small act and defined only the most general and heinous crimes against the United States, but our Nation was also small then, with a population of only 3,000,000.

At first our body of Federal criminal law developed gradually, act by act, and without any real attempt to reconcile the conflicting provisions of one act with those of another. These acts were scattered through the Statutes at Large, which, by the time of the Civil War, numbered 12 volumes. That war and the reconstruction period which followed, with all of its social implications, gave new impetus to Federal criminal legislation. Many new crimes were defined by Congress during the decade beginning in 1860.

The whole of this expanding body of Federal criminal law was carefully examined by the commissioners empowered by Congress in 1866 to prepare the Revised Statutes of the United States. Obsolete and superseded provisions which had accumulated during the 87-year period from 1790 to the date of the final approval of the Revised Statutes in 1877 were repealed. Inconsistent provisions were reconciled. And all of the vital, living provisions were analyzed, revised, and consolidated into title LXX, Crimes, of the Revised Statutes. That title was divided into nine chapters under such broad headings as Crimes Against the Existence of Government and Crimes Against Justice. These nine chapters were subdivided into 225 sections.

In 1897 Congress authorized a commission to revise and codify the criminal and penal laws of the United States. However, by subsequent acts Congress empowered this commission to examine the entire field of Federal statutory law; consequently, it was not until 1909 that the commission was ready with its bill to revise and codify the penal laws of the United States. The bill became the Criminal Code of 1909 by act of March 4, 1909, chapter 321, 35 Statutes 1088.

In preparing the Criminal Code of 1909 the Commissioners followed the analysis used in the Crimes title of the Revised Statutes. For example, the old chapter division Crimes Against the Existence of Government was retained, and the old chapter Crimes Against Justice became Crimes Against Public Justice. The changes in Federal criminal legislation between the years 1878 and 1909 induced the Commission to divide the Criminal Code into 15 chapters and 345 sections, instead of the 9 chapters and 225 sections in the Crimes title of the

Revised Statutes. It brought together statutes relating to the same subject, and omitted redundant and obsolete laws. However, no sweeping changes were made then. Actually, the Commission added just 21 new sections, only 10 of which created new offenses.

Thirty-seven years have passed since the Federal criminal laws were overhauled and enacted as the Criminal Code of 1909. That is a longer period than the elapsed time between the revisions of 1878 and 1909. It is a period which has witnessed unprecedented changes on the national scene. During those years the population of the United States leaped from 91,000,000 to 135,000,000; the Nation sprang from a fledgling to a world power; and twice it experienced the tremendous social changes that accompany war. It is a tribute to the draftsmen of the Criminal Code of 1909 that it has not crumbled under this terrific impact. However, there can be little doubt in the mind of anyone that the changes of the last 37 years make imperative the revision of our Federal criminal laws at the present time.

## STAFF OF EXPERTS ASSEMBLED

The former Committee on Revision of the Laws of the House obtained the services of the West Publishing Co., of St. Paul, Minn., and the Edward Thompson Co., of Brooklyn, N. Y., thus bringing to this undertaking the combined editorial resources and experiences of the two leading law-publishing firms. These are the companies which, under the supervision of that committee, have edited the United States Code and its supplements for 20 years.

In addition to their staffs of editors, these companies engaged as chief reviser, W. W. Barron, Esq., former Chief of the Appellate Section of the Criminal Division of the Department of Justice and also secured the services of Frank J. Parker, assistant United States attorney for the eastern district of New York, and Theodore W. Graske, author of Law of Government Defense Contracts, and so forth.

The former Committee on Revision of the Laws exercised close and constant supervision over this work through its general counsel, Charles J. Zinn, of the New York and District of Columbia bars, and its special counsel, John F. X. Finn, member of the Law Revision Commission of New York and a recognized expert on procedure. These men have cooperated in shaping policies, revising text, and checking proofs.

The work has been continued and completed under the supervision of the Committee on the Judiciary.

## ADVISORY COMMITTEE

An impartial advisory committee composed of outstanding men with years of practical experience at the bar and on the bench materially assisted in the work of revision with their wise counsel and advice. This public-spirited group consisted of Judge Floyd E. Thompson, former chief justice of the Illinois Supreme Court and former president of the Chicago Bar Association; Judge Justin Miller, former associate justice of the United States Court of Appeals for the District of Columbia, and John T. Cahill, former United States Attorney for the southern district of New York. Their diversified ex-

perience and training represented the views of defendant, prosecutor, and judge at every advisory committee meeting.

This advisory committee was ably assisted by two special consultants, Judge Alexander Holtzoff, judge of the District Court for the District of Columbia, and George F. Longsdorf, of Oakland, Calif. Both men were members of the Advisory Committee on Federal Rules of Criminal Procedure; consequently, besides the years of experience in Federal legislation which they brought to this work, they rendered invaluable service in the technical task of singling out for repeal or revision the statutory provisions made obsolete by the new Federal Rules of Criminal Procedure.

Three times during the course of this revision the advisory committee and its special consultants met for week-long periods with the revision staff and the counsels for your committee—once in Brooklyn, N. Y.; later in Washington, D. C.; and finally in Chicago, Ill. At each meeting the revision staff submitted to the advisory committee a draft of its work, containing the proposed text of this bill, and supplemented with notes explaining in detail each change and the reason for it. This procedure insured the careful examination of each section by the advisory committee. Several times they recommitted a section to the reviser for further study. The former Committee on Revision of the Laws of the House had these preliminary drafts printed and distributed to the Federal bench and bar for criticisms and suggestions.

## COOPERATION WITH BENCH AND BAR

When work first began on title 18, some 1,500 letters were mailed to the Federal judges, United States attorneys, deans of law schools, and presidents of bar associations, explaining the revision and asking for advice and assistance. Many of the letters in response to this appeal contained concrete recommendations for the improvement of the criminal code. These were cataloged, studied, and made available to the revision staff. As will be seen by the reviser's notes which appear in the appendix to this report, more than one of these suggestions helped shape the revision, and all of them made the task easier.

The criminal section of the American Bar Association, meeting in Chicago September 1944, received a tentative draft from the counsel of the committee, Mr. Zinn. The section thereupon passed a resolution approving this draft.

Following the introduction of the bill as H. R. 2200, of the Seventy-ninth Congress, on February 15, 1945, copies of it were sent to every Member of Congress. They were also widely distributed throughout the Nation in an effort to obtain the wise counsel and suggestions of all interested in the administration of our Federal criminal laws.

## COOPERATION WITH FEDERAL AGENCIES

As the work of revision progressed, the advice of Government officials was sought in problems affecting particular departments or agencies. It was found advisable to ask questions and to submit the text of proposed sections. Occasionally the revisers conferred with the heads of agencies. The officials in charge of a department or agency which might be affected by this revision were kept fully in-

formed. Copies of the preliminary draft were sent to all Government officials who might have the slightest interest in this work.

Naturally the Department of Justice was more concerned with a revision of the Federal criminal laws than any other governmental body. Consequently, members of that Department were informed of every step of the revision from the first preliminary analysis to the final draft. Mr. Alexander Holtzoff, special assistant to the Attorney General of the Department of Justice, attended each meeting of the advisory committee in his capacity as special consultant. When the preliminary draft was submitted to the Department of Justice the Attorney General asked the heads of the various divisions and bureaus to examine the portions of the draft affecting their work. The findings of these officials were set out in a detailed and comprehensive memorandum which the Attorney General forwarded the committee chairman, as follows:

MY DEAR MR. CHAIRMAN: In accordance with your request I have examined the tentative draft of part I of the proposed revision of title 18 of the United States Code and have caused it to be scrutinized intensively by members of the staff of this Department.

There is a real need for a revision of the Federal Criminal Code, and your committee is to be commended for undertaking this project. The proposed revision appears to be very capably prepared.

As a result of studies in this Department, a memorandum has been prepared containing certain suggestions in regard to the text of the revision. Copies of this memorandum are enclosed for your consideration.

With kind personal regards,

Sincerely yours,

FRANCIS BIDDLE,
*Attorney General.*

This memorandum was submitted to the advisory committee at its final meeting in Chicago and was studied item by item by that body. The Department was asked to have a representative at that meeting so that the views expressed in it could be fully explained to the members of the advisory committee. The Department sent Mr. George F. Kneip of the Criminal Section.

After the introduction of H. R. 2200 in the Seventy-ninth Congress, the Treasury and Interior Departments suggested certain changes in some of the sections and the elimination of several of them from the bill. Their suggestions were effected.

Subsequent to the reintroduction of the bill (H. R. 1600) in the Eightieth Congress, the Attorney General wrote to the Committee on the Judiciary the following letter:

APRIL 21, 1947.

Hon. EARL C. MICHENER,
*Chairman, Committee on the Judiciary,
House of Representatives, Washington, D. C.*

MY DEAR MR. CHAIRMAN: This is in response to your request for my views concerning a bill (H. R. 1600) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

The present United States Code, consisting of 50 titles, is a compilation of permanent statutory law of the United States. While it is presently extensively valuable for practical purposes, its usefulness is somewhat circumscribed by the fact that all of it has never been codified. Accordingly, the bulk of its text establishes only prima facie the text of the statutory law of the United States.

The bill under consideration is part of the plan for the enactment of the United States Code into law. The bill would take this step with respect to title 18 of the code. There has been no revision or codification of the Federal criminal

laws since the Criminal Code of 1909. The amendments during the 38 years which have since elapsed, together with the great volume of new legislation since enacted, indicate the necessity for the codification of this title.

The bill would eliminate much of the archaic language employed in the old statutes. By substituting plain language for awkward terms, reconciling conflicting laws, omitting superseded sections, and consolidating provisions which deal with the same subject, the bill would modernize and bring up to date our general criminal laws in much the same manner as the Federal Rules of Criminal Procedure have done in their field. In addition, the bill would put in one place most of our criminal statutes which are now scattered through a number of titles of the code. While every criminal law would not be placed in this title, the bill goes as far in that direction as is expedient. In addition, as has frequently been pointed out, title 18 would become a law itself instead of only prima facie law so that lawyers would be spared the work of going to the original statutes when it is essential to have the exact text of a particular law. Each of these objectives is commendable and desirable.

You will remember the discussions between members of the staff of the committee and of the Department last month at which the Department made some suggestions with reference to minor corrections of errors and omissions then in the draft of the bill being considered by your committee. I am advised that this conference agreed upon a number of corrections and changes and that these corrections and changes have now been incorporated into the bill.

In view of the foregoing, I find no objection to the enactment of the bill.

Sincerely yours,

DOUGLAS W. MCGREGOR,
*Acting Attorney General.*

## COOPERATION AND ENDORSEMENT BY THE COMMITTEE ON THE JUDICIARY

The bill, being a revision and codification of the criminal statutes of the United States, was, under the rules of the House, reported by the former Committee on Revision of the Laws. It was the policy of that committee to consult with the standing committee of the House which would ordinarily have jurisdiction of the subject matter of a codification bill. Accordingly, a study by the Committee on the Judiciary during the Seventy-ninth Congress was invited, particularly with respect to changes made in existing law.

Grateful acknowledgment is made to the chairman and members of the Committee on the Judiciary for their unsparing efforts and study of the bill, which constituted an outstanding example of cooperation by a committee already burdened with an unprecedented volume of work.

As a result of its comprehensive review, the Committee on the Judiciary unanimously agreed to endorse the bill during the Seventy-ninth Congress. The following letter, setting forth the committee's position and endorsement, was received from Hon. Hatton Sumners, chairman of the Committee on the Judiciary:

JUDICIARY COMMITTEE, *July 3, 1946.*

Hon. EUGENE J. KEOGH,
*Chairman, Committee on Revision of the Laws, House of Representatives,
Washington 25, D. C.*

DEAR MR. KEOGH: The Committee on the Judiciary has completed its study of H. R. 2200, to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

We appreciate the opportunity afforded to this committee to engage in this study, through the policy of the Committee on Revision of the Laws to submit its codification bills to the standing committee of the House having jurisdiction over the subject matter contained in such bill.

Early in March this Committee received from its counsel, Mr. Charles E. Long, Jr., a preliminary report on changes effected in existing law by H. R. 2200.

Thereafter a subcommittee of this Committee examined all the proposed changes and had the benefit of comprehensive statements from you, your committee counsel and members of the revision staff. The subcommittee reported favorably to our full committee at a meeting on June 7, 1946, at which you were present and made a statement regarding the bill.

Your committee has done an excellent and commendable work in this field. It is accordingly the belief and judgment of the Committee on the Judiciary that the bill, H. R. 2200 merits the favorable action of the Congress. We recommend such action.

Sincerely yours,

HATTON SUMNERS,
*Chairman, Committee on the Judiciary.*

## CLASSIFICATION AND NUMBERING

First a preliminary analysis was prepared—a framework on which to build the new title. In drafting this outline the old system of classification was discarded and the modern alphabetical arrangement used so successfully in so many State codes was adopted.

In part 1 of this title crimes were classified under such convenient chapters as Arson, Bribery, and Fraud and False Statements. In parts 2–4, covering procedure, prisons, and juvenile delinquents, the chapters were arranged in the logical sequence of events.

Future growth by acts of Congress were provided for by adopting a flexible numbering system. Chapters were given odd numbers, leaving the even numbers to accommodate related chapters in the future. Room for approximately 40 section numbers was left at the end of each chapter.

## GENERAL PROVISIONS OF TITLE 18

By assigning to chapter 1 all general provisions and definitions it was possible to omit repetitive phrases common to many sections. For example, by inserting the word "causes" in the definition of "principals" it was possible to omit that word together with such expressions as "aids or abets" and "causes or procures" from many other sections. By defining "United States" and other terms in chapter 1, it was possible to avoid the use of the same definitions in other chapters.

## CHANGES IN PUNISHMENT

Many inconsistencies in punishments were discovered. Some appeared too lenient and others too harsh when compared with crimes of similar gravity. The problem was twofold.

First, it was found that in spite of an exact definition of felonies and misdemeanors, 29 punishments were inaccurately labeled, resulting in conflicting court opinions. This problem was solved by omitting from each of the 29 punishments any description of the offense as a felony or misdemeanor, leaving the test as to the kind of crime, to the definitive section.

Second, serious disparities in punishments were discovered when the nature of various crimes was considered. Before attempting to eliminate these differences a master table showing the nature of each offense and its punishment was prepared. In this way many inequalities were eliminated and uniformity brought out of the conflicts which time had developed.

## UNIFORM STYLE

A clear and uniform style was an important aim of this revision. Verbose phrases were pruned, ambiguous terms rewritten, and archaic expressions eliminated. For example, the definition of a petty offense was reduced from 53 to 30 words without change in substance. Such phrases as "of any kind whatever" were omitted from many sections as redundant. Another example is section 656 to which United States District Judge Emerich B. Freed referred in his review of this revision before the Judicial Conference of the Sixth Circuit.

Judge Freed said:

The verbose, involved, and extremely ambiguous sections dealing with embezzlement or misapplication by an officer or employee of a bank are reduced to simple, clear, and unambiguous language. It might be added that no other criminal statute, with the single exception of that covering conspiracy, has been the subject of more numerous judicial interpretations, due largely to the present involved language.

In the description of offenses the word "whoever" was used as the first word in each section defining a crime. This style was followed by the revisers of the 1909 Code with good results. Frequently, a number of "whoever" clauses were found, each spelling out a different crime, run together in one paragraph. These were set out in separate paragraphs.

Punishment provisions were written in the alternative and minimum terms and fines were omitted. The qualifications "upon conviction" and "hard labor" were deleted as surplusage.

However, a catalog of all style changes would require unreasonable time at this point. They have all been carefully noted in the reviser's notes appearing in the appendix of this report.

## CONSOLIDATION OF SECTIONS

In many instances similar sections were consolidated without making fundamental changes in the offenses involved. This was true especially in the case of sections brought into the revision from titles 7, Agriculture; 12, Banks and Banking; and 15, Commerce and Trade.

Good examples of such consolidations will be found in the chapter Embezzlement and Theft. There, in one instance, 11 sections consolidated into 1, resulting in a tremendous saving of space and notable improvement in style and substance.

## FEDERAL RULES OF CRIMINAL PROCEDURE

Much work on part II was done in anticipation of the adoption of the new Federal Rules of Criminal Procedure, effective March 21, 1946.

These rules modify or supersede many criminal procedural sections. Consequently effect was given to the changes they make by revising modified sections and repealing superseded provisions.

This revision of part II left a skeleton of former procedural statutes, which, after the adoption of the rules, represented only a small part of criminal procedure. In order to provide at one place a clear picture of all criminal procedure, cross-reference catch lines to the rules were inserted in logical order and interwoven into the fabric containing the remaining statutory provisions.

The administration of justice under our Federal criminal laws was greatly facilitated by the promulgation of the new Federal Rules of Criminal Procedure. However, the process of modernizing our antiquated Federal criminal laws is only half done. The task, so carefully planned and skillfully executed, of providing the Nation with a vastly improved structure of criminal laws, will be complete when this bill becomes law.

## AMENDMENTS, EFFECTIVE DATE, REPEALS

Section 1 of the bill sets forth the revised title 18 and provides that it shall be enacted into positive law.

All provisions of Title 18 have been corrected to omit references to the Philippine Islands which are now inapplicable because of the independence of the Commonwealth of the Philippines effective July 4, 1946.

Sections 2–17 (p. 448 et seq. of this bill) are amendments of sections in titles other than title 18. They are sections from which were extracted criminal provisions for the revision. These provisions were so much a part of the original text it was necessary to amend that text to preserve the original meaning.

Section 18 amends the Canal Zone Code by adding a new section at the end of Title 7 of that Code, which enumerates certain sections of revised Title 18 now applicable in the Canal Zone, the applicability of which might not be entirely clear without such amendment. Such new section also enumerates certain sections not now applicable to the Canal Zone, in order to make clear that they are not made applicable by this revision.

Section 19 is the usual separability provision.

Section 20 provides that no inference of a legislative construction is to be drawn by reason of the place in this revision in which any particular section is placed nor by reason of the catchlines used in the revision.

Section 21 provides that the revision shall become effective upon passage.

Section 22 provides for the specific repeal of hundreds of sections enumerated in the Schedule of Laws Repealed. These include all laws incorporated in the revision, plus many superseded and obsolete criminal laws. The schedule was carefully checked and rechecked many times. This method of specific repeal will lift from the courts the onerous task of ferreting out implied repeals.

## REVISER'S NOTES AND TABLES

The reviser's notes are keyed to sections of this bill and explain in detail every change made in text. In many instances they are supported by references to court decisions and State statutes.

To facilitate the work of those interested in this revision, nine reference tables were prepared. These show the distribution of sections from the United States Code, Criminal Code, Bankruptcy Act, and so forth, to this revision.

# APPENDIX

## REVISER'S NOTES

Reviser's notes, explaining in detail the revision of each section of the Federal criminal laws, are set forth in this Appendix in numerical order according to section number of the revised title.

Preceding the notes is an analysis of the four parts making up the revised title. Following each part heading is an analysis of the chapters contained in such part, and, under each chapter heading, there is an analysis of sections constituting such chapter.

## Title 18

| Part | | Sec. |
|---|---|---|
| I. | Crimes | 1 |
| II. | Criminal procedure | 3001 |
| III. | Prisons and prisoners | 4001 |
| IV. | Correction of youthful offenders | 5001 |

### PART I. CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 581 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |

A1

| Chapter | | Sec. |
|---|---|---|
| 57. | Labor | 1281 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |
| 75. | Passports and visas | 1541 |
| 77. | Peonage and slavery | 1581 |
| 79. | Perjury | 1621 |
| 81. | Piracy and privateering | 1651 |
| 83. | Postal service | 1691 |
| 85. | Prison-made goods | 1761 |
| 87. | Prisons | 1791 |
| 89. | Professions and occupations | 1821 |
| 91. | Public lands | 1851 |
| 93. | Public officers and employees | 1901 |
| 95. | Racketeering | 1951 |
| 97. | Railroads | 1991 |
| 99. | Rape | 2031 |
| 101. | Records and reports | 2071 |
| 103. | Robbery and burglary | 2111 |
| 105. | Sabotage | 2151 |
| 107. | Seamen and stowaways | 2191 |
| 109. | Searches and seizures | 2231 |
| 111. | Shipping | 2271 |
| 113. | Stolen property | 2311 |
| 115. | Treason, sedition and subversive activities | 2381 |
| 117. | White slave traffic | 2421 |

## CHAPTER 1. GENERAL PROVISIONS

Sec.
1. Offenses classified.
2. Principals.
3. Accessory after the fact.
4. Misprision of felony.
5. United States defined.
6. Department and agency defined.
7. Special maritime and territorial jurisdiction of the United States defined.
8. Obligation or other security of the United States defined.
9. Vessel of the United States defined.
10. Interstate commerce and foreign commerce defined.
11. Foreign government defined.
12. Postal Service defined.
13. Laws of States adopted for areas within Federal jurisdiction.

### SECTION 1—SECTION REVISED

Based on title 18, U. S. C., 1940 ed., § 541 (Mar. 4, 1909, ch. 321, § 335, 35 Stat. 1152; Dec. 16, 1930, ch. 15, 46 Stat. 1029).

*Clarification of felony and misdemeanor punishments.*—The former Committee on Revision of the Laws of the House received from members of the Federal bench and bar numerous requests that the inconsistency between the provisions of section 541 of title 18, U. S. C., 1940 ed., and the 29 sections listed below, be eliminated.

Said 29 sections appear in the United States Code, 1940 ed., as listed:

| Title | Section | Title | Section |
|---|---|---|---|
| 8 | 135 | 15 | 13a |
| 8 | 139 | 18 | 402 (2) |
| 8 | 142 | 19 | 705 |
| 8 | 143 | 19 | 1805 |
| 8 | 279 | 19 | 1593 |
| 8 | 281 | 19 | 1600 |
| 10 | 15 | 19 | 1601 |
| 10 | 866 (e) | 21 | 333 (a), (b) |
| 11 | 205 (p) | 22 | 131 |
| 12 | 95 | 23 | 108 |
| 12 | 631 | 46 | 508 |
| 12 | 591 | 48 | 1228 |
| 12 | 592 | 49 | 10 |
| 12 | 1121 | 49 | 121 |
| 12 | 1811 | | |

Several of these sections will appear in this revision, and in all such instances the language denominating the crime as a misdemeanor was deleted.

United States District Judge C. C. Wyche, of the Western District of South Carolina, suggested that said section 541 be repealed and that a new section be enacted defining felonies and misdemeanors according to nature of offense instead of by punishment to be inflicted.

United States District Judge W. Calvin Chesnut, of the District of Maryland, suggested a clarification of the definition and classification of Federal crimes—treason and possibly those providing capital punishment. felonies, misdemeanors, and petty offenses.

This section as revised conforms substantially with a draft submitted by the Lawyers' Club of Los Angeles through Rollin L. McNitt, chairman of its legislative committee.

Two circuit courts of appeals have held that if a statute specifically designated a crime as a "misdemeanor" but prescribed a punishment which would bring it within the definition of a felony under section 541 of title 18, U. S. C., 1940 ed., the definition was controlling, notwithstanding the specific designation of the crime as a "misdemeanor." (See *Hoss* v. *United States*, Okl. 1916, 232 F. 328, 146 C. C. A. 376; and *Sheridan* v. *United States*, Or. 1916, 236 F. 305, 149 C. C. A. 437, certiorari denied, 1916, 37 S. Ct. 402, 243 U. S. 638, 61 L. ed. 942.)

One district court, however, has twice ruled that the specific description of a crime as a "misdemeanor" was controlling. (See *United States* v. *Venturini*, D. C. Ala. 1931, 1 F. Supp. 213 and *Chapman* v. *United States*, D. C. Ala. 1931, 3 F. Supp. 900.)

The Supreme Court of the United States has never specifically passed upon this point. (See however, *Carroll* v. *United States*, 1924, 45 S. Ct. 280, 267 U. S. 132, 69 L. ed. 543.)

The word "misdemeanor" is used in paragraph (3) in preference to the word "offenses" to conform to the interpretation of "petty offenses" by the Supreme Court of the United States in *Duke* v. *United States* (1937, 57 S. Ct. 835, 301 U. S. 492, 81 L. ed. 1243), wherein the

Section consolidates said sections of title 22, U. S. C., 1940 ed., Foreign Relations and Intercourse, with such changes of phraseology as were necessary to effect consolidation.

Words "on conviction" were omitted from last sentence as surplusage since punishment cannot be imposed until a conviction is secured.

### Section 969—Section Revised

Based on title 18, U. S. C., 1940 ed., §§ 499, 500 (Mar. 4, 1909, ch. 321, §§ 308, 309, 35 Stat. 1148).

Section consolidates said sections of title 18, U. S. C., 1940 ed., with such changes of phraseology as were necessary to effect consolidation.

Words "and the courts of the United States shall have jurisdiction accordingly." were omitted from subsection (b) as unnecessary in view of sections 3231 and 3238 of this title.

## CHAPTER 47. FRAUD AND FALSE STATEMENTS

Sec.
1001. Statements or entries generally.
1002. Possession of false papers to defraud United States.
1003. Demands against the United States.
1004. Certification of checks.
1005. Bank entries, reports and transactions.
1006. Federal credit institution entries, reports and transactions.
1007. Federal Deposit Insurance Corporation transactions.
1008. Federal Savings and Loan Insurance Corporation transactions.
1009. Rumors regarding Federal Savings and Loan Insurance Corporation.
1010. Federal Housing Administration transactions.
1011. Federal land bank mortgage transactions.
1012. United States Housing Authority transactions.
1013. Farm loan bonds and credit bank debentures.
1014. Loan and credit applications generally; renewals and discounts; crop insurance.
1015. Naturalization, citizenship or alien registry.
1016. Acknowledgement of appearance or oath.
1017. Government seals wrongfully used and instruments wrongfully sealed.
1018. Official certificates or writings.
1019. Certificates by consular officers.
1020. Highway projects.
1021. Title records.
1022. Delivery of certificate, voucher, receipt for military or naval property.
1023. Insufficient delivery of money or property for military or naval service.
1024. Purchase or receipt of military, naval, or veterans' facilities property.
1025. False pretenses on high seas and other waters.
1026. Compromise, adjustment, or cancellation of farm indebtedness.

### Section 1001—Section Revised

Based on title 18, U. S. C., 1940 ed., § 80 (Mar. 4, 1909, ch. 321, § 35, 35 Stat. 1095; Oct. 23, 1918, ch. 194, 40 Stat. 1015; June 18, 1934, ch. 587, 48 Stat. 996; Apr. 4, 1938, ch. 69, 52 Stat. 197).

Section 80 of title 18 U. S. C., 1940 ed., was divided into two parts.

The provision relating to false claims was incorporated in section 287 of this title.

Reference to persons causing or procuring was omitted as unnecessary in view of definition of "principal" in section 2 of this title.

Words "or any corporation in which the United States of America is a stockholder" in said section 80 were omitted as unnecessary in view of definition of "agency" in section 6 of this title.

In addition to minor changes of phraseology, the maximum term of imprisonment was changed from 10 to 5 years to be consistent with comparable sections. (See reviser's note under section 287 of this title.)

### Section 1002—Section Revised

Based on title 18, U. S. C., 1940 ed., § 74 (Mar. 4, 1909, ch. 321, § 30, 35 Stat. 1094).

Words "or any agency thereof" after "United States" and word "agency" after "any" and before "officer", were inserted to eliminate any possible ambiguity as to scope of section. (See definition of "agency" in section 6 of this title.)

The maximum fine of "$10,000" was substituted for "$500" in order to conform punishment provisions to those of comparable sections. (See section 1001 of this title.)

Minor verbal change was made.

### Section 1003—Section Revised

Based on title 18, U. S. C., 1940 ed., § 79 (Mar. 4, 1909, ch. 321, § 34, 35 Stat. 1095).

Words "prize money" were deleted on the ground that they are an anachronism and were so before 1909. (See reviser's note under section 915 of this title.)

Mandatory punishment provision was rephrased in the alternative. (See reviser's note under section 201 of this title.)

The smaller punishment for an offense involving $100 or less was added. (See reviser's note to sections 641 and 645 of this title.)

The maximum term of "five years" was substituted for "ten years" and "$10,000" was substituted for "$5,000" as being more in harmony with punishment provision of similar sections. (See reviser's note under section 1001 of this title.)

Minor changes of phraseology were made.

### Section 1004—Section Revised

Based on section 591 of title 12, U. S. C., 1940 ed., Banks and Banking (R. S. § 5208; July 12, 1882, ch. 290, § 13, 22 Stat. 166; Sept. 26, 1918, ch. 177, § 7, 40 Stat. 972; Feb. 25, 1927, ch. 191, § 12, 44 Stat. 1231).

Words "be deemed guilty of a misdemeanor and shall" were omitted as unnecessary in view of definition of misdemeanor in section 1 of this title. (See also reviser's note under section 212 of this title.)

Words "on conviction thereof" were omitted as surplusage, because punishment cannot be imposed until after conviction.

Words "in any district court of the United States" were omitted as unnecessary, because section 3231 of this title confers jurisdiction on Federal district courts of all crimes and offenses defined in this title.

Changes were made in phraseology.

### Section 1005—Section Revised

Based on sections 592, 597 of title 12, U. S. C., 1940 ed., Banks and Banking (R. S. § 5209; Dec. 23, 1913, ch. 6, § 22 (i) as added June 19,



COPY

Reproduced at the National Archives

Serial Volume III 24